No. 24-60395

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

REPUBLICAN NATIONAL COMMITTEE; MISSISSIPPI REPUBLICAN PARTY; JAMES PERRY; MATTHEW LAMB,

*Plaintiffs – Appellants*

v.

JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; TONI JO DIAZ, in their official capacities as members of the Harrison County Election Commission; BECKY PAYNE, in their official capacities as members of the Harrison County Election Commission; BARBARA KIMBALL, in their official capacities as members of the Harrison County Election Commission; CHRISTENE BRICE, in their official capacities as members of the Harrison County Election Commission; CAROLYN HANDLER, in their official capacities as members of the Harrison County Election Commission; MICHAEL WATSON, in his official capacity as the Secretary of State of Mississippi,

*Defendants – Appellees*

VET VOICE FOUNDATION; MISSISSIPPI ALLIANCE OF RETIRED AMERICANS,

*Intervenor Defendants – Appellees*

---

LIBERTARIAN PARTY OF MISSISSIPPI,

*Plaintiff – Appellant*

v.

JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; TONI JO DIAZ, in their official capacities as members of the Harrison County Election Commission; BECKY PAYNE, in their official capacities as members of the Harrison County Election Commission; BARBARA KIMBALL, in their official capacities as members of the Harrison County Election Commission; CHRISTENE BRICE, in their official capacities as members of the Harrison County Election Commission; CAROLYN HANDLER, in their official capacities as members of the Harrison County Election Commission; MICHAEL WATSON, in his official capacity as the Secretary of State of Mississippi,

*Defendants – Appellees.*

On Appeal from the United States District Court for the Southern District of Mississippi, Nos. 1:24-cv-25, 1:24-cv-37 (Guirola, J.)

## *AMICUS CURIAE* BRIEF OF THE PUBLIC INTEREST LEGAL FOUNDATION IN SUPPORT OF APPELLANTS AND REVERSAL

J. Christian Adams
Joseph M. Nixon
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
adams@PublicInterestLegal.org
jnixon@PublicInterestLegal.org

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal. In addition to the persons and entities identified in the briefs of Appellant Libertarian Party of Mississippi, App. Dkt. 73, and Appellants Republican National Committee, Mississippi Republican Party, James Perry, and Matthew Lamb, Defendants-Appellants, App. Dkt. 71, the following persons may have an interest in the outcome of this case:

    Public Interest Legal Foundation, Inc. (*amicus curiae*)
    J. Christian Adams (counsel for *amicus curiae*)
    Joseph M. Nixon (counsel for *amicus curiae*)

August 23, 2024                          Respectfully submitted,

                                                /s/ Joseph M. Nixon

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ................................................... i  
TABLE OF CONTENTS ................................................................................. ii  
TABLE OF AUTHORITIES ........................................................................... iii  
STATEMENT OF INTEREST ........................................................................... 1  
SUMMARY OF ARGUMENT ........................................................................... 1  
ARGUMENT ..................................................................................................... 2  
CONCLUSION .................................................................................................. 6  
CERTIFICATE OF COMPLIANCE ................................................................. 8

# TABLE OF AUTHORITIES

***Cases***
*Bush v. Gore*, 531 U.S. 98 (2000).................................................................. 2,3
*Vote Integrity Project, Inc. v. Keisling*, 259 F.3d 1169 (9th Cir. 2001) ...............6

***Statutes***
2 U.S.C. § 1 ............................................................................................................1
2 U.S.C. § 7 ....................................................................................................... 1, 5
3 U.S.C. § 1 ............................................................................................................1
Fl. Stat. § 101.67(2) ...............................................................................................3
Fl. Stat. § 101.6952(5) ...........................................................................................3

***Other Authorities***
Public Interest Legal Foundation, "Worst to First: The Transformation of American Election Integrity" ................................................................................ 4
*Vote-by-Mail*, Florida Division of Elections, (Aug. 22, 2024), https://dos.fl.gov/elections/for-voters/voting/vote-by-mail/ ..................................3

## IDENTITY AND INTERESTS OF *AMICUS CURIAE*

The Public Interest Legal Foundation ("Foundation") is a non-partisan, public interest 501(c)(3) organization whose mission includes working to protect the fundamental right of citizens to vote and preserving election integrity across the country. For over a decade, the Foundation has sought to advance the public's interest in having elections free from unconstitutional burdens and discrimination. At the state level, the Foundation works to ensure that state laws enacted by each state's legislative branch are constitutional and harmonious with federal law, the United States Constitution, and the state's constitution.

This case is of interest to the Foundation because it is concerned with protecting the sanctity and integrity of American elections and preserving the supremacy of federal Election Day statutes. Mississippi's law allowing receipt of mail-in ballots up to five days following Election Day contravenes a combination of federal laws enacted by Congress explicitly defining Election Day as the "Tuesday next after the 1st Monday in November." 2 U.S.C. § 7; *see also*, 2 U.S.C. § 1; 3 U.S.C. § 1.

## SUMMARY OF ARGUMENT

This *amicus* brief is submitted to explain the critical role of Florida's mail ballot acceptance policy in transforming its electoral system from a model of

1

inefficiency to a benchmark of excellence in timeliness and accuracy. Florida's transition to a policy that does not accept mail ballots after Election Day has played a pivotal role in enhancing the integrity, efficiency, and public trust in its electoral processes. Florida's policy aligns with best practices in election management and serves as a valuable model for other jurisdictions, including Mississippi.[1]

## ARGUMENT

I. **Historical Context Preceding Florida's Changes.**

Florida's election management practices have historically been the subject of scrutiny and criticism. The state's challenges became especially prominent during the 2000 presidential election, when issues with ballot design, voter intent, and ballot counting processes highlighted systemic inefficiencies. *See generally Bush v. Gore*, 531 U.S. 98 (2000). The controversy over the "hanging chads" and the recount procedures drew national attention, underscoring the need for substantial reform to restore confidence in Florida's electoral system. *Id.*

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(4)(E), no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person, other than *amicus curiae* or its counsel, contributed money that was intended to fund preparing or submitting this brief.

