# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Republican National Committee; Mississippi Republican Party; James Perry; Matthew Lamb,

*Plaintiffs - Appellants,*

v.

Justin Wetzel, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; Toni Jo Diaz, in their official capacities as members of the Harrison County Election Commission; Becky Payne, in their official capacities as members of the Harrison County Election Commission; Barbara Kimball, in their official capacities as members of the Harrison County Election Commission; Christene Brice, in their official capacities as members of the Harrison County Election Commission; Carolyn Handler, in their official capacities as members of the Harrison County Election Commission; Michael Watson, in his official capacity as the Secretary of State of Mississippi,

*Defendants - Appellees*

Vet Voice Foundation; Mississippi Alliance for Retired Americans,

*Intervenor Defendants - Appellees*

Libertarian Party of Mississippi,

*Plaintiff - Appellant,*

v.

Justin Wetzel, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; Toni Jo Diaz in their official capacities as members of the Harrison County Election Commission; Becky Payne, in their official capacities as members of the Harrison County Election Commission; Barbara Kimball, in their official capacities as

members of the Harrison County Election Commission;
Cristene Brice, in their official capacities as members of the
Harrison County Election Commission; Carolyn Handler, in
their official capacities as members of the Harrison County
Election Commission; Michael Watson, in his official
capacity as the Secretary of State of Mississippi,

*Defendants - Appellees*

---

On Appeal from the United States District Court
for the Southern District of Mississippi,
Nos. 1:24-CV-25 & 1:24-CV-37

---

## Democratic National Committee's *Amicus Curiae* Brief in Support of Appellees and Affirmance

---

David W. Baria
COSMICH, SIMMONS &
  BROWN, PLLC
544 Main Street
Bay St. Louis, MS 39520
(228) 242-4987
david.baria@cs-law.com

Donald B. Verrilli, Jr.
Ginger D. Anders
J. Kain Day
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
  Suite 500E
Washington, DC 20001
(202) 220-1100
Donald.Verrilli@mto.com
Ginger.Anders@mto.com
Kain.Day@mto.com

*Counsel for Amicus Curiae*

# <u>CERTIFICATE OF INTERESTED PERSONS</u>

No. 24-60395

Republican National Committee; Mississippi Republican Party; James Perry; Matthew Lamb,

*Plaintiffs - Appellants,*

v.

Justin Wetzel, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; Toni Jo Diaz, in their official capacities as members of the Harrison County Election Commission; Becky Payne, in their official capacities as members of the Harrison County Election Commission; Barbara Kimball, in their official capacities as members of the Harrison County Election Commission; Christene Brice, in their official capacities as members of the Harrison County Election Commission; Carolyn Handler, in their official capacities as members of the Harrison County Election Commission; Michael Watson, in his official capacity as the Secretary of State of Mississippi,

*Defendants - Appellees*

Vet Voice Foundation; Mississippi Alliance for Retired Americans*,*

*Intervenor Defendants - Appellees*

---

Libertarian Party of Mississippi,

*Plaintiff - Appellant,*

v.

Justin Wetzel, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; Toni Jo Diaz in their official capacities as members of the Harrison County Election Commission; Becky Payne, in their official capacities as members of the Harrison County Election Commission; Barbara Kimball, in their official capacities as members of the Harrison County Election Commission; Cristene Brice, in their official capacities as members of the

Harrison County Election Commission; Carolyn Handler, in their official capacities as members of the Harrison County Election Commission; Michael Watson, in his official capacity as the Secretary of State of Mississippi,

*Defendants - Appellees*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

***Plaintiffs – Appellants***: Republican National Committee; Mississippi Republican Party; James Perry; Matthew Lamb; Libertarian Party of Mississippi.

***Counsel to Plaintiff – Appellant Libertarian Party of Mississippi***: T. Russell Nobile and Eric W. Lee of Judicial Watch, Incorporated.

***Counsel to Plaintiffs – Appellants Republican National Committee; Mississippi Republican Party; James Perry; Matthew Lamb***: Thomas McCarthy and Conor Woodfin of Consovoy McCarthy, P.L.L.C.; Spencer M. Ritchie of Forman Watkins & Krutz, L.L.P.

***Defendants - Appellees***:  Justin Wetzel, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; Toni Jo Diaz in their official capacities as members of the Harrison County Election Commission; Becky Payne, in their official capacities as members of the Harrison County Election Commission; Barbara Kimball, in their official capacities as members of the Harrison County Election Commission; Cristene Brice, in their official capacities as members of the Harrison County Election Commission; Carolyn Handler, in their official capacities as members of the Harrison County Election Commission; Michael Watson, in his official capacity as the Secretary of State of Mississippi.

***Counsel to Defendants – Appellees Justin Wetzel, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; Toni Jo Diaz in their official capacities as members of the Harrison County Election Commission; Becky Payne, in their official capacities as members of the Harrison County Election Commission; Barbara Kimball, in their official capacities as members of the Harrison County Election Commission; Cristene Brice, in their official capacities as***

**members of the Harrison County Election Commission; Carolyn Handler, in their official capacities as members of the Harrison County Election Commission:** Tim C. Holleman, Esq., of Boyce Holleman & Associates.

**Counsel to Defendant – Appellee Michael Watson, in his official capacity as the Secretary of State of Mississippi:** Scott G. Stewart, Justin Lee Matheny, Esq., Rex Morris Shannon, III, Esq., of the Mississippi Attorney General's Office.

**Intervenors Defendants – Appellees**: Vet Voice Foundation and Mississippi Alliance for Retired Americans.

**Counsel for Intervenors Defendants – Appellees Vet Voice Foundation and Mississippi Alliance for Retired Americans**: Elisabeth C. Frost, Christopher D. Dodge, and Richard Alexander Medina of Elias Law Group, L.L.P.

**Amicus Curiae:** Democratic National Committee.

**Counsel for Amicus Curiae Democratic National Committee:** Donald B. Verrilli, Jr., Ginger D. Anders, and J. Kain Day of Munger, Tolles & Olson LLP; David W. Baria of Cosmich, Simmons & Brown, PLLC.

**Amicus Curiae:** Public Interest Legal Foundation.

***Counsel*** ***for*** **Amicus** **Curiae** **Public** **Interest** **Legal** **Foundation:** Joseph M. Nixon of Public Interest Legal Foundation, Incorporated.

Pursuant to Federal Rules of Appellate Procedure 26.1(a) and 29(a)(4)(A), undersigned counsel certifies that amicus curiae is not a publicly-held corporation, does not issue stock, and does not have a parent corporation; consequently, no publicly-held corporation owns ten percent or more of the stock of amicus.

Dated: September 9, 2024

/s/ *Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.