The problems experienced during the 2000 election were symptomatic of broader issues within Florida's election management. Delays in ballot processing, concerns about the handling of mail ballots, and a lack of clear procedural guidelines contributed to widespread skepticism about the accuracy and fairness of elections. *Id.* These challenges emphasized the necessity for comprehensive reforms to enhance the efficiency and reliability of Florida's voting processes.

II.   **Florida' 2022 Election Day Policy.**

**A. Florida Ballots Must be Returned by Election Day.**

In Florida, election day is the end of voting in the state. Florida has a straightforward system that requires the receipt of all mail ballots by election day. Fl. Stat. § 101.67(2). Florida's statute requires that mail ballots must be received by the supervisor of elections' office by 7:00 p.m. on Election Day in order to be counted. *Id.* To facilitate returning these ballots, Florida allows them to be returned by mail, in person, or in a secured drop box. *Vote-by-Mail*, Florida Division of Elections, (Aug. 22, 2024), https://dos.fl.gov/elections/for-voters/voting/vote-by-mail/. Both military and civilian voters living overseas are given an additional 10 days under federal law. Fl. Stat. § 101.6952(5). This straightforward requirement helps keep elections running smoothly and efficiently.

In addition to being in alignment with federal law, implementing an Election Day deadline for mail ballot receipt has streamlined Florida's election administration. By eliminating the potential for late-arriving ballots to complicate vote counting, the policy has reduced processing delays compared to other states. *See* Public Interest Legal Foundation, "Worst to First: The Transformation of American Election Integrity." p. 8-9, April 2023, https://publicinterestlegal.org/wp-content/uploads/2023/04/Report-Worst_to_First-Web.pdf (last accessed Aug. 22, 2024). This approach also enhances the accuracy of vote counts and ensures that election results are reported in a timely manner. *Id.*

### B. Effective Counting on Election Night.

The effectiveness of Florida's policy against late ballots was particularly evident in the 2022 election. The policy allowed for a swift counting of all the ballots on election night. Consequently, on election night 2022, Florida had one of the fastest turnaround times for reporting results. *Id.* The strict deadline for mail ballots, along with many other reforms, ensured that all ballots were processed and counted without delays. *See generally Id.* The Associated Press was so confident in Florida's election night returns that it was able to call the House, Senate, and Gubernatorial races within two hours of the polls closing. The latest race was called at 8:52 p.m. on election night. *Id.* at 8-9.

### III. Broader Implications and Lessons for Other States.

Florida's experience offers valuable lessons for other jurisdictions seeking to improve their election systems. The state's success in enhancing its electoral process through the adoption of a no-late-ballots policy provides a compelling case for the implementation of clear deadlines in election administration across the nation.

The broader implications of Florida's approach extend beyond the state's borders and illustrate the importance of balancing accessibility with efficiency to achieve a reliable and transparent electoral system. Other states considering reforms should draw on Florida's experience to guide their efforts in strengthening election integrity and improving the efficiency of their voting processes.

Florida's reforms also highlight the significance of addressing both procedural and operational aspects of election management. By focusing on clear deadlines and streamlined processes, states can achieve a more effective and trustworthy electoral system. Florida's success serves as a model for other jurisdictions striving to enhance their own election administration practices.

As the briefs for the Appellants correctly argue, Congress preempted state laws that count ballots beyond the date of the election. *See Generally,* Appellant's Br. *See also,* 2 U.S.C. § 7. The legislative history suggests that Congress intended

for a uniform national election day to act as a check to election fraud, double voting, and voters moving from one state to another. *See Vote Integrity Project, Inc. v. Keisling,* 259 F.3d 1169, 1174 (9th Cir. 2001) (Citing Cong. Globe, 42 Cong., 2d Sess. 618 (1872)). Using Florida as an example, one can see that Congress was correct in the benefits of a uniform election day. Having a uniform election day by which ballots have to be collected and counted increases the efficiency and security of elections. The Appellants' briefs correctly state that Mississippi's statute allowing ballots to be received after election day is preempted by federal law and the Foundation proposes that looking to Florida provides a good case study for why Congress passed such laws in the first place.

## CONCLUSION

As other states consider reforms to enhance their electoral processes, Florida's experience provides a valuable model. The state's success in transforming its election system underscores the importance of adopting best practices in election management, including the establishment of firm deadlines for mail ballot submissions. By following Florida's example, other jurisdictions can work towards achieving a more efficient, accurate, and transparent electoral process.

Dated: August 23, 2024.

Respectfully submitted,

For the Public Interest Legal Foundation:

   /s/ Joseph M. Nixon
J. Christian Adams
Joseph M. Nixon
Public Interest Legal Foundation, Inc.
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
adams@PublicInterestLegal.org
jnixon@PublicInterestLegal.org

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Fed. R. App. P. Rule 29(a)(5) because this brief contains 1853 words.

This brief has been prepared in a proportionally space type face using Microsoft Word in 14-point Times New Roman.

        /s/ Joseph M. Nixon
        Joseph M. Nixon
        Counsel for Public Interest Legal Foundation

Dated: August 23, 2024.