## STATEMENT REGARDING ORAL ARGUMENT

This case is scheduled for oral argument on Tuesday, September 24, 2024, at 3:00 PM in the En Banc Courtroom of the Wisdom Courthouse in New Orleans.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................ vi

TABLE OF CONTENTS ........................................................ vii

TABLE OF AUTHORITIES .................................................... viii

INTEREST OF AMICUS CURIAE ................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 2

ARGUMENT ...................................................................... 4

I.    Federal Law Does Not Require Ballots to Be Received by
      Election Day ................................................................. 4

      A.    The Plain Language of Federal Law Does Not Prevent
            States from Counting Ballots Received After Election
            Day .................................................................. 4

      B.    Appellants' Interpretation Cannot Be Squared with
            Historical Practices .............................................. 14

      C.    Appellants' Interpretation Would Lead to Absurd
            Results ............................................................ 22

      D.    Mississippi's Ballot-Receipt Deadline Does Not Conflict
            with Federal Law ................................................ 26

II.   Appellants' Constitutional Claims Fail for an Independent
      Reason ...................................................................... 29

CONCLUSION .................................................................... 31

CERTIFICATE OF SERVICE ..................................................... 32

CERTIFICATE OF COMPLIANCE ............................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Doe v. Walker*,
746 F. Supp. 2d 667 (D. Md. 2010) ...................................................... 22

*Fischer v. United States*,
144 S. Ct. 2176 (2024) ......................................................................... 14

*Foster v. Love*,
522 U.S. 67 (1997) ..................................................................... *passim*

*Millsaps v. Thompson*,
259 F.3d 535 (6th Cir. 2001) .......................................................... 6, 23

*Moore v. Harper*,
600 U.S. 1 (2023) ................................................................................ 26

*Newberry v. United States*,
256 U.S. 232 (1921) .............................................................................. 6

*Ross v. Blake*,
578 U.S. 632 (2016) .............................................................................. 4

*Short v. Brown*,
893 F.3d 671 (9th Cir. 2018) .............................................................. 31

*Storer v. Brown*,
415 U.S. 724 (1974) ............................................................................ 26

*Texas Indep. Party v. Kirk*,
84 F.3d 178 (5th Cir. 1996) ................................................................ 30

*Texas League of United Latin Am. Citizens v. Hughs*,
978 F.3d 136 (5th Cir. 2020) .............................................................. 30

*U.S. Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995) ............................................................................ 26

*United States v. Granderson,*
 511 U.S. 39 (1994) .............................................................. 22

*Voting Integrity Project, Inc. v. Keisling,*
 259 F.3d 1169 (9th Cir. 2001) .......................................... 23

*Voting Integrity Project, Inc. v. Bomer,*
 199 F.3d 773, 776 (5th Cir. 2000) .............................. *passim*

**STATE CASES**

*Bourland v. Hildreth,*
 26 Cal. 161 (1864) ................................................................ 9

*Chase v. Miller,*
 41 Pa. 403 (1862) ............................................................... 21

*Goodell v. Judith Basin Cnty.,*
 224 P. 1110 (Mont. 1924).................................................. 21

*Maddox v. Bd. of State Canvassers,*
 149 P.2d 112 (Mont. 1944).............................................. 8, 9

**FEDERAL STATUTES**

2 U.S.C. § 1 .............................................................................. 2

2 U.S.C. § 1a ........................................................................... 6

2 U.S.C. § 7 ................................................................... *passim*

2 U.S.C. § 8 ........................................................................... 13

3 U.S.C. § 1 ................................................................... 2, 6, 12

3 U.S.C. § 5(a)(2) ................................................................. 13

3 U.S.C. § 21 .................................................................... 12, 13

3 U.S.C. § 21(a).................................................................... 13

52 U.S.C. § 10502(d) ............................................................ 13

52 U.S.C. § 10502(g) ................................................................ 13

52 U.S.C. § 20303(a)(1) ........................................................... 10

52 U.S.C. § 20304 .................................................................... 11

52 U.S.C. § 20304(b)(1) ........................................................... 11

52 U.S.C. § 20304(b)(3) ........................................................... 11

52 U.S.C. § 20307(a) ................................................................ 11

**STATE STATUTES**

25 Pa. Cons. Stat. § 3511(a) ....................................................21

Ala. Code § 17-11-18(b) ...........................................................21

Alaska Stat. § 15.20.081 ...........................................................21

Ark. Code. Ann. § 7-5-411(a)(1)(A)(ii) ......................................21

Cal. Elec. Code § 3020(b) ..........................................................21

Cal. Political Code § 1359 (James H. Derring ed. 1924),
  https://bit.ly/4cYwCTp ................................................. 17, 18

Cal. Political Code § 1360 (James H. Derring ed. 1924),
  https://bit.ly/4cYwCTp ................................................. 17, 18

D.C. Code § 1-1001.05(a)(10B) ..................................................21

Fla. Stat. § 101.69(2)(a) .............................................................25

Fla. Stat. § 101.6952(5) .............................................................21

Ga. Code Ann. § 21-2-386(a)(1)(G) ...........................................21

Ga. Code § 21-2-382 ..................................................................25

Ill. Comp. Stat. 5/18A-15 ..........................................................21

Ill. Comp. Stat. 5/19-8 ...............................................................21

Ind. Code § 3-12-1-17(b) ................................................................... 21

Kan. Stat. Ann. 25-1132(b) .............................................................. 21

Kans. Rev. Stat. § 25-1106 (Chester I. Long, et al., eds.
    1923), https://bit.ly/4ecZRTl ....................................................... 19

Mass. Gen. Laws Chapter 54 § 93 .................................................... 21

Md. Code Ann., Elec. Law, § 9-309 .................................................. 21

Md. Code Ann., Pub. Gen. L., art. 33, § 229 (1924),
    https://bit.ly/4cY3Ty2 .................................................................. 19

Mich. Comp. Laws § 168.759a(18) .................................................... 21

Miss. Code § 23-15-637 ..................................................................... 27

Miss. Code § 23-15-637(1) ................................................................ 27

Miss. Code § 23-15-637(1)(a) ..................................................... *passim*

Miss. Code § 23-15-637(2) ................................................................ 27

Miss. Code § 23-15-645(1) ................................................................ 27

Mo. Rev. Stat. § 115.920(1) .............................................................. 21

Mo. Rev. Stat. § 11474 (1939), https://bit.ly/3ZdylRk ..................... 19

N.D. Cent. Code Ann. § 16.1-07-09 ................................................. 21

N.J. Stat. Ann. § 19:63-22(a) ........................................................... 21

N.Y. Elec. Law § 8-412(1) ................................................................ 21

Nev. Rev. Stat. § 293.269921(1)(b), (2) ........................................... 21

Ohio Rev. Code Ann. § 3509.05(D)(2)(a) ......................................... 21

Or. Rev. Stat. § 254.470(6)(e)(B) ..................................................... 21

R.I. Gen. Laws § 17-20-16 ................................................................ 21

R.I. Session L. ch. 1863 § 6 (1932), https://bit.ly/4cYBzvn ..................... 19

S.C. Code Ann. § 7-15-700(A) .................................................. 21

Tex. Elec. Code Ann. § 86.007(a)(2) ....................................... 21

Utah Code Ann. § 20A-3a-204(2)(a) ....................................... 21

Va. Code Ann. § 24.2-709(B) ................................................. 21

W. Va. Code § 3-3-5(g)(2) ...................................................... 21

Wash. Rev. Code Ann. § 29A.40.091 ...................................... 21

**OTHER AUTHORITIES**

*Cases Raising Claims Under the Uniformed and Overseas
  Citizen Absentee Voting Act*, Dep't of Just., (last accessed
  Sept. 1, 2024), https://bit.ly/3yWNdJq ................................ 11

Joseph P. Harris, *Election Administration in the United
  States* (1934) .................................................................. 16

V.O. Key, Jr., *Politics Parties and Pressure Groups* (1947) ................... 18

George Frederick Miller, *Absentee Voters and Suffrage Laws*
  (1948) ............................................................................. 15

Edward B. Moreton, Jr., *Voting by Mail*, 58 S. Cal. L. Rev.
  1261 (1985) ..................................................................... 15

Nat'l Conference of State Legislatures, *Table 11: Receipt and
  Postmark Deadlines for Absentee/Mail Ballots* (last
  updated June 12, 2024), https://bit.ly/3z9SAVs ................... 21

P. Orman Ray, *Absent Voters*, 8 Am. Pol. Sci. Rev. 442 (1914) ........ 15, 16

P. Orman Ray, *Absent-voting Laws*, 18 Am. Pol. Sci. Rev. 321
  (1924) ......................................................................... 15, 16

P. Orman Ray, *Absent-voting Laws, 1917*, 12 Am. Pol. Sci.
  Rev. 251 (1918) ............................................................ 15, 16

P. Orman Ray, *Military Absent-Voting Laws*, 12 Am. Pol. Sci. Rev. 461 (1918) ........................................................ 17

Helen M. Rocca, *A Brief Digest of the Laws Relating to Absentee Voting and Registration* (1928) .......................... 18

Universal Dictionary of the English Language 1829 (R. Hunter & C. Morris eds. 1897) ........................................ 5

N. Webster, An American Dictionary of the English Language (1844) ................................................................ 12

N. Webster, An American Dictionary of the English Language (C. Goodrich & N. Porter eds. 1869) .................... 5

Webster's Complete Dictionary of the English Language (C. Goodrich & N. Porter eds. 1882) ............................ 5

# **INTEREST OF AMICUS CURIAE**[1]

The Democratic National Committee (DNC) is the oldest continuing party committee in the United States. Its purposes and functions are to communicate the Democratic Party's position on issues; protect voters' rights; and aid the election of Democratic candidates nationwide, including by organizing citizens to register as Democrats and vote in favor of Democratic candidates. The DNC represents millions of voters, including many within Mississippi and this Circuit.

Appellants argue that a Mississippi statute, Miss. Code § 23-15-637(1)(a), is preempted by federal law, on the theory that federal law requires that every absentee vote be received by an election official by election day. If successful, Appellants' appeals would make casting a vote more difficult for thousands of Mississippians, including members of the DNC, and could invalidate numerous votes in favor of Democratic candidates. The DNC and its members have a compelling interest in preventing that deeply unfair result.

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, contributed money to fund the preparation or submission of this brief. The Court has granted amicus curiae leave to file this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Mississippi law requires that all mail-in ballots be (1) postmarked on or before the day of the election and (2) received no more than 5 days after the election. Miss. Code § 23-15-637(1)(a). That framework is clearly consistent with federal statutes establishing the Tuesday after the first Monday in November—election day—as the date on which the "election" of members of Congress (2 U.S.C. §§ 1, 7) and the "appoint[ment]" (3 U.S.C. § 1) of presidential electors occurs. Similar post-election day ballot-receipt deadlines have been adopted by dozens of states, and the practice has historical antecedents dating back over a century. Appellants' argument that federal law preempts Mississippi's ballot-receipt deadline has no support in the text of federal law. Instead, Appellants rely on a single, inapposite state-court decision and mischaracterize the historical record. This Court should affirm.

The federal statutes establishing a single election day require only that the "election"—the "act of choosing a person to fill an office"—occur by the close of election day. *Foster v. Love*, 522 U.S. 67, 71 (1997). Once the voters have made their final *choice*, i.e., cast their ballots, the relevant "election" or "appoint[ment]" ends. Federal law therefore

requires only that voters make their choice by casting their ballots by the close of election day.  But the election-day statutes do not speak to what action constitutes *casting* a ballot, leaving that to the states (consistent with other federal statutes and the Constitution).

Mississippi's ballot-receipt deadline comports with these election-day statutes by providing that mail-in ballots are cast when postmarked and by requiring that all ballots be postmarked by election day.  In effect, Mississippi has established a mailbox rule:  absentee votes are cast upon mailing, which must happen by election day.  Indeed, 28 states and the District of Columbia have adopted similar rules, allowing election officials to count absentee ballots that arrive after election day.  Many of the statutes apply to *all* eligible voters; others apply only to those voters who are overseas—in particular, members of the military who are serving our country abroad.  This widespread practice has deep historical roots, despite Appellants' attempt to argue otherwise based on a partial recounting of states' practices.

Separately, Appellants cannot state a constitutional claim based on the rights to vote or stand for office.  Mississippi's ballot-receipt deadline makes it *easier* to vote and, thus, cannot be a *burden* on those rights.

**ARGUMENT**

## I. Federal Law Does Not Require Ballots to Be Received by Election Day

Appellants' theory that federal law requires that a ballot must be *received* by an election official on or before election day finds no support in the text of any federal law or in historical practice. The "election" and "appoint[ment]" that federal law requires to occur on election day takes place when citizens make their final *choice* of their preferred candidates. Nothing in federal law speaks to when a properly submitted ballot must be received.

### A. The Plain Language of Federal Law Does Not Prevent States from Counting Ballots Received After Election Day

Appellants' contention that federal law establishing a "day for the election," 2 U.S.C. § 7, preempts Mississippi's ballot-receipt deadline turns on the meaning of "election." As always, the court must start with the plain meaning of the relevant statutes. *See, e.g.*, *Ross v. Blake*, 578 U.S. 632, 638 (2016). Construed in light of the long-established definition of "election," federal law requires that the voters make their final collective *choice* of their preferred candidates by the close of election day. They must do so by casting their ballots on or before election day. But

*receipt* of already-cast mail-in ballots—just like canvassing, examining, and counting ballots—may occur after election day.

1.  The term "election" had an understood meaning at the time of the enactment of the election-day statutes: "the combined actions of voters and officials meant to make a final selection of an officeholder." *Foster*, 522 U.S. at 71 (emphasis added) (citing N. Webster, An American Dictionary of the English Language 433 (C. Goodrich & N. Porter eds. 1869) ("American Dictionary"), published just before Congress enacted the statute that became 2 U.S.C. § 7)). Contemporaneous dictionaries uniformly defined "election" in terms of the voters' collective choice or selection of an officeholder. *See* American Dictionary at 433 ("election" means "[t]he act of choosing a person to fill an office"); Webster's Complete Dictionary of the English Language 433 (C. Goodrich & N. Porter eds. 1882) (same); Universal Dictionary of the English Language 1829 (R. Hunter & C. Morris eds. 1897) ("election means "[t]he act of electing, choosing, or selecting out of a number by vote for appointment to any office"). Just a few decades later, the Supreme Court observed that the "word [election] now has the same general significance as it did when the Constitution came into existence—final choice of an officer by

the duly qualified electors."[2]  *Newberry v. United States*, 256 U.S. 232, 250 (1921).

In other words, the term "election" is defined from the *voters'* perspective: the election occurs when the voters make their collective choice of officeholder.  And as Appellants agree, the voters make their collective choice by voting—by casting their ballots.  RNC.Br.19 (equating voting with casting a ballot).  For the voters' collective choice to occur by the close of election day, then, all votes must have been cast by the close of election day.  That conclusion is reinforced by Appellants' concession that the federal-law requirement that the "election" occur on election day does not require that elections officials have *ascertained* the voters' choice by the close of election day.  *See Millsaps v. Thompson*, 259 F.3d 535, 546 n.5 (6th Cir. 2001) ("official action to confirm or verify the results of the election extends well beyond federal election day").  Once

---

[2] Other provisions in Title 2 confirm this plain reading of "election."  A number equate the election of an officeholder with the voters' choice.  *See* 2 U.S.C. §§ 1a ("the executive of the State from which any Senator has been chosen to certify his election"), 381 ("election" means "an official general or special election to choose a Representative" (emphasis added)).  Section 1 itself ties the date on which a Senator "shall be elected" to the date of "the regular election" at which a "Representative" is to be "chosen."  *Id*. § 1 (emphasis added).

one accepts that federal statutes establishing a single election day permit officials to examine, validate, and tally ballots *after* election day, it is clear that the "election" has occurred, for federal law purposes, when all voters have cast their votes. By requiring that the election occur on election day, then, the election-day statutes require that all votes must have been cast by the close of election day.

Critically, Appellants concede that nothing in the well-established definition of the term "election" speaks to *what act constitutes casting a vote.* RNC.Br.19. That concession is correct: an "election" is the "act of choosing a person to fill an office," *Foster*, 522 U.S. at 71, but no part of that definition addresses how the "act of choosing" must occur, how voting is accomplished, or what action renders the act of voting complete. As a result, the federal requirement that the "election" occur on election day requires only that the voters' collective choice occur on election day, leaving the states to establish how votes are cast. The federal-law requirement that ballots have been cast by the close of election day therefore does not implicitly require that they have been *received* by that time.

Plaintiffs' attempt to conjure a ballot-receipt deadline out of the

requirement that the election occur on election day only confirms that federal law does not speak to ballot receipt. Failing to find any notion of ballot receipt within the definition of "election," Appellants argue that a vote necessarily has not been cast until the ballot is received by state elections officials. In other words, ballot receipt is an implicit requirement of casting a vote. But the federal statutes providing that election day "is established as the day for the election" say no such thing. 2 U.S.C. § 7. No doubt for that reason, Appellants' sole asserted support is a 1944 Montana case, *Maddox v. Bd. of State Canvassers*, which they assert held that voting is "done not merely by marking the ballot but by having it delivered to the election officials and deposited in the ballot box before the closing of the polls on election day." 149 P.2d 112, 115 (Mont. 1944). But the *Maddox* court located that requirement in the "election statutes of *Montana*," which defined the act of casting a vote as including *delivery* of the ballot to state officials. *Id*. (emphasis added). The court left no doubt on that score: "Since *the state law* provide[d] for voting by ballots deposited with the election officials, that act must be completed on the day designated by state and federal laws." *Id*. (emphasis added). Put another way, federal law required that all votes be cast by the close

of election day, *id*. at 114, and state law required that, for a vote to be cast, it had to be deposited with elections officials.[3] *Maddox* thus confirms that federal law does not speak to when a ballot must be received.

Appellants also rely on *Foster*'s statement that an election involves "the *combined* actions of voters and officials meant to make a final selection of an officeholder" to argue that a ballot must be received by an official for voting to occur. *Foster*, 522 U.S. at 71 (emphasis added); Libertarian.Br.23; RNC.Br.24-25. But *Foster*'s reference to the "combined actions" of voters and officials offers no support for Appellants' position. Voting by mail *does* involve the "combined actions" of voters and officials, as it requires extensive official actions even before mail-in ballots are received. To name just a few, officials must provide absentee ballot applications to eligible voters; process applications; prepare absentee voting instructions and ballots; and mail those instructions and

---

[3] Indeed, courts have long recognized that there are various ways to define how to cast a vote. *Bourland v. Hildreth*, 26 Cal. 161, 194 (1864) ("vote" means "expression of choice by or through a ballot, or by outcry or any other particular means by which the choice of the voter may be lawfully made known or communicated to others in the given instance").

ballots to approved voters.  *See* Miss. Code §§ 23-15-621 to 23-15-657.  So the claim that Mississippi voters' actions are "unilateral" has no basis.  *See* Libertarian.Br.10.  Nor can Appellants claim that officials' *receipt* of ballots is somehow distinguishable from the myriad other official actions necessary to facilitate mail-in voting, such that voters' actions are "unilateral" until their ballots are received.  *Foster* provides no support for such a distinction; it defined "election" as the combined actions of voters and officials "meant to make a final selection of an officeholder," and officials' provision of absentee ballots and other preparatory actions certainly are "meant to" facilitate voters' "final selection."  523 U.S. at 72.

2.   Other provisions of federal election law reinforce the conclusion that the election-day statutes permit ballots to be received after election day.  Most clearly, federal statutes fostering voting by members of the military recognize that states have leeway to impose ballot-receipt deadlines that post-date election day.  Congress has guaranteed that certain members of the uniformed services may vote in elections for federal office by absentee ballot, even if denied a ballot by their home state.  *See* 52 U.S.C. § 20303(a)(1).  To implement that guarantee, Congress established procedures for collection of absentee

ballots and delivery to state officials. *See id.* § 20304. Generally, a completed absentee ballot must be collected by a federal official by the "seventh day preceding" the "general election" and then transferred to the U.S. Post Office. *Id.* § 20304(b)(3). Then, the ballot must be delivered to appropriate officials "not later than the date by which an absentee ballot must be *received* in order to be *counted* in the election." *Id.* § 20304(b)(1) (emphases added). These provisions make clear that the "election" occurs on a particular date, but the date on which a ballot must be "received" to be "counted" after being submitted in the election may be a different date—one that is determined by *state* law. *Id.* In other words, Section 20304(b)(1) recognizes that the "election" does not necessarily include the act of receiving the votes, so the statute expressly provides states leeway to determine the date on which votes must be received.

Moreover, the Executive Branch regularly uses its authority under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) to seek court orders *requiring* states to extend ballot-receipt deadlines several days past election day. 52 U.S.C. § 20307(a) (enforcement authority). Those orders ensure that military members serving overseas are not disenfranchised. *See Cases Raising Claims Under the Uniformed*

*and Overseas Citizen Absentee Voting Act*, Dep't of Just., (last accessed Sept. 9, 2024), https://bit.ly/3yWNdJq.  That practice cannot be reconciled with Appellants' claim that the election-day statutes require all ballots to have been received by election day.

In addition, federal statutes governing the presidential election similarly focus on the voters' choice and provide states leeway with respect to ballot-receipt deadlines.  Section 1 of Title 3 provides that presidential electors shall be "appointed" "on election day."  *See* 3 U.S.C. §§ 1, 21.  The term "appointed" was introduced into the statutory provisions in 1845, when "appointment" meant "designation to office."  N. Webster, An American Dictionary of the English Language 46 (1844) (similarly defining appoint and appointed).  That definition parallels *Foster*'s definition of "election" as the "final selection" of an officeholder.  *See Foster*, 522 U.S. at 71.  In either case, the voters' final choice is what matters.  Other provisions in Title 3 support this conclusion.  Section 21 provides that states may "modif[y] the period of voting" for president based on force majeure events, and when they do, "election day" shall include the "modified period of voting."  3 U.S.C. § 21(a).  Thus, for federal purposes, "election day" is when "voting" occurs; there is no mention of

administrative actions such as counting ballots or receiving them.[4]  *See also* 3 U.S.C. § 5(a)(2) (reporting the number of votes "given or cast," which suggests choice is the key inquiry).  While 52 U.S.C. § 10502(d), which requires states to adopt absentee voting procedures for president, states that ballots must be received by the time the polls close on election day, Section 10502(g) allows "any State" to adopt "less restrictive voting practices."  52 U.S.C. § 10502(d), (g).  That provision too contemplates states' leeway to enact ballot-receipt deadlines that fall after election day.

Appellants rely heavily on Section 10502(d)'s election-day ballot-receipt deadline, but as just noted, the statute in fact gives states discretion to adopt a later deadline.  *See* RNC.Br.32-33 (citing, *e.g.*, 52 U.S.C. § 10502(d)).  And even if that were not the case, Congress's adoption of an express ballot-receipt deadline in statutes addressing particular voting contexts supports *Appellees'* position, not Appellants'.

---

[4] Appellants rely on Section 21 and other special-election provisions to argue that Congress has expressly provided for situations in which voting occurs after election day.  *See* RNC.Br.20-21.  That is true enough, but it does not help Appellants.  As Appellants admit, these statutes "renew the opportunity for a final choice by the duly qualified electors."  *Id*. at 21.  That says nothing about what constitutes the voters' "final choice" in the first instance.

If the election-day statutes already established a ballot-receipt deadline, those statutes would be surplusage. *See Fischer v. United States*, 144 S. Ct. 2176, 2187 (2024). Thus, those statutes' existence confirms that Congress understood the election-day statutes to be silent as to when ballots must be received in order to be counted.

## B. Appellants' Interpretation Cannot Be Squared with Historical Practices

This Court has held that courts may not "read the federal election day statutes in a manner that would prohibit … a universal, longstanding practice." *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 776 (5th Cir. 2000). Yet accepting Appellants' construction of the election-day statutes would do just that. Appellants' assertions that states have "[u]niversally" required receipt by an election official on election day, *see* RNC.Br.6, or that states have always treated "Election Day" as a "receipt day," *see* Libertarian.Br.30, 37, are simply false. For many decades, states have used absentee-balloting frameworks like Mississippi's—that is, frameworks that require ballots to be mailed by election day but permit them to be *first received* by election officials afterwards. Appellants can argue that post-election receipt deadlines are a "relatively new phenomenon" only by ignoring the full historical record.

14

*E.g.*, RNC.Br.6.

States have permitted absentee balloting for "[m]ore than a century." *Bomer*, 199 F.3d at 776 (citing Edward B. Moreton, Jr., *Voting by Mail*, 58 S. Cal. L. Rev. 1261, 1261-62 (1985)); *cf.* George Frederick Miller, *Absentee Voters and Suffrage Laws* 179-97 (1948) (collecting laws, enacted as early as 1635, that address indirect voting). Indeed, all but four states had absentee voting provisions by 1924. P. Orman Ray, *Absent-voting Laws*, 18 Am. Pol. Sci. Rev. 321, 321 (1924). For civilian voting provisions, these states fell into one of "two general types, namely, the Kansas and North Dakota types." P. Orman Ray, *Absent-voting Laws, 1917*, 12 Am. Pol. Sci. Rev. 251, 251 (1918). Some states in both camps permitted votes submitted by election day to be *first received* by an election official at a later date.

For example, statutes in the first (Kansas) camp allowed for the receipt of ballots after election day. P. Orman Ray, *Absent Voters*, 8 Am. Pol. Sci. Rev. 442, 442-43 (1914); *see* Joseph P. Harris, *Election Administration in the United States* 287-88 (1934). Under those statutes, the absentee voter was required appear at a polling place on election day, swear that he was a qualified voter (among other things), and complete

a ballot. *See* Ray, 8 Am. Pol. Sci. Rev. at 443. Then, the vote would be "sent by mail to the proper official" before "the result of the official canvass [wa]s declared." *Id.* Nothing about this description suggests the mail-in vote had to be handed to, or mailed by, an election official. *See id.* Instead, the voter could mail his own ballot on election day, which would thereafter be received by an election official. *See id.*[5]

While statutes in the second (North Dakota) camp generally required absentee ballots to be received by election day, that was not a uniform practice. *See* Ray, *Absent-voting Laws, 1917*, 12 Am. Pol. Sci. Rev. at 254, 258-59. In many states, the absentee voter was required to complete his ballot before "any officer" authorized to administer oaths (not necessarily an election official) and then mail the ballot to his polling place to be opened and counted on election day. *Id.* But there were exceptions. California and Pennsylvania deferred the "counting of absent[ ]voters' ballots" until "the official canvas." Ray, *Absent-Voting Laws*, 18 Am. Pol. Sci. Rev. at 322. In this way, the California and

---

[5] The fact that whether the voter or the official is the one who drops a ballot into the mail is meaningful under Appellants' theory is further evidence of its absurdity.

Pennsylvania laws more "closely conform[ed] to the Kansas (1911) statute," but both made "more adequate provision for safeguarding the secrecy of the ballot." *Id.* And the California statute *required* the voter to mail his own ballot, which would be received by an official for the first time *after* election day. *See* Cal. Political Code § 1359(b)-(c), 1360 (James H. Derring ed. 1924), https://bit.ly/4cYwCTp.

Many states also passed statutes designed to allow "qualified voters in military service to vote outside their home precincts." *See* P. Orman Ray, *Military Absent-Voting Laws*, 12 Am. Pol. Sci. Rev. 461, 461 (1918).[6] Those laws first appeared during the Civil War, *see id.* at 462, when several states enacted laws ensuring that soldiers could exercise their franchise despite having to vote outside their states. *See generally* J.H. Benton, *Voting in the Field* (1915). Several states allowed Civil War soldiers to "*vot*[e] in the field" by casting their votes in military camps. *Id.* at 317-318 (emphasis added). In North Carolina, for instance, soldiers voted in the field on election day, and their votes, "if received" by county elections officers "within twenty days after they were cast," would be

---

[6] Occasionally, a single provision addressed both military and civilian absentee voters. *See* Ray, 12 Am. Pol. Sci. Rev. at 461.

included in the state's returns. *Id.* at 30-31. Other states similarly extended the "time for canvassing the votes" thereafter received in the relevant state by an election official. *Id.* at 317-318; *id.* at 241 (Maryland statute requiring the "Governor" to "wait for fifteen days" so as "to allow the returns of the soldiers' vote"); ROA.972-973 (government's statement of interest).[7]

All told, states have been enacting ballot-receipt deadlines that fall *after* election day for over a century. *See* V.O. Key, Jr., *Politics Parties and Pressure Groups* 672 (1947); *cf.* Helen M. Rocca, *A Brief Digest of the Laws Relating to Absentee Voting and Registration* (1928). After the Civil War, ballots often could be received after election day:

- In California, a voter could appear before "any notary public" to complete his ballot, which was then "to be by him returned by registered mail" to election officials. Cal. Political Code § 1359(b)-(c) (James H. Derring ed. 1924), https://bit.ly/4cYwCTp. The completed ballot had to be received "within fourteen days after the date of the election." *Id.* § 1360.

- In Kansas, a voter could cast his vote and complete an affidavit in the presence of "any officer" authorized to

_____

[7] Appellants note that states designated soldiers as elections officials to address concerns that elections should not be conducted by military officials. RNC.Br.5. But in the states described, field-cast ballots still had to be received by *in-state* elections officials to be included in the results—and states permitted *that* receipt to occur well after election day.

administer oaths in "Kansas or the United States." Kans. Rev. Stat. § 25-1106 (Chester I. Long, et al., eds. 1923), https://bit.ly/4ecZRTl. Then, the vote must have been "mailed in sufficient season that it reach" election officials "the tenth day following such election." *Id.*

- In Maryland, military voters had to complete their ballot in the presence of a "witness," and "then mail" the ballot to the Secretary of State. Md. Code Ann., Pub. Gen. L., art. 33, § 229 (1924), https://bit.ly/4cY3Ty2. The ballot had to be "marked on or before election day, and mailed in time to arrive at its destination not more than 7 days after election day." *Id.*

- In Missouri, a voter must complete affidavit and ballot before "an officer authorized by law to administer oaths." Mo. Rev. Stat. § 11474 (1939), https://bit.ly/3ZdylRk. Then, the ballot could be "sent by mail" "by such voter," or *"if more convenient,"* hand delivered to election officials. *Id.* (emphasis added). "[I]n any event," the ballot had to be received by election officials "not later than 6 o'clock p. m. the day next succeeding the day of such election." *Id.*

- In Rhode Island, a voter could vote absentee "on … election day" before "some officer" authorized to administer oaths. R.I. Session L. ch. 1863 § 6 (1932), https://bit.ly/4cYBzvn. Then, the voter had to "mail" the completed ballot "on … election day" so that it could be received by "midnight of the Monday following said election."

It is true that, during the same period, some states required receipt of ballots by election day. *See* RNC.Br.4-6, 21-24 (collecting a few provisions); Libertarian.Br.35-44 (similar). But that proves the DNC's point. Federal law permits states to enact ballot-receipt deadlines of their choosing, consistent with the requirement that the voters' final

choice be made on election day. Since the Civil War, states have enacted various voting deadlines to fit each state's particular needs. Many states enacted deadlines that fell after election day. Appellants' contrary contention relies on ignoring the variety present in the historical record. *Cf.* RNC.Br.6.

Nor can the Appellants dismiss states' longstanding practice of post-election day receipt deadlines as a few "late-in-time outliers" that "do not provide much insight into historical meaning." *Cf.* Libertarian.Br.40-41 & nn. 36-38; RNC.Br.23. States permitted receipt of ballots after election day during the Civil War, just before the enactment of the federal election-day statute governing congressional elections. Congress must be presumed to have been aware of that practice. Moreover, that post-election day ballot-receipt deadlines have existed for over a century, without any suggestion that they were inconsistent with federal law, is compelling evidence that federal law has never been understood to require that ballots be received by election day. Indeed, Appellants are unable to point to even a *single* example of a post-

election day ballot-receipt deadline being struck down as inconsistent with federal law.[8]

Today, at least 28 states and the District of Columbia permit mailed ballots to arrive after election day for all or some voters, including overseas and military voters.[9] That practice protects the franchise of military voters stationed abroad, and it complies with Congress's direction that citizens who are overseas, including members of the

---

[8] Some statutes were struck down under *state* law. *See* Libertarian.Br.36 n. 30 (citing *Chase v. Miller*, 41 Pa. 403 (1862)); *Goodell v. Judith Basin Cnty.*, 224 P. 1110, 1112 (Mont. 1924).

[9] *See* Ala. Code § 17-11-18(b); Alaska Stat. § 15.20.081; Ark. Code. Ann. § 7-5-411(a)(1)(A)(ii); Cal. Elec. Code § 3020(b); D.C. Code § 1-1001.05(a)(10B); Fla. Stat. § 101.6952(5); Ga. Code Ann. § 21-2-386(a)(1)(G); 10 Ill. Comp. Stat. 5/19-8, 10 Ill. Comp. Stat. 5/18A-15; Ind. Code § 3-12-1-17(b); Kan. Stat. Ann. 25-1132(b); Mass. Gen. Laws ch. 54 § 93; *see* Md. Code Ann., Elec. Law, § 9-309 (allowing the State Board to establish receipt deadline, which has been set for after election day); Mich. Comp. Laws § 168.759a(18); Miss. Code Ann. § 23-15-637(1)(a); Mo. Rev. Stat. § 115.920(1); Nev. Rev. Stat. § 293.269921(1)(b), (2); N.J. Stat. Ann. § 19:63-22(a); N.Y. Elec. Law § 8-412(1); N.D. Cent. Code Ann. § 16.1-07-09; Ohio Rev. Code Ann. § 3509.05(D)(2)(a); Or. Rev. Stat. § 254.470(6)(e)(B); 25 Pa. Cons. Stat. § 3511(a); R.I. Gen. Laws § 17-20-16; S.C. Code Ann. § 7-15-700(A); Tex. Elec. Code Ann. § 86.007(a)(2); Utah Code Ann. § 20A-3a-204(2)(a); Va. Code Ann. § 24.2-709(B); Wash. Rev. Code Ann. § 29A.40.091; W. Va. Code § 3-3-5(g)(2) (tied to canvassing date, which is after election day); *see also* Nat'l Conference of State Legislatures, *Table 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots* (last updated June 12, 2024), https://bit.ly/3z9SAVs.

military, must not be disenfranchised. *Bomer*, 199 F.3d at 777 (purposes behind UOCAVA); *see also Doe v. Walker*, 746 F. Supp. 2d 667, 670-71 (D. Md. 2010) (purposes of military-voting acts). Accepting Appellants' argument would cast doubt on a broad range of statutes and threaten to disenfranchise mail-in voters, including members of the military who vote in Mississippi. *Bomer*, 199 F.3d at 776.

## C. Appellants' Interpretation Would Lead to Absurd Results

Statutes should be interpreted to reach "a sensible construction that avoids attributing to [Congress] either an unjust or an absurd conclusion." *United States v. Granderson*, 511 U.S. 39, 56 (1994) (quotation marks omitted). Appellants' construction violates that principle.

First, Appellants offer no meaningful basis for distinguishing between votes received *after* election day and votes received *before* election day. If counting a ballot received after election day "holds voting open after Election Day," *see* ROA.34 (¶ 68); ROA.1287 (¶ 42), it would follow that counting a ballot received *before* election day would likewise extend the "election" to a period before the congressionally prescribed day. But every court to address that issue has held that the federal

election-day statutes do not preempt state laws permitting ballots to be received before election day. *See Bomer*, 199 F.3d at 777 (Texas law); *Millsaps*, 259 F.3d at 549 (Tennessee law); *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1176 (9th Cir. 2001) (Oregon law). For good reason. Otherwise, absentee voting would be valid only for votes received by an election official *on* election day itself, a system that would make no sense and would disenfranchise any number of voters.

Attempting to avoid that problem, Appellants contend that the "election" must be *final* as of election day but can begin taking place before election day. But that argument is entirely atextual. Title 2, Section 7 provides that election day is "the day for the election." 2 U.S.C. § 7. That text provides no basis to conclude that ballots cannot be received after election day, but may be received before it.

Second, as noted above, Appellants concede that federal law allows state elections officials to take the actions necessary to determine the voters' choice—canvassing, examining, and tallying ballots—after election day. But Appellants cannot draw any meaningful distinction between *counting* ballots and *receiving* them. *See* RNC.Br.20-21, 25-26. The necessary premise of Appellants' concession is that the federal

designation of election day as "the day for the election," 2 U.S.C. § 7, does not speak to official actions like "canvass[ing], tally[ing], and certify[ing]" votes and therefore does not limit when they may occur. RNC.Br.21. But if that is true of back-end official actions that are necessary to determine the results of the election, there is no reason why receipt of ballots by mail would be any different. Certainly nothing in the statutory text distinguishes ballot receipt from ballot canvassing or counting. Appellants refer to canvassing, tallying, and counting as "back-end administrative processes" that occur "*after*" the election, *id.*, but—again—that conclusory assertion finds no basis in federal law. Once a state has provided (as here) that a vote is cast by placing the ballot in the mail, the voters' final *choice* is complete upon mailing of the absentee ballots—and checking the incoming mail for those already-cast ballots is just as administrative as tallying them.

Third, Appellants' interpretation would create difficult "custody" questions as to which federal law provides no guidance. Appellants' core position is that a vote is not cast for federal-law purposes until the ballot is "placed in the custody of election officials." RNC.Br.1; Libertarian.Br.23. But determining who has "custody" over a ballot may

not be straightforward. For example, many states employ ballot drop boxes. *See, e.g.*, Ga. Code § 21-2-382; Fla. Stat. § 101.69(2)(a). Even if those boxes are owned and operated by a state or municipality, it may not be clear whether they qualify as the custody of *election officials*. If custody turns on collecting the ballots from a drop box, numerous voters might be disenfranchised simply because elections officials did not manage to collect the ballots until just after midnight on the day after the election. Moreover, because Appellants' position is evidently that the federal election-day statutes require elections officials to have "custody" of ballots by the close of election day, what counts as "custody" would appear to be a question of federal law. But federal law provides no guidance on that question.

Appellees' construction, by contrast, avoids each of these absurd results. The election-day statutes say nothing about when ballots must be received. There is therefore no need to jury-rig the construction of federal law to justify counting ballots received *before* election day and not ballots received *after* election day. Nor is there any need to distinguish between receipt and counting. Rather, the election-day statutes merely require the voting system that has been in place for more than a century:

all votes must be cast by election day.[10]

### D. Mississippi's Ballot-Receipt Deadline Does Not Conflict with Federal Law

Mississippi's ballot-receipt deadline is preempted only if the deadline "directly conflict[s]" with the federal election-day statutes. *Bomer*, 199 F.3d at 775. That standard reflects the Constitution's conferral on the states of "the initial task" of prescribing the manner and mechanics of congressional elections, *Storer v. Brown*, 415 U.S. 724, 729-30 (1974); *Foster*, 522 U.S. at 69, subject to Congress's superior authority as well as all applicable federal and state constitutional constraints. *See Moore v. Harper*, 600 U.S. 1, 10 (2023); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832-33 (1995). Although Appellants take issue with this Court's use of the "direct conflict" preemption standard, *Bomer* is binding precedent, and in any event, Mississippi's law is not preempted even under the lower standard for which Appellants advocate.

The federal election-day statutes require only that the voters' final collective choice of officeholder be made by the close of election day.

---

[10] Other state laws (e.g., canvassing deadlines) and federal law (e.g., ECRA) limit states' ability to set receipt deadlines far beyond election day, but those limits are not implicated here.

Mississippi law complies with that requirement by requiring all votes to be completed and submitted, and thus the "election" to conclude, as of election day. Miss Code § 23-15-637(1)(a). Mississippi law provides that absentee ballots are cast when they are completed, placed in the mail, and "postmarked," which establishes when the ballot was placed in the mail. Miss. Code §§ 23-15-637. Subsection (1) of that provision states that absentee ballots "received by mail" "must be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." Miss. Code § 23-15-637(1). And subsection (2) states that "[t]he registrar shall deposit all absentee ballots which have been *timely cast* and *received by mail*." Miss. Code § 23-15-637(2). The statute thus makes clear that ballots are "cast" when they are "postmarked," and "received" when the mail reaches the registrar. Mississippi's election-day postmarking requirement therefore requires that absentee votes must be cast by the close of election day. Section 23-15-645(1) confirms as much, stating that "[a]bsentee ballots" will be announced simultaneously with "all *other* votes *cast* on election day." Miss. Code § 23-15-645(1) (emphases added).

In effect, Mississippi has established a mailbox rule for absentee

ballots: an absentee ballot is "cast," and thus the final choice of officeholder is made, when a citizen completes and mails their ballot. Appellants' suggestion that Mississippi law holds open the election beyond election day is thus both legally and factually wrong. It is legally wrong because Mississippi law provides that all votes must be cast by the close of election day—meaning that the voters' collective choice is made on election day. It is factually wrong because the postmarking requirement establishes that the voter's choice is final as a *practical* matter as of election day: once the ballot is in the mailbox, the voter cannot change the decision and thus the choice is final. Because Mississippi law provides that absentee ballots must be cast by the close of election day, the statutes comply with the federal election-day requirement.

Moreover, Section 23-15-637(1)(a) does not "foster either of the primary evils identified by Congress as reasons for passing the federal statutes[.]" *Bomer*, 199 F.3d at 777. As this Court has explained, Congress enacted the election-day statutes to ensure that the voting process would not be distorted by the influence of early federal elections in some states, and to prevent voters from being burdened by multiple

election days.  *Id*.  Because Mississippi requires absentee ballots to be completed and mailed by election day, every voter must choose a candidate by election day—and thus voters cannot be influenced by earlier results in other states.  Conversely, allowing absentee ballots to arrive a bit *later* than election day cannot "influence later voting in other [s]tates" because there is *no* later voting in other states.  *See id.*  Mississippi's statute also does not establish two (or more) election days: every vote must be submitted as of election day.  *See id.*

Indeed, Mississippi's statute *furthers* the overarching purpose of the election-day statutes.  As this Court has explained, the election-day statutes "reflect[] Congress's concern that citizens be able to exercise their right to vote."  *Bomer*, 199 F.3d at 777.  Construing the statutes in a way that "imped[es] citizens in exercising their right to vote" would thus contravene Congress's intent.  *Id*.  But that would be the precise result of accepting Appellants' position: Mississippi officials would have to reject valid votes cast by election day simply because they were received after election day.  That cannot be what Congress intended.

## II.  Appellants' Constitutional Claims Fail for an Independent Reason

Appellants' constitutional claims fail for an independent reason:

nothing about Mississippi law burdens Appellants' rights to vote or stand for office. To the contrary, Appellants are seeking to diminish the right to vote, and thus, the Court can affirm dismissal of these claims on that alternative ground.

Burdens on a citizen's right to vote are reviewed under the *Anderson-Burdick* test. *See Texas League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 143 (5th Cir. 2020) (assuming right to vote was implicated); *Texas Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996). The first step requires determining whether the right has been burdened. *See Hughs*, 978 F.3d at 144-45. Laws that do not make it harder to vote do not implicate the right to vote. *Id.* at 144. The same is true of laws that do not impede a candidate's ability to stand for office. *Cf. Texas Indep. Party*, 84 F.3d at 184.

Nothing about Mississippi's ballot-receipt deadline makes it harder for voters to exercise their right to vote or for candidates to run for office. It simply ensures that qualified voters do not have their timely-cast ballots rejected. It accordingly *protects* the right to vote. Indeed, it is Appellants' claim that threatens to impede the right to vote. Their theories therefore fail as a matter of law under *Anderson-Burdick*. *See*

*Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018) (affirming dismissal of challenge to law that "does not burden anyone's right to vote" and instead "makes it easier for some voters to cast their ballots by mail").

## **CONCLUSION**

For the foregoing reasons, the Court should affirm.

Dated:  September 9, 2024

Respectfully submitted,

*/s/ Donald B. Verrilli, Jr.*

David W. Baria
COSMICH, SIMMONS &
  BROWN, PLLC
544 Main Street
Bay St. Louis, MS 39520
(228) 242-4987
david.baria@cs-law.com

Donald B. Verrilli, Jr.
Ginger D. Anders
J. Kain Day
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
  Suite 500E
Washington, DC 20001
(202) 220-1100
Donald.Verrilli@mto.com
Ginger.Anders@mto.com
Kain.Day@mto.com

## CERTIFICATE OF SERVICE

I certify that on September 9, 2024, this document was served on

all parties or their counsel of record through the CM/ECF system.

Dated: September 9, 2024
/s/ *Donald B. Verrilli, Jr.*

Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
 Suite 500E
Washington, DC 20001
(202) 220-1100
Donald.Verrilli@mto.com

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,479 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, New Century Schoolbook.

3.    Per this Court's rules, (a) the required privacy redactions have been made to this motion, 5th Cir. R. 25.2.13; (b) the electronic submission is an exact copy of any paper document to be filed at a future date, *see* 5th Cir. R. 25.2.1; and (c) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated:  September 9, 2024

*/s/ Donald B. Verrilli, Jr.*

Donald B. Verrilli, Jr.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW
 Suite 500E
Washington, DC 20001
(202) 220-1100
Donald.Verrilli@mto.com