No. 24-60395

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

REPUBLICAN NATIONAL COMMITTEE; MISSISSIPPI REPUBLICAN PARTY;
JAMES PERRY; MATTHEW LAMB,
*Plaintiffs-Appellants*

*v.*

JUSTIN WETZEL, IN HIS OFFICIAL CAPACITY AS THE CLERK AND REGISTRAR OF THE CIRCUIT
COURT OF HARRISON COUNTY; TONI JO DIAZ, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF
THE HARRISON COUNTY ELECTION COMMISSION; BECKY PAYNE, IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF THE HARRISON COUNTY ELECTION COMMISSION; BARBARA
KIMBALL, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE HARRISON COUNTY ELECTION
COMMISSION; CHRISTENE BRICE, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE
HARRISON COUNTY ELECTION COMMISSION; CAROLYN HANDLER, IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF THE HARRISON COUNTY ELECTION COMMISSION; MICHAEL
WATSON, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF STATE OF MISSISSIPPI,
*Defendants-Appellees*

VET VOICE FOUNDATION; MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS,
*Intervenor Defendants-Appellees*

LIBERTARIAN PARTY OF MISSISSIPPI,
*Plaintiff-Appellant*

*v.*

JUSTIN WETZEL, IN HIS OFFICIAL CAPACITY AS THE CLERK AND REGISTRAR OF THE CIRCUIT
COURT OF HARRISON COUNTY; TONI JO DIAZ IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF
THE HARRISON COUNTY ELECTION COMMISSION; BECKY PAYNE, IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF THE HARRISON COUNTY ELECTION COMMISSION; BARBARA
KIMBALL, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE HARRISON COUNTY ELECTION
COMMISSION; CRISTENE BRICE, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE
HARRISON COUNTY ELECTION COMMISSION; CAROLYN HANDLER, IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF THE HARRISON COUNTY ELECTION COMMISSION; MICHAEL
WATSON, IN HIS OFFICIAL CAPACITY AS THE SECRETARY OF STATE OF MISSISSIPPI,
*Defendants-Appellees*

Appeals from the United States District Court
for the Southern District of Mississippi
Nos. 1:24-cv-25-LG-RPM, 1:24-cv-37-LG-RPM

**DEFENDANT-APPELLEE MISSISSIPPI SECRETARY OF STATE'S RESPONSE BRIEF**

LYNN FITCH
  *Attorney General*
SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
E-mail: scott.stewart@ago.ms.gov

*Counsel for Defendant-Appellee*
  *Michael Watson*

# CERTIFICATE OF INTERESTED PERSONS

Under this Court's Rule 28.2.1, governmental parties need not furnish a certificate of interested persons.

> *s/ Scott G. Stewart*
> Scott G. Stewart
> *Counsel for Defendant-Appellee*
> *Michael Watson*

## STATEMENT REGARDING ORAL ARGUMENT

This Court has ordered that oral argument will be heard at 3:00 pm on September 24, 2024.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ...................................ii

TABLE OF AUTHORITIES .......................................................... v

INTRODUCTION ........................................................................ 1

STATEMENT OF JURISDICTION ........................................... 4

STATEMENT OF THE ISSUE ................................................... 4

STATEMENT OF THE CASE ..................................................... 5

    Legal Background ............................................................... 5

    Procedural Background................................................... 8

SUMMARY OF ARGUMENT .................................................... 14

STANDARD OF REVIEW......................................................... 15

ARGUMENT .............................................................................. 16

I.    Mississippi Law Is Not Preempted ................................. 16

    A.    Statutory Text Establishes That Mississippi Law Harmonizes With The Federal Election-Day Statutes ............................ 16

    B.    Statutory Context Confirms That Mississippi Law Harmonizes With The Federal Election-Day Statutes ........ 32

    C.    Widespread Practice Confirms That Mississippi Law Harmonizes With The Federal Election-Day Statutes ........ 40

    D.    Mississippi Law Comports With The Aims Of The Federal Election-Day Statutes ........................................... 43

II.    Mississippi Law Does Not Violate Plaintiffs' Rights ..................... 47

CONCLUSION ........................................................................ 50

CERTIFICATE OF SERVICE ................................................... 51

CERTIFICATE OF COMPLIANCE ............................................ 51

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
   570 U.S. 1 (2013)..............................................3, 10, 24, 31, 32, 39, 41

*Bognet v. Degraffenreid*,
   141 S. Ct. 2508 (2021).................................................................. 13, 29

*Bognet v. Secretary Commonwealth of Pennsylvania*,
   980 F.3d 336 (3d Cir. 2020) ................................................... 14, 29, 30

*Bost v. Illinois State Board of Elections*,
   684 F. Supp. 3d 720 (N.D. Ill. 2023)....................... 3, 13, 30, 33, 40, 41

*Bost v. Illinois State Board of Elections*,
   — F.4th —, 2024 WL 3882901
   (7th Cir. Aug. 21, 2024) ......................................................... 3, 13, 30

*Bullock v. Carter*,
   405 U.S. 134 (1972)...................................................................... 48-49

*Bush v. Gore*,
   531 U.S. 98 (2000) (per curiam)......................................................... 49

*Democratic National Committee v. Wisconsin State Legislature*,
   141 S. Ct. 28 (2020)........................................................ 21, 22, 24, 41

*Foster v. Love*,
   522 U.S. 67 (1997)....2, 4-6, 11, 12, 14, 17, 18, 20, 21, 23, 24, 27-29, 44

*Harris v. Florida Elections Canvassing Commission*,
   122 F. Supp. 2d 1317 (N.D. Fla. 2000) ............................ 13, 19, 30, 41

*Harris v. Florida Elections Commission*,
   235 F.3d 578 (11th Cir. 2000) (per curiam)................................. 13, 19

*Maddox v. Board of State Canvassers,*
149 P.2d 112 (Mont. 1944)...................................................... 25, 26, 27

*Millsaps v. Thompson,*
259 F.3d 535 (6th Cir. 2001) ............................................................ 36

*Newberry v. United States,*
256 U.S. 232 (1921)................................................. 1-2, 11, 17, 18, 42

*Republican National Committee v. Democratic National Committee,*
140 S. Ct. 1205 (2020) (per curiam)............................ 19, 21, 22, 23, 29

*Texas League of United Latin American Citizens v. Hughs,*
978 F.3d 136 (5th Cir. 2020) ............................................................ 22

*United States v. Classic,*
313 U.S. 299 (1941)....................................................................... 5, 18

*Voting Integrity Project, Inc. v. Bomer,*
199 F.3d 773 (5th Cir. 2000)..................2, 10, 12, 14, 20, 21, 23, 24, 27

*Voting Integrity Project, Inc. v. Keisling,*
259 F.3d 1169 (9th Cir. 2001)...... 3, 6, 21, 31, 32, 33, 37, 38, 40, 42, 45

*White Buffalo Ventures, LLC v. University of Texas at Austin,*
420 F.3d 366 (5th Cir. 2005) ............................................................ 15

*Williams v. Rhodes,*
393 U.S. 23 (1968)............................................................................ 49

## Constitutional Provisions

U.S. Const. art. I, § 4, cl. 1 .............................................. 5, 13, 39, 41, 47

U.S. Const. art. II, § 1, cl. 1................................................................... 5

U.S. Const. art. II, § 1, cl. 2................................................................... 5

U.S. Const. art. II, § 1, cl. 3.............................................................. 5, 47

U.S. Const. art. VI, cl. 2 ................................................. 31

U.S. Const. amend. I ................................................. 8, 48

U.S. Const. amend. XII ................................................. 5

U.S. Const. amend. XIV ................................................. 8, 9, 48

U.S. Const. amend. XVII ................................................. 6

U.S. Const. amend. XX ................................................. 47

**Statutes**

2 U.S.C. § 1 ................................................. 1, 4, 7, 8, 17, 47

2 U.S.C. § 7 ................................................. 1, 4, 6, 8, 17, 29, 47

2 U.S.C. § 8 ................................................. 34, 35

3 U.S.C. § 1 ................................................. 1, 4, 7, 8, 17, 26, 35, 36

3 U.S.C. § 5 ................................................. 47

3 U.S.C. § 7 ................................................. 47

3 U.S.C. § 21 ................................................. 7, 17, 35

25 Pa. C.S.A. § 3511 ................................................. 39

28 U.S.C. § 1291 ................................................. 4

28 U.S.C. § 1331 ................................................. 4

28 U.S.C. § 1343 ................................................. 4

52 U.S.C. § 10502 ................................................. 3, 32, 33, 37

52 U.S.C. §§ 20301-20310 ................................................. 12, 33

52 U.S.C. § 20302 ................................................. 33

52 U.S.C. § 20303 ............................................... 33

52 U.S.C. § 20304 ............................................... 34

52 U.S.C. § 20306 ..................................... 3, 34, 38

Act of Jan. 23, 1845, ch. 1, 5 Stat. 721 ................... 7

Act of Feb. 2, 1872, ch. 11, 17 Stat. 28 .................. 6

Act of May 23, 1872, ch. 198, 17 Stat. 157 ............. 36

Act of June 4, 1914, ch. 103, 38 Stat. 384 ............... 6

Act of Sept. 16, 1942, ch. 561, 56 Stat. 753 ......... 36, 37

Alaska Stat. § 15.20.081 .................................. 39

Cal. Elec. Code § 3020 ................................... 39

Ind. Code § 3-12-1-17 ................................... 39

Miss. Code Ann. § 23-15-581 ........................ 8, 23

Miss. Code Ann. §§ 23-15-541 *et seq.* ................. 7

Miss. Code Ann. §§ 23-15-621 *et seq.* ................. 7

Miss. Code Ann. § 23-15-637 ............... 1, 4, 7, 8, 16, 22-24, 46-49

Miss. Code Ann. § 23-15-639 ........................ 8, 44

Miss. Code Ann. § 23-15-781 ........................... 44

Miss. Code Ann. § 23-15-1033 .......................... 44

Miss. Code Ann. § 23-15-1041 .......................... 44

N.Y. Elec. Law § 8-412 ................................. 39

Va. Code Ann. § 24.2-709 .............................. 39

**Rule**

Fed. R. Civ. P. 56 .................................................................... 15

**Other Authorities**

Funk and Wagnalls,
    Desk Standard Dictionary (1919) ...................................... 18

Noah Webster,
    An American Dictionary of the English Language (1869) ........... 17, 28

## INTRODUCTION

This Court should affirm the district court's judgments dismissing plaintiffs' lawsuits claiming that Mississippi law—which requires that mail-in absentee ballots be cast by election day but allows those ballots to be received up to five business days after that day—violates federal statutes setting the "election" day for federal offices.

Three federal statutes—2 U.S.C. § 7, 2 U.S.C. § 1, and 3 U.S.C. § 1—set the Tuesday after the first Monday in November as federal "election" day. Mississippi requires that mail-in absentee ballots be cast by that day. Mail-in absentee ballots "must be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." Miss. Code Ann. § 23-15-637(1)(a). "[A]ny" ballots "received after such time ... shall not be counted." *Ibid.* Plaintiffs claim that federal election day is "ballot-receipt day" and that, by allowing ballots to be received after election day, Mississippi law conflicts with the federal election-day statutes.

The district court rejected plaintiffs' claims. This Court should too. Statutory text, statutory context, widespread practice, congressional aims, and precedent show that Mississippi law aligns with federal law.

To start, Mississippi law comports with the federal election-day statutes' text. The plain meaning of "election" is the *conclusive choice* of an officeholder. The Supreme Court has defined *election* as the "*final choice* of an officer by the duly qualified electors," *Newberry v. United*

*States*, 256 U.S. 232, 250 (1921) (emphasis added), and as "the combined actions of voters and officials meant to make a *final selection* of an officeholder," *Foster v. Love*, 522 U.S. 67, 71 (1997) (emphasis added). And the Supreme Court and this Court have held that federal election day is the day an election must be "concluded" and "consummated." *Id.* at 72 & n.4; *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 775-76 (5th Cir. 2000). An election thus does not require ballot receipt. Voters make a *conclusive choice*—a *final selection* that *concludes* and *consummates* the election—when they mark and submit their ballots as required by law. The final selection is then made. It is true that the voters' conclusive choice cannot be made official until ballots are received and counted. But neither ballot receipt nor ballot counting is the *conclusive choice* of an officeholder, so neither is part of the *election* itself. Given the plain meaning of "election," Mississippi law harmonizes with the federal election-day statutes. Mississippi requires that mail-in absentee ballots be cast—marked and submitted—by federal election day. Voters thus make their conclusive choice by election day, as federal law requires.

Statutory context confirms that the federal election-day statutes do not impose an election-day ballot-receipt deadline. In addressing federal elections, Congress has long respected state ballot-receipt deadlines and has reinforced that the federal election-day statutes do not require ballot receipt by election day. Congress in the Voting Rights Act, for example,

required States to accept absentee ballots that arrive by election day. 52 U.S.C. § 10502(d). But Congress did not block States from accepting ballots after that day: it allowed States to "adopt[] less restrictive voting practices," *id.* § 10502(g)—including "less restrictive absentee voting practices," *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1176 (9th Cir. 2001). And when Congress has preempted state laws on election-related timing—such as state rules on how early absentee-ballot applications will be received—it has done so clearly. *E.g.*, 52 U.S.C. § 20306. If Congress wanted the federal election-day statutes to override state ballot-receipt deadlines, it would have said so.

Widespread practice supports the view that the federal election-day statutes do not impose an election-day ballot-receipt deadline. "Many states have post-Election Day absentee ballot receipt deadlines." *Bost v. Illinois State Board of Elections*, 684 F. Supp. 3d 720, 736 (N.D. Ill. 2023), *aff'd on jurisdictional grounds*, — F.4th —, 2024 WL 3882901 (7th Cir. Aug. 21, 2024). Though many of those deadlines have existed for years, "Congress has never stepped in and altered the rules." 684 F. Supp. 3d at 736. That is telling because the Constitution squarely empowers Congress to override state election regulations, and so the "assumption that Congress is reluctant to pre-empt" state law "does not hold" here. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14 (2013).

Last, Mississippi law accords with the aims of the federal election-day statutes. Mississippi law respects the "uniform[ity]" that Congress

sought when it "mandate[d] holding all elections for Congress and the Presidency on a single day throughout the Union." *Foster*, 522 U.S. at 69, 70. Mississippi voters make a final selection of officeholders on federal election day. And Mississippi law does not "distort[ ]" "the voting process" or "burden" voters with multiple election days, and so does not "foster" the "evils" that the federal election-day statutes address. *Id.* at 73-74.

Because Mississippi law harmonizes with federal law, plaintiffs' lawsuits fail and this Court should affirm the district court's judgments.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. On July 28, 2024, the court issued an order granting summary judgment to defendants. ROA.1160-1183. The court entered final judgment the next day. ROA.1184-1185, 1335-1336. On August 2, 2024, plaintiffs filed timely notices of appeal. ROA.1186-1189. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

The federal election-day statutes establish a uniform "election" day for federal offices. 2 U.S.C. § 7; 2 U.S.C. § 1; 3 U.S.C. § 1. An *election* is the *conclusive choice* of an officer. Miss. Code Ann. § 23-15-637(1)(a) requires mail-in absentee voters to make a conclusive choice of officers by federal election day. Does that Mississippi law conflict with the federal election-day statutes or violate plaintiffs' constitutional rights?

## STATEMENT OF THE CASE

**Legal Background.** As a "default" rule, the Constitution "invests the States" with "responsibility" over most of "the mechanics" of elections to federal offices. *Foster v. Love*, 522 U.S. 67, 69 (1997). States thus enjoy "a wide discretion" in establishing a "system" for federal elections. *United States v. Classic*, 313 U.S. 299, 311 (1941). At the same time, the Constitution "grants" to Congress authority over some aspects of federal elections and "the power to override" certain state election regulations. *Foster*, 522 U.S. at 69.

This framework is set out chiefly in Articles I and II of the Constitution. Article I addresses congressional elections. The Elections Clause provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. I, § 4, cl. 1. Article II addresses presidential elections. The Electors Clause provides: "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors" to vote for President and Vice President. *Id.* art. II, § 1, cl. 2; *see id.* art. II, § 1, cl. 1; *id.* amend. XII. But "[t]he Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States." *Id.* art. II, § 1, cl. 3.

For decades after the Founding, "Congress left the actual conduct of federal elections to the diversity of state arrangements." *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1171 (9th Cir. 2001). But Congress eventually established some "uniform" national "rules" for federal elections. *Foster*, 522 U.S. at 69.

This case involves one of those "congressional rule[s]": the rule "set[ting] the date of the biennial election for federal offices." *Foster*, 522 U.S. at 69. Through three federal statutes, Congress has established federal election day as the Tuesday after the first Monday in November, in even numbered years. The statute on Representatives, adopted in its original form in 1872, says: "The Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States and Territories of the United States, of Representatives and Delegates to the Congress commencing on the 3d day of January next thereafter." 2 U.S.C. § 7; *see* Act of Feb. 2, 1872, ch. 11, § 3, 17 Stat. 28. The statute on Senators, first enacted in 1914 (after the Seventeenth Amendment called for the popular election of Senators), adopts the same rule. Act of June 4, 1914, ch. 103, § 1, 38 Stat. 384. It now says: "At the regular election held in any State next preceding the expiration of the term for which any Senator was elected to represent such State in Congress, at which election a Representative to Congress is regularly by law to be chosen, a United States Senator from said State shall be elected by the people thereof for the term commencing on the 3d

6

day of January next thereafter." 2 U.S.C. § 1. And the same rule applies for electing the President and Vice President. The governing statute, first adopted in 1845, now says: "The electors of President and Vice President shall be appointed, in each State, on election day, in accordance with the laws of the State enacted prior to election day." 3 U.S.C. § 1; *see id.* § 21(1) ("election day" in 3 U.S.C. § 1 "means the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President held in each State," except with certain "force majeure events"); Act of Jan. 23, 1845, ch. 1, 5 Stat. 721.

Mississippi law allows qualified residents to vote in federal elections in person on election day or absentee. Miss. Code Ann. §§ 23-15-541 *et seq.*, 23-15-621 *et seq.* The Mississippi law at issue here is Miss. Code Ann. § 23-15-637, which concerns absentee voting. Mississippians wishing to vote absentee may do so "either by mail or in person with a regular paper ballot." *Id.* § 23-15-637(3). For in-person absentee ballots to be counted, they must be "cast ... and deposited into a sealed ballot box by the voter, not later than 12:00 noon on the Saturday immediately preceding elections held on Tuesday." *Id.* § 23-15-637(1)(b). For mail-in absentee ballots to be counted, they "must be postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." *Id.* § 23-15-637(1)(a). "[A]ny" ballots "received after such time ... shall not be counted." *Ibid.* A mail-in absentee ballot is thus "cast" when it is mailed, "timely cast" when it is postmarked

on or before election day, and "timely ... received" when received within five business days after election day. *Id.* § 23-15-637(1)(a), (2). Absentee ballots are counted only after "the polls close" on election day. *Id.* § 23-15-639(1)(c); *see id.* § 23-15-581.

**Procedural Background.** This appeal arises from two lawsuits challenging Mississippi's law allowing mail-in absentee ballots to be counted if they are "postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." Miss. Code Ann. § 23-15-637(1)(a).

In January 2024, the Republican National Committee, the Mississippi Republican Party, James Perry (a Mississippi voter who is affiliated with Republican committees), and Matthew Lamb (a Mississippi voter and county election commissioner) filed suit in No. 1:24-cv-25 against state and county officials charged with election administration. RNC Complaint (ROA.23-36). The Libertarian Party of Mississippi filed suit in No. 1:24-cv-37 against the same defendants. LP Complaint (ROA.1281-1294). The lawsuits make the same central claim: that Miss. Code Ann. § 23-15-637(1)(a) violates federal law by providing for mail-in absentee ballots that are received up to five business days after election day to be counted. The lawsuits contend that Miss. Code Ann. § 23-15-637(1)(a) is preempted by the federal election-day statutes (2 U.S.C. § 7, 2 U.S.C. § 1, and 3 U.S.C. § 1), violates the right to stand for office protected by the First and Fourteenth Amendments, and

violates the right to vote protected by the Fourteenth Amendment's Equal Protection Clause. RNC Complaint ¶¶ 1-5, 62-80 (ROA.23-24, 33-35); LP Complaint ¶¶ 1-10, 57-81 (ROA.1281-1282, 1290-1293). The district court consolidated the cases, ROA.307-309, allowed Vet Voice Foundation and Mississippi Alliance for Retired Americans to intervene as defendants, ROA.13, and granted the parties' request to resolve the cases on cross-motions for summary judgment, ROA.316-317.

The district court granted summary judgment to the defendants. ROA.1160-1183; ROA.1184-1185, 1335-1336. The court ruled that plaintiffs have standing to bring these lawsuits (ROA.1162-1171) but that defendants are entitled to judgment on the merits (ROA.1171-1182).

On standing, the court ruled that the three group plaintiffs (the RNC, the Mississippi Republican Party, and the Libertarian Party) established organizational standing. ROA.1170-1171; *see* ROA.1162-1171. (The court did not address the standing of any individual plaintiff.) The court ruled that the RNC and the Mississippi Republican Party established an economic injury (from having to spend more money on ballot-chase programs and poll-watching activities) and a diversion-of-resources injury (from having to shift resources from traditional get-out-the-vote, registration, and election-integrity efforts to, for example, ballot-chase programs and poll-watching activities—all to the detriment of the groups' missions of electing their favored candidates). ROA.1170-1171; *see* ROA.1166-1169. The court ruled that the Libertarian Party

established a diversion-of-resources injury from having to devote resources to post-election monitoring rather than (for example) to election-day get-out-the-vote efforts—to the detriment of "its mission to secure votes for its candidates." ROA.1170; *see* ROA.1169-1170. The court ruled that these injuries "are fairly traceable to the Mississippi statute's five-day receipt requirement for absentee ballots." ROA.1171. And the court ruled that a favorable judicial decision "would redress these injuries by overturning the portion of the statute that will" injure the group plaintiffs. ROA.1171.

On the merits, the court rejected plaintiffs' claims. ROA.1171-1182.

The court began by rejecting plaintiffs' preemption claim. ROA.1171-1181. The court recognized that the Constitution grants Congress "'broad,'" "'comprehensive,'" "'paramount'" power to "'pre-empt'" state regulations of federal elections. ROA.1172 (quoting *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 8, 9 (2013)); *see* ROA.1171-1172. The court also recognized that Mississippi's law is preempted if it is "inconsistent with" or "conflicts with" the federal election-day statutes. ROA.1175-1176 (relying on *Inter Tribal*, 570 U.S. at 9, and *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 776 (5th Cir. 2000)). (The court noted that caselaw has expressed the governing preemption standard in different terms—e.g., "inconsistency" and "direct conflict"— but it viewed those articulations as "essentially synonymous." ROA.1176 n.11.)

Applying that framework, the district court held that "Mississippi's statute operates consistently with and does not conflict with" the federal "election-day statutes." ROA.1181; *see* ROA.1172-1181. The court therefore granted summary judgment to defendants on plaintiffs' preemption claim. ROA.1181, 1182-1183.

To start, the court ruled that Mississippi's law comports with the text of the federal election-day statutes. ROA.1176-1178; *see also* ROA.1172-1173. The court focused on "the meaning of the word 'election' in those statutes." ROA.1176; *see* ROA.1176-1178. When Congress enacted the federal election-day statutes, the court explained, the "ordinary meaning" of *election* was the "'*final* choice of an officer by the duly qualified electors'" or "'the combined actions of voters and officials meant to make *a final selection* of an officeholder.'" ROA.1176, 1177 (quoting *Newberry v. United States*, 256 U.S. 232, 250 (1921), then quoting *Foster v. Love*, 522 U.S. 67, 71 (1997); district court's emphases). Holdings of the Supreme Court and this Court, the district court added, support the plain-text understanding that an election is the *final choice* of an officeholder. ROA.1177-1178. The district court observed that, in rejecting Louisiana's "open primary" system that allowed for Members of Congress to be elected before federal election day, the Supreme Court in *Foster* held that under the federal election-day statutes an election "'may not be consummated prior to federal election day.'" ROA.1177 (quoting *Foster*, 522 U.S. at 72 n.4). The district court added that, in upholding a

Texas law allowing some pre-election-day voting, this Court in *Bomer* emphasized that "'[a]llowing some voters to cast votes before election day does not contravene the federal election statutes'" as understood in *Foster* "'because the final selection is not made before the federal election day.'" ROA.1177 (quoting *Bomer*, 199 F.3d at 776); *see also* ROA.1174-1175. Applying that understanding of the federal election-day statutes' text, the district court ruled that, "[l]ikewise, no 'final selection' is made *after* the federal election day under Mississippi's law." ROA.1178. "All that occurs after election day is the delivery and counting of ballots cast on or before election day." ROA.1178.

The court also explained that the broader context of federal election law supports that textual conclusion. ROA.1179. The court observed that the Uniformed and Overseas Citizens Absentee Voting Act of 1986 (UOCAVA), 52 U.S.C. §§ 20301-20310 (and other scattered provisions), "implicitly allows post-election receipt of overseas ballots mailed by election day," that "courts must strongly presume that acts of Congress addressing the same topics" (like UOCAVA and the federal election-day statutes) "are in harmony," and that this presumption suggests that "the similar Mississippi statute on post-election receipt is likewise inoffensive" to the federal election-day statutes. ROA.1179.

The court drew further support from state practices and the federal government's response to those practices. ROA.1178-1179, 1179-1180. "[M]any states" have enacted "similar" post-election-day ballot-receipt

statutes. ROA.1178 (discussing *Bost v. Illinois State Board of Elections*, 684 F. Supp. 3d 720, 736 (N.D. Ill. 2023), *aff'd on jurisdictional grounds*, — F.4th —, 2024 WL 3882901 (7th Cir. Aug. 21, 2024)). Although many such "statutes" have been "in place for many years," "Congress 'has never stepped in and altered the rules.'" ROA.1178-1179 (quoting *Bost*, 684 F. Supp. 3d at 736). And the U.S. Attorney General has sought "court-ordered extensions of ballot-receipt deadlines for military voters," which "'strongly suggest[s] that statutes like the one at issue here are compatible with the Elections Clause.'" ROA.1179 (quoting *Bost*, 684 F. Supp. 3d at 737). In discussing widespread practice, the court also noted other decisions recognizing or allowing post-election-day ballot receipt. ROA.1179-1180 (discussing *Harris v. Florida Elections Canvassing Commission*, 122 F. Supp. 2d 1317, 1325 (N.D. Fla. 2000), *aff'd*, *Harris v. Florida Elections Commission*, 235 F.3d 578 (11th Cir. 2000) (per curiam), which recognizes "that several states had similar practices of accepting ballots received after election day, but [the federal government] had not sued any state to challenge that practice," ROA.1180); ROA.1180 (discussing *Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336 (3d Cir. 2020), *vacated as moot*, *Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021), which left in place a three-day extension of Pennsylvania's ballot-receipt deadline).

Last, the court ruled that Mississippi's law harmonizes with Congress's aims in enacting the federal election-day statutes. ROA.1180-

1181; *see also* ROA.1173. "[A]llowing a reasonable interval for ballots cast and postmarked by election day to arrive by mail," the court said, does not "burden[ ] citizens with multiple election days," does not "risk[ ] undue influence upon voters in one state from the announced tallies in states voting earlier," and promotes the "'right to vote.'" ROA.1181 (citing *Foster*, 522 U.S. at 73-74, then quoting *Bomer*, 199 F.3d at 777).

After rejecting plaintiffs' preemption claim, the district court rejected their right-to-vote and right-to-stand-for-office claims. ROA.1181-1182. The court said that those claims "stand or fall on whether the Mississippi absentee-ballots statute conflicts with federal law, in which case Plaintiffs say their rights would be violated." ROA.1182. Because there is "no such conflict," the court ruled, there are "no such violations." ROA.1182. So the court granted summary judgment to defendants on these claims. ROA.1182; *see* ROA.1182-1183.

## SUMMARY OF ARGUMENT

I. Mississippi law is not preempted. The federal election-day statutes establish a uniform federal "election" day. An *election* is the *conclusive choice* of an officeholder. Voters make that conclusive choice by *casting*—marking and submitting—their ballots by election day. That is so even if election officials do not receive those ballots until after election day. An election does not itself require ballot receipt. Ballot receipt is important to effectuating the voters' final choice—just as ballot counting is. But—like ballot counting—ballot receipt is not part of the

*election* itself. Under Mississippi law, mail-in absentee voters cast—and thus conclusively choose—federal officeholders by federal election day. So Mississippi law comports with the federal election-day statutes. Statutory context, widespread practice, and congressional aims all confirm the text-based conclusion that the federal election-day statutes do not impose an election-day ballot-receipt deadline and do not preempt Mississippi law. The district court was correct to reject plaintiffs' preemption claim.

II. Mississippi law does not violate plaintiffs' rights. Plaintiffs' right-to-stand-for-office and right-to-vote claims both fall with plaintiffs' preemption claim and fail for independent reasons. The district court was correct to reject these claims.

## STANDARD OF REVIEW

This appeal arises from an order granting defendants' summary-judgment motions and denying plaintiffs' summary-judgment motions. This Court reviews *de novo* the grant or denial of summary judgment, applying the same Fed. R. Civ. P. 56 "analysis that guides the district court" and reviewing each motion "independently, with evidence and inferences taken in the light most favorable to the nonmoving party." *White Buffalo Ventures, LLC v. University of Texas at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).

# ARGUMENT

Mississippi's mail-in absentee-ballot law comports with the federal election-day statutes and does not violate plaintiffs' rights. The district court was correct to dismiss this lawsuit. This Court should affirm.

## I.    Mississippi Law Is Not Preempted.

The district court held that the federal election-day statutes do not preempt Miss. Code Ann. § 23-15-637(1)(a), Mississippi's law providing for mail-in absentee ballots cast by election day to be counted if they are received within five business days after election day. ROA.1171-1181. Statutory text, statutory context, widespread practice, and congressional aims compel that conclusion. This Court should affirm the district court's rejection of plaintiffs' preemption claim.

### A.    Statutory Text Establishes That Mississippi Law Harmonizes With The Federal Election-Day Statutes.

Under the plain text of the federal election-day statutes, federal "election" day is the day for voters to *conclusively choose* federal officeholders. Voters make that conclusive choice by *casting*—marking and submitting—their ballots by election day. That is so—and the election has occurred—even if election officials do not receive those ballots until after election day. Under Mississippi law, mail-in absentee voters cast—and thus conclusively choose—federal officeholders by election day. So federal law does not preempt Mississippi law.

1. a. The federal election-day statutes establish a "uniform" "federal election day." *Foster v. Love*, 522 U.S. 67, 69 (1997). Under 2 U.S.C. § 7, "the day for the election" of Representatives is "established as" "[t]he Tuesday next after the 1st Monday in November, in every even numbered year." Under 2 U.S.C. § 1, Senators "shall be elected" at that same "election." And under 3 U.S.C. § 1, "[t]he electors of President and Vice President shall be appointed, in each State," on "election day"—that same Tuesday, every four years. *See also* 3 U.S.C. § 21(1).

The core term uniting the federal election-day statutes is "election." That word's meaning thus dictates what the federal election-day statutes require of federal election day. *See* ROA.1176-1177. The plain meaning of *election* is the *conclusive choice* of an officer. An unbroken line of authorities confirms this. When the Constitution was ratified, *election* meant the "*final choice* of an officer by the duly qualified electors." *Newberry v. United States*, 256 U.S. 232, 250 (1921) (emphasis added). *Election* had that same meaning in 1845, when the statute setting the time for presidential elections was first enacted. *See ibid.* In 1872, when Congress first set a uniform time for electing Representatives, *election* had the same meaning: "'[t]he act of *choosing* a person to fill an office.'" *Foster*, 522 U.S. at 71 (quoting Noah Webster, An American Dictionary of the English Language 433 (1869); emphasis added); *see Newberry*, 256 U.S. at 250. When, in 1914, Congress passed the statute setting the time for electing Senators, *election* had the same meaning: "The *selecting* of a

person or persons for office, as by ballot." Funk and Wagnalls, Desk Standard Dictionary 266 (1919) (emphasis added); *see Newberry*, 256 U.S. at 250. *Election* has retained that meaning to this day. As the Supreme Court put it in 1941, an election is "*the expression* by qualified electors of their *choice* of candidates." *United States v. Classic*, 313 U.S. 299, 318 (1941) (emphases added). And as the Supreme Court said more recently, when 2 U.S.C. §§ 1 and 7 refer to "the election" of a Senator or Representative, "they plainly refer to the combined actions of voters and officials meant to make *a final selection* of an officeholder." *Foster*, 522 U.S. at 71 (emphasis added).

An *election* thus occurs when voters make their *choice* of officeholders and that choice is *conclusive—final*. Under the federal election-day statutes, then, federal election day is the day by which voters must *conclusively choose* federal officers. Although parts of the electoral process can occur before and after that day, voters cannot make their choice after that day, and the choice cannot be conclusive before that day.

An election thus does not depend on when ballots are *received*. The plain-meaning definitions set out above impose no requirement of ballot receipt as part of the election itself. Those definitions instead recognize that an election occurs once voters make their *conclusive choice*—which they do by marking and submitting a ballot by election day. At that point, voters have chosen and their choice is conclusive: the election is over. *Casting* a ballot is thus materially different from *receipt* of a ballot.

*Republican National Committee v. Democratic National Committee*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (distinguishing "the date by which ballots may be cast by voters" and "the date by which ballots may be ... received by the municipal clerks" and explaining that extending the former "fundamentally alters the nature of the election"). The casting of ballots is "fundamental[ ]" to the election itself, *ibid.*; the receipt of ballots is not. True: ballot receipt is important and necessary to effectuating the voters' final selection. But that is also true of counting votes. Yet counting is not part of the election itself. That is why counting votes lawfully can (and does) occur after federal election day. *Harris v. Florida Elections Canvassing Commission*, 122 F. Supp. 2d 1317, 1325 (N.D. Fla. 2000) ("Routinely, in every election, hundreds of thousands of votes are cast on election day but are not counted until the next day or beyond."), *aff'd*, *Harris v. Florida Elections Commission*, 235 F.3d 578 (11th Cir. 2000) (per curiam). The same is true of ballot receipt. Ballot receipt is important. But it is not part of the election itself and so can occur after election day.

This plain-text understanding is confirmed by holdings of the Supreme Court and this Court. Those decisions show that the federal election-day statutes require that voters make their conclusive choice of officers by election day—not that election officials receive the ballots expressing that conclusive choice by election day.

Start with *Foster v. Love*, 522 U.S. 67 (1997), which held that 2 U.S.C. §§ 1 and 7 preempted Louisiana's "open primary" statute allowing for Senators and Representatives to be elected during October, "without any action to be taken on federal election day." *Id.* at 68-69, 74. The Supreme Court ruled that "a contested selection of candidates for a congressional office that is *concluded as a matter of law* before the federal election day, with no act in law or in fact to take place on the date chosen by Congress, clearly violates" federal law. *Id.* at 72 (emphasis added). The Court added: under federal law, "an election ... may not be *consummated* prior to federal election day." *Id.* at 72 n.4 (emphasis added). The Court also said: "When the federal [election-day] statutes speak of 'the election' of a Senator or Representative, they plainly refer to the combined actions of voters and officials meant to make a *final selection* of an officeholder." *Id.* at 71 (emphasis added).

Now take this Court's decision in *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773 (5th Cir. 2000), which upheld a Texas law allowing some voting before election day. *Id.* at 777. This Court ruled that "[a]llowing some voters to cast votes before election day does not contravene the federal election statutes because the *final selection* is not made before the federal election day." *Id.* at 776 (emphasis added); *see ibid.* (emphasizing that the election "is not decided or 'consummated' before federal election day").

The logic behind the holdings in *Foster* and *Bomer* is that federal election day is the day to "conclude[ ]" and "consummate[ ]" the election—through a "final selection." *Foster*, 522 U.S. at 71, 72 & n.4; *Bomer*, 199 F.3d at 776; *see Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1175 (9th Cir. 2001) (under *Foster*, "the word 'election' means a 'consummation' of the process of selecting an official"). That occurs when voters have marked and submitted their ballots as required by state law: ballots are then cast and the *final selection* is *concluded* and *consummated*—even if the final selection cannot be effectuated until ballots are received and counted.

This point is reinforced by the Supreme Court's treatment of ballots mailed *after* election day. "[A]llow[ing] voters to mail their ballots *after* election day," the Court has declared, "would fundamentally alter the nature of the election by allowing *voting* ... after the election." *Republican National Committee*, 140 S. Ct. at 1208 (staying injunction that allowed ballots to be mailed after primary election day) (emphases added). Allowing ballots mailed by election day to be received after election day is different. When a State adopts a post-election-day ballot-receipt deadline it is making a "policy choice" that the Constitution entitles it to make. *Democratic National Committee v. Wisconsin State Legislature*, 141 S. Ct. 28, 32, 34 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). Although there are "weighty reasons" "to requir[e] that absentee ballots be received by election day," the

Constitution gives States "authority" to "make different choices." *Ibid.* States are thus free to do what Mississippi has done: "require only that absentee ballots be mailed by election day." *Id.* at 34 (emphasis omitted); *see id.* at 32 (observing that Mississippi is among several States that "no longer require that absentee ballots be received before election day" and recognizing that the "variation" in state "election-deadline rules" "reflects our constitutional system of federalism").

b. As the district court ruled, Mississippi law comports with the text of the federal election-day statutes. ROA.1176-1178; *see* ROA.1181. The federal election-day statutes therefore do not preempt Mississippi law.

Under Mississippi law, mail-in absentee voters—like other voters— make their conclusive choice of federal officers on federal election day. Mississippi law directs that, to be counted, mail-in absentee ballots "must be postmarked on or before the date of the election" and "received by the registrar no more than five (5) business days after the election." Miss. Code Ann. § 23-15-637(1)(a). Under that law, a mail-in absentee ballot is thus "cast" when it is mailed and "timely cast" when it is postmarked on or before election day. *Id.* § 23-15-637(1)(a), (2). The law thus aligns with the ordinary meaning of casting a ballot by mail. *See Republican National Committee*, 140 S. Ct. at 1206-07 (equating "cast[ing]" absentee ballots with "mail[ing] and postmark[ing]" those ballots); *Texas League of United Latin American Citizens v. Hughs*, 978 F.3d 136, 140 (5th Cir. 2020) (observing, in addressing Texas law, that "the traditional option ...

for casting a mail-in ballot" is "mailing it"). Mississippi thus requires that mail-in absentee ballots be cast by election day.

That framework harmonizes with federal law. Because Mississippi law requires that mail-in absentee ballots be cast by election day ("on or before the date of the election"), Mississippi voters make their *choice* by election day. Miss. Code Ann. § 23-15-637(1)(a). And Mississippi voters cannot change their votes after that date or submit votes after that date. *Id.* §§ 23-15-581, 23-15-637(1)(a). So their choice, made by election day, is *conclusive*: the "final selection of an officeholder" occurs on federal election day because ballots must be cast—marked and submitted by mail—by that day. *Foster*, 522 U.S. at 71. It does not matter that some ballots may be received after election day. Miss. Code Ann. § 23-15-637(1)(a), (2) (a mail-in absentee ballot is "timely ... received by mail" when received within five business days of election day). As explained above, casting of ballots and receipt of ballots are different—and only the former is essential to the *election* itself. Mississippi does not "allow voters to mail their ballots *after* election day," so it does not "allow[ ] voting ... after the election." *Republican National Committee*, 140 S. Ct. at 1208. As the district court put it, under Mississippi law "no 'final selection' is made *after* the federal election day." ROA.1178. "All that occurs after election day," the court explained, "is the delivery and counting of ballots cast on or before election day." ROA.1178. Consistent with *Foster* and *Bomer*, under Mississippi law the election is "concluded" and

"consummated" on federal election day because by that day Mississippi voters make a "final selection" of federal officeholders. *Foster*, 522 U.S. at 71, 72 & n.4; *Bomer*, 199 F.3d at 776. Reasonable people can disagree with Mississippi's "policy choice" to "require only that absentee ballots be *mailed* by election day." *Wisconsin State Legislature*, 141 S. Ct. at 34 (Kavanaugh, J., concurring). But it is a choice that the Constitution "authori[zes]" Mississippi to make. *Id*. at 32.

Because Miss. Code Ann. § 23-15-637(1)(a) requires mail-in absentee ballots to be cast by federal election day, that law is not "inconsistent with" the federal election-day statutes. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 (2013). So federal law does not preempt Mississippi's law.

2. Plaintiffs contend that the federal election-day statutes establish that federal election day is "ballot-receipt day"—the day by which officials must "receive the votes." RNC Br. 15, 18; *see* LP Br. 19, 22-23. Plaintiffs claim that statutory text supports that view, RNC Br. 18-20; LP Br. 23-27, 31, and resist the district court's (and the State's) view of *Foster*, *Bomer*, and other decisions. RNC Br. 24-29; LP Br. 23-27. Plaintiffs' arguments fail.

*First*, plaintiffs cite dictionary and caselaw definitions that, in their view, confirm that election day requires "ballot receipt." RNC Br. 18; *see* RNC Br. 18-19; LP Br. 31. But none of those definitions mentions ballot receipt. RNC Br. 18, 19 (acknowledging that the definitions "don't

directly address"—or even "discuss"—"ballot receipt"). Those definitions instead focus on "choice" and "final[ity]," RNC Br. 18, 19; LP Br. 31, and thus confirm the plain-text account set out above: an *election* occurs when voters *conclusively choose* who will hold an office—whether or not the final selection has yet been effectuated after ballot receipt and counting. The RNC says that its definitions "indicate that ballots must be given to election officials by election day" because "[o]nly then has a final, public selection been made." RNC Br. 19. But that view runs afoul of every definition that plaintiffs cite: none requires ballot receipt. Again, voters make a final selection when they conclusively choose who to vote for by casting their ballot—marking and submitting it as required by law. The word "public" does not help the RNC either. RNC Br. 19. If by that word the RNC means that an election requires more than the physical marking of a ballot, then the State agrees: a ballot cannot remain in a desk drawer or a voter's pocket; it must be cast. But if by that word the RNC means that election officials must receive the ballot by election day, the RNC is mistaken. Nothing in the plain, longstanding meaning of *election* requires ballot receipt.

*Second*, plaintiffs invoke the Montana Supreme Court's decision in *Maddox v. Board of State Canvassers*, 149 P.2d 112 (Mont. 1944), to support their view of the federal election-day statutes. RNC Br. 19-20; *see* RNC Br. 25, 27; LP Br. 24-25. As the RNC puts the argument (RNC Br. 19), in the 19th century "[n]othing short of the delivery of the ballot

to the election officials for deposit in the ballot box constitute[d] casting the ballot." 149 P.2d at 115. The Montana Supreme Court thus held, the RNC says, that "in so far as [state law] purports to extend beyond the election day the time within which voters' ballots may be received by the election officials for the election of presidential electors, it is in conflict with the constitutional congressional Act which requires the electing to be done on election day." *Ibid.*

That is not what *Maddox* holds. And *Maddox* does not help plaintiffs. *Maddox* holds that, when *state law* directs that a ballot is cast (and *voting* occurs) *only when* election officials receive the ballot, then the presidential election-day statute (3 U.S.C. § 1) requires ballots to be received by federal election day because otherwise voting would extend beyond that day. 149 P.2d at 114-15. When *Maddox* was decided, Montana state law provided that "voting" occurred *only when* a marked ballot is "delivered to the election officials and deposited in the ballot box before the closing of the polls on election day." *Id.* at 115 (summing up discussion of "[t]he election statutes of Montana"). At issue in the case was a later Montana state law that extended the time to receive "military ballots" to "seven weeks" after the "statutory election day." *Id.* at 114. In enacting that later law, however, the Legislature declared that it was not "repeal[ing]" or "amend[ing]" its earlier law defining what constitutes "voting." *Id.* at 114 (emphases omitted). To respect both federal law and the earlier unrepealed state law, the Montana Supreme Court ruled that

because "state law provide[d] for voting by ballots deposited with the election officials, that act must be completed on the day designated by state and federal laws"—otherwise, under Montana's own law, the election extended beyond election day. *Id.* at 115. So *Maddox* did not "h[o]ld" that the federal election-day statutes "preempt post-election receipt of absentee ballots." RNC Br. 20. The case turned on a Montana state law that provided that a ballot is cast only when election officials receive it. The case left the State the option of providing that a ballot is cast when marked and submitted.

*Third*, plaintiffs claim that *Foster* and *Bomer* support the view that election day is ballot-receipt day. RNC Br. 24-27; LP Br. 23-27. The RNC argues as follows: Under *Foster*, an election requires a "'final selection'" resulting from the "'combined actions'" of voters and election officials. RNC Br. 24 (quoting *Foster*, 522 U.S. at 71). An election therefore requires ballot receipt because anything short of that (such as marking or mailing a ballot) "do[es] not involve an election official," it thus does not represent the "combined actions" of voters and election officials, and so it cannot produce a "final selection." RNC Br. 24-25; *see* RNC Br. 24-26. The RNC also invokes *Bomer*'s reliance on the "combined actions" line to make the same argument. RNC Br. 26-27; *see also* LP Br. 25-26. The Libertarian Party argues: Under *Foster*, an election requires "*combined, not unilateral, actions of voters and officials*"; "[t]he only moment in an election that constitutes the 'combined actions of voters and election

officials' is the depositing and receipt of ballots into the custody of state election officials"; so "[w]hen all qualified ballots are received by election officials, that is 'the election.'" LP Br. 23; *see* LP Br. 25, 26, 27.

This argument is flawed. The argument rests on the view that when *Foster* refers to "the combined actions of voters and officials" it is referring to "casting and receiving ballots." *E.g.*, RNC Br. 25. That is not what that line means. *Foster* never mentions ballot receipt. It says: "When the federal [election-day] statutes speak of 'the election' of a Senator or Representative, they plainly refer to the combined actions of voters and officials meant to make a final selection of an officeholder." 522 U.S. at 71. *Foster* then cites a dictionary defining "'election'" as "'[t]he act of choosing a person to fill an office.'" *Ibid.* (quoting Noah Webster, An American Dictionary of the English Language 433 (1869)). That definition reflects that an election official's only necessary involvement is giving a voter the means to make a final selection—such as by offering a ballot and a method to cast it. Which is to say: an election does not require ballot receipt. That dooms plaintiffs' "combined actions" argument. A voter can make a "final selection" and the necessary "combined actions" all can—and so far as the federal election-day statutes are concerned, do—occur even if a ballot is not received by election day.

The Libertarian Party makes another argument under *Foster*. LP Br. 27. *Foster* says: "a contested selection of candidates for a congressional office that is concluded as a matter of law before the federal

election day, with *no act in law or in fact* to take place on the date chosen by Congress, clearly violates" 2 U.S.C. § 7. 522 U.S. at 72 (emphasis added). The Libertarian Party says: "Holding voting open five business days after Election Day in Mississippi necessarily requires 'further act[s] in law or in fact'"—"further receipt of cast ballots before the election is over." LP Br. 27 (quoting 522 U.S. at 72). That is not so. Under Mississippi law, all acts in law or in fact "take place" by federal election day: all mail-in absentee ballots must be cast by that day. 522 U.S. at 72. Voting is not "h[e]ld[ ] open" after that day. Votes count only if cast by election day. Again, the State does not "allow voters to mail their ballots *after* election day" and so does not "allow[ ] *voting ... after* the election." *Republican National Committee v. Democratic National Committee*, 140 S. Ct. 1205, 1208 (2020) (per curiam) (emphases added).

*Last*, the RNC faults the district court for its treatment of some out-of-circuit cases. RNC Br. 27-29. None of this helps the RNC.

To begin, the RNC faults the district court for looking to the Third Circuit's decision in *Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336 (3d Cir. 2020), *vacated as moot, Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021), which affirmed the denial of an injunction against a three-day extension of Pennsylvania's ballot-receipt deadline. RNC Br. 27-28. But the district court invoked *Bognet* only briefly, after discussing other caselaw addressing "state laws permitting receipt of ballots postmarked on or before election day." ROA.1178; *see* ROA.1178-1180.

And although the RNC implies otherwise, RNC Br. 27-28, the district court recognized that the Third Circuit's decision was "later vacated as moot by the Supreme Court." ROA.1180. The district court treated *Bognet* as no more than "persuasive" authority. ROA.1180. Next, the RNC faults the district court for relying on *Bost v. Illinois State Board of Elections*, 684 F. Supp. 3d 720 (N.D. Ill. 2023), *aff'd on jurisdictional grounds*, — F.4th —, 2024 WL 3882901 (7th Cir. Aug. 21, 2024). RNC Br. 28. But *Bost* was right to recognize (among other things) that a state statute allowing post-election-day receipt of timely cast mail-in ballots is "facially compatible" with the federal election-day statutes. 684 F. Supp. 3d at 736; *see also infra* Parts I-B & I-C (invoking other sound points from *Bost*). The RNC also faults the district court for relying on *Harris v. Florida Elections Canvassing Commission*, 122 F. Supp. 2d 1317 (N.D. Fla. 2000). RNC Br. 28. *Harris* said that when overseas voters' ballots are "mailed ... by election day," they are "cast ... on election day." 122 F. Supp. 2d at 1325. The same is true for those who vote under the Mississippi law here. The district court did not err in drawing support from non-binding decisions for its conclusions that otherwise rested on statutory text, statutory context, binding precedent, widespread practice, and congressional aims. ROA.1171-1181.

The RNC also faults the district court for not following the Ninth Circuit's "conclu[sion]" that "the election-day statutes 'may reasonably be construed to mean that all voting in federal elections should take place

30

on a single day.'" RNC Br. 29 (quoting *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1176 (9th Cir. 2001)); *see* RNC Br. 28-29. But that was not the Ninth Circuit's *conclusion*: the Ninth Circuit *rejected* that view of the federal election-day statutes. 259 F.3d at 1175-76. It held that "the federal election day statute" treats election day as the "consummation" of the voting process and upheld a state statute that allowed some voting before election day. *Id.* at 1176. In Mississippi, the consummation of the voting process occurs on election day. The decision below comports with the Ninth Circuit's holding in *Keisling*.

One final note: This Court need not wade into any dispute over the precise formulation of the governing preemption standard. *Contra* LP Br. 13-19 (extended discussion over whether an "inconsistent with" or a "direct conflict" formulation expresses the standard). The State accepts that if a state election regulation is "inconsistent with" a federal election regulation that Congress has authority to adopt, the state law is preempted. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 (2013); *see* U.S. Const. art. VI, cl. 2. And any difference in formulation does not matter. ROA.1176 n.11 (district court: the formulations are "essentially synonymous"); *cf.* LP Br. 22 (maintaining that the formulation does not matter); RNC Br. 17. The district court held that "Mississippi's statute operates consistently with and does not conflict with" the federal election-day statutes, so it is not preempted. ROA.1181. Mississippi's law thus stands under any plausible standard. To the extent

that the Libertarian Party suggests that because Congress has spoken to one issue of timing (what day the "election" must occur) it has barred States from speaking to *any issue* of timing (such as when ballots may be received), LP Br. 19, it is wrong. Here, "the statutory text accurately communicates the scope of Congress's pre-emptive intent." *Inter Tribal*, 570 U.S. at 14. That text compels the conclusion that Mississippi's law is not preempted.

### B. Statutory Context Confirms That Mississippi Law Harmonizes With The Federal Election-Day Statutes.

Broader statutory context confirms that the federal election-day statutes do not impose an election-day ballot-receipt deadline. ROA.1179.

1. The broader context of federal law reflects congressional respect for state ballot-receipt deadlines and an understanding that the federal election-day statutes do not require receipt of ballots by election day.

Start with absentee voting as a whole. Congress has "required ... states to provide for absentee voting in federal elections." *Keisling*, 259 F.3d at 1175. In the Voting Rights Act, Congress directed that "each State shall provide by law for the casting of absentee ballots for the choice of electors for President and Vice President" by qualified absent voters who timely apply to vote absentee and "have returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election." 52 U.S.C. § 10502(d). Congress thus set a floor—a State *must* accept an absentee

ballot that is returned by election day. But Congress did not block States from accepting absentee ballots that are returned later. Indeed, Congress said: "Nothing in this section shall prevent any State or political subdivision from adopting less restrictive voting practices than those that are prescribed herein." *Id.* § 10502(g). "The 'less restrictive voting practices' allowed" by that provision "include less restrictive absentee voting practices." *Keisling*, 259 F.3d at 1176.

Now consider a subset of absentee voting—that of servicemembers and other Americans overseas. This too shows Congress's respect for state deadlines. Congress has addressed those voters in the Uniformed and Overseas Citizens Absentee Voting Act of 1986 (UOCAVA), 52 U.S.C. §§ 20301-20310 (and scattered sections), which sets "various requirements for states to ensure that military voters overseas can cast ballots in federal elections." *Bost*, 684 F. Supp. 3d at 737. But UOCAVA does not specify a ballot-receipt deadline. Indeed, although UOCAVA directs States to do (and not do) many things, *see* 52 U.S.C. § 20302, the statute respects States' ballot-receipt deadlines. The statute says that a voter who does not receive a state absentee ballot on time can use and return a "Federal write-in absentee ballot," but that that federal ballot will not be counted if the voter's state absentee ballot is "received by the appropriate State election official not later than *the deadline for receipt of the State absentee ballot under State law*." *Id.* § 20303(b)(3) (emphasis added). UOCAVA also directs that a designated federal official must

ensure that certain "marked absentee ballots of absent overseas uniformed services voters" are "deliver[ed]" "to the appropriate election officials" "not later than the date by which an absentee ballot must be received in order to be counted in the election." *Id.* § 20304(b)(1). Those provisions let state ballot-receipt deadlines operate. And they are telling because elsewhere in UOCAVA Congress overrode some state election-related timing rules. Congress barred States from "refus[ing] to accept or process" an otherwise valid absentee-ballot application "on the grounds that the voter submitted the" application "before the first date on which the State otherwise accepts or processes" applications "submitted by absentee voters who are not members of the uniformed services." *Id.* § 20306. This all confirms that if Congress wanted to override state ballot-receipt deadlines under the federal election-day statutes, it would have said so.

2. Plaintiffs contend that "[o]ther federal laws confirm that Congress understands ballot receipt as the definitive election-day act." RNC Br. 31; *see* RNC Br. 20-21, 31-36; LP Br. 28-29, 38-42, 45-47, 47-48. These arguments fail.

*First*, consider plaintiffs' arguments about the broader structure around the federal election-day statutes. RNC Br. 20-21; LP Br. 28-29.

The RNC points to 2 U.S.C. § 8, which addresses elections to "fill a vacancy" in the House of Representatives. RNC Br. 20-21; *but see* LP Br. 47 (arguing that 2 U.S.C. § 8 "do[es] not meaningfully further the

preemption analysis"). The RNC says that this law allows for congressional elections on a day other than federal election day "only in narrow circumstances" (RNC Br. 20): a runoff election can be held when a vacancy is "caused by a failure to elect at the time prescribed by law" and a special election when a vacancy is caused "by the death, resignation, or incapacity of a person elected." 2 U.S.C. § 8(a). These exceptions, the RNC says, "narrow the scope of the election-day rule" and show that "the 'election' refers to the receipt of *new ballots* that have not been included in the total." RNC Br. 21 (quoting 2 U.S.C. § 8(a)). This argument fails. Nothing in 2 U.S.C. § 8 supports the view that an *election* is about "the receipt of new ballots." Special elections are not about *receiving* ballots that were somehow not already cast or received. Special elections are about holding *new elections*—a new chance to mark and submit (cast) a ballot and thus make a conclusive choice of officeholder.

The Libertarian Party invokes 3 U.S.C. § 21. LP Br. 28-29. That law defines "election day" under 3 U.S.C. § 1 to mean "the Tuesday next after the first Monday in November" in every fourth year, but includes an exception: if a State that "appoints electors by popular vote" timely "modifies the period of voting" in response to certain "force majeure events," "election day" will "include the modified period of voting." 3 U.S.C. § 21(1). The Libertarian Party reads this to mean that Congress "ceded back to the states specific, narrow authority related to Election Day" but has not otherwise given States "authority to modify 'election

day.'" LP Br. 29. This argument rests on the mistaken view that election day is ballot-receipt day, and so does not help the Libertarian Party.

*Second*, take plaintiffs' arguments about other federal laws addressing elections. RNC Br. 31-34; LP Br. 45-47, 47-48.

The RNC starts (RNC Br. 31-32) with an 1872 law that temporarily amended 3 U.S.C. § 1 to "'allow States to conduct balloting for presidential electors over more than one day in that year's presidential election.'" RNC Br. 32 (quoting *Millsaps v. Thompson*, 259 F.3d 535, 542 (6th Cir. 2001)); *see* RNC Br. 31-32. But nothing in that law shows that Congress sees "ballot receipt as the definitive election-day act." RNC Br. 31. That law allowed States to "continue[ ] for more than one day" "the election commencing on the Tuesday next after the first Monday in November, [1872], for the purpose of choosing electors of President and Vice-President." Act of May 23, 1872, ch. 198, 17 Stat. 157. The law thus recognized only that the conclusive "choosing" of electors could occur over more than one day. It says nothing about post-election-day ballot receipt.

The RNC next cites a 1942 law allowing for absentee voting by servicemembers. RNC Br. 32. The RNC points to a provision saying that "no official war ballot shall be valid ... if it is received by the appropriate election officials ... after the hour of the closing of the polls on the date of the holding of the election." Act of Sept. 16, 1942, ch. 561, § 9, 56 Stat. 753, 756. But that provision shows that when Congress wants to impose a ballot-receipt deadline, it does so by saying so. It has not done so in the

federal election-day statutes. The 1942 law also said: "Nothing in this Act shall be deemed to restrict the right" of any servicemember "to vote, whenever practicable, in accordance with the law of the State of his residence, if he does not elect to vote in accordance with the provisions of this Act." *Id.* § 12, 56 Stat. at 757. The law thus left States free to impose a post-election-day receipt deadline.

Next, the RNC notes (RNC Br. 32-33) that under the Voting Rights Act, absentee ballots of qualified voters must be counted if voters "return[ ] such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election." 52 U.S.C. § 10502(d). The RNC reads this to mean that Congress "could have allowed ballots to come in after election day," "[b]ut it didn't"—and that this statute confirms that "ballots must be received by 'the appropriate election official' by election day." RNC Br. 32, 33. This misreads the statute. As explained above: The statute says that a State *must accept and count* an absentee ballot that is returned by election day. It does not say that a State *may not accept and count* an absentee ballot received after election day. That understanding is driven home by a neighboring provision recognizing that States may "adopt[ ] less restrictive voting practices," 52 U.S.C. § 10502(g)—"includ[ing] less restrictive absentee voting practices," *Keisling*, 259 F.3d at 1176.

Plaintiffs also address UOCAVA. RNC Br. 33-34; *see* LP Br. 45-47, 47-48. According to plaintiffs, that statute "says nothing about mail-

ballot deadlines": it "doesn't adopt, incorporate, or approve of any state post-election deadlines—it just declines to set a deadline itself." RNC Br. 33; *see* LP Br. 45. As explained above, however, UOCAVA shows that when Congress wants to override a state timing rule, it says so. 52 U.S.C. § 20306 (overriding state bars on early submission of absentee-ballot applications). In the federal election-day statutes, Congress did not override state ballot-receipt deadlines. It let them operate.

*Third*, consider plaintiffs' view on laws that Congress has not passed. RNC Br. 34-36; LP Br. 38-42.

Plaintiffs claim that Congress "has considered and rejected" "proposals" to "permit post-election-day receipt of ballots." RNC Br. 35; *see* RNC Br. 34-35; LP Br. 42 (similar argument). To support that claim, plaintiffs cite *Keisling*, 259 F.3d at 1171-74. *Keisling* does not help them. *Keisling* explains that Congress in the 1870s "considered and rejected the practice of multi-day voting allowed by some states"—under which "different states elected members of the House of Representatives during *different months*." *Id.* at 1172, 1173 (emphasis added). Congress was not addressing a problem of ballot receipt. It was addressing problems with different voting days—such as "fraud" (people could vote in an election in one State then cross state lines to vote in a later election in another State) and "undue advantage" (the results of early elections could affect later elections). *Id.* at 1173.

Plaintiffs also fault the district court for relying on "the lack of federal legislation on mail-ballot deadlines." RNC Br. 35 (emphasis omitted); *see* RNC Br. 35-36; LP Br. 38-42. But the lack is telling. Congress has enacted many laws regulating federal elections. And this is not an area where Congress must be shy. "The assumption that Congress is reluctant to pre-empt does not hold when Congress acts under" the Elections Clause, "which empowers Congress to 'make or alter' state election regulations." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14 (2013). Yet despite its square and oft-used authority to preempt, Congress has shown respect—in what it has enacted and what it has not enacted—for state ballot-receipt deadlines. This cannot be chalked up to the sheer novelty of post-election-day receipt deadlines. State laws allowing for post-election-day ballot receipt have been around for years. *See*, *e.g.*, Alaska Stat. § 15.20.081(e), (h); Cal. Elec. Code § 3020(b); Ind. Code § 3-12-1-17(b); N.Y. Elec. Law § 8-412(1); 25 Pa. C.S.A. § 3511(a); Va. Code Ann. § 24.2-709(B); LP Br. 39 n.34 (identifying many such laws as pre-dating COVID). Through all this, Congress has respected state ballot-receipt deadlines.

*Last*, the RNC claims that the district court erred by applying the "presumption against preemption," since that presumption "doesn't apply" to Elections Clause legislation. RNC Br. 34 (citing ROA.1179). The district court did not apply a presumption against preemption. The court said: "courts must strongly presume that *acts of Congress* addressing the

39

same topics are in harmony rather than one statute's impliedly repealing the other in whole or part." ROA.1179 (emphasis added). The court was thus invoking the presumption that Congress does not impliedly repeal *other federal laws*. The Ninth Circuit applied the same principle in a case the RNC cites approvingly many times. *Keisling*, 259 F.3d at 1176 (stating, in assessing the federal election-day statutes against a Voting Rights Act provision: "We are under a duty to construe statutes harmoniously where that can reasonably be done."). The district court was right to apply that principle to recognize that UOCAVA's implicit allowance of post-election-day ballot receipt supports the view that the federal election-day statutes also allow post-election-day ballot receipt— and thus that Mississippi law's allowing the same thing accords with federal law. ROA.1179.

### C. Widespread Practice Confirms That Mississippi Law Harmonizes With The Federal Election-Day Statutes.

Widespread practice supports the view that the federal election-day statutes allow post-election-day ballot receipt. ROA.1178-1179, 1179-1180.

"Many states have post-Election Day absentee ballot receipt deadlines." *Bost v. Illinois State Board of Elections*, 684 F. Supp. 3d 720, 736 (N.D. Ill. 2023) (collecting several statutes); *see*, *e.g.*, *supra* p. 39 (same). "Despite these ballot receipt deadline statutes being in place for many years in many states, Congress has never stepped in and altered

40

the rules." 684 F. Supp. 3d at 736; *see Harris v. Florida Elections Canvassing Commission*, 122 F. Supp. 2d 1317, 1325 (N.D. Fla. 2000) ("The federal government ... has surely been aware of the eight states around the country which allow post-election-day acceptance of absentee ballots," yet "no state has been sued by the federal government for such practices"). As noted above, that is telling: the Elections Clause squarely empowers Congress to override state election regulations, so the "assumption that Congress is reluctant to pre-empt" state law "does not hold" here. *Inter Tribal*, 570 U.S. at 14. This widespread practice also drives home the "implications" of plaintiffs' position. *Democratic National Committee v. Wisconsin State Legislature*, 141 S. Ct. 28, 35 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). This Court should be wary of adopting a rule that would "necessarily invalidate" the laws of many States. *Ibid.*

Plaintiffs say that historical practice confirms that election day is ballot-receipt day. RNC Br. 21-24; LP Br. 29-38. Their arguments fail.

The basic problem with these arguments is that plaintiffs cite nothing to show that an *election* itself requires ballot receipt. As the RNC itself says, "many States didn't require election-day receipt so much as assume it." RNC Br. 22. Assumption is not proof. Indeed, even if "States did not count mail ballots received after election day," and even if post-election-day ballot receipt "was not a practice at the time Congress enacted the election day statutes," RNC Br. 22, the federal election-day

statutes would not *foreclose* States from adopting the practice. There is a difference between what is *required* under a historical practice and what *happened to occur* under that practice. *Cf. Newberry v. United States*, 256 U.S. 232, 257 (1921) ("Birth must precede but it is no part of either funeral or apotheosis."). Plaintiffs have never shown that election-day ballot receipt is anything but the latter. So although the RNC insists that Congress has "spoken on the issue" of election-day ballot receipt, RNC Br. 23, the RNC does not point to any *words* from Congress saying that States may not receive ballots after election day. RNC Br. 23-24. The RNC again says that the Ninth Circuit has "held that the election-day statutes 'may reasonably be construed to mean that all voting in federal elections should take place on a single day.'" RNC Br. 24 (quoting *Keisling*, 259 F.3d at 1176). In fact, the Ninth Circuit rejected that view because it is not correct. 259 F.3d at 1175-76. The court instead embraced "a definition of 'election' that treats election day as the 'consummation' of the process rather than any day during which voting takes place." *Id.* at 1176. The Mississippi law here falls within that definition.

The Libertarian Party's historical-practice arguments are similarly flawed. LP Br. 29-38. It argues that, "[f]rom 1845 until circa 2004, the overwhelming national practice was that Election Day was the day by which all ballots must be received by the proper election officials." LP Br. 30. But the Libertarian Party points to nothing showing that an election *itself* requires ballot receipt. That is why it must put its position this way:

"Election Day was, *in effect*, ballot receipt day." LP Br. 30 (emphasis added). That may describe what *happened to* occur. But it fails to show that election day *required* ballot receipt. The Libertarian Party also points to "[c]olonial electoral practices" where elections occurred "by the *viva voce* method or by the showing of hands." LP Br. 31, 32. But that does not show that election day requires ballot receipt any more than it shows that election day requires voting by voice or by hand-raising. The Libertarian Party next discusses congressional efforts to establish a uniform presidential election day, the spread of paper ballots and "[t]icket voting," and the abandonment of *viva voce* voting. LP Br. 33-35. But again, none of this shows that ballot receipt—rather than timely vote casting—defines an *election*. The same holds true for the Libertarian Party's discussion of wartime voting, the spread of absentee voting, and voting for overseas servicemembers. LP Br. 35-38. That discussion reflects congressional efforts to make sure that state officials received soldiers' ballots. But none of it shows that the federal election-day statutes require ballot receipt on election day or that ballot receipt is part of the "election" under those statutes.

### D.    Mississippi Law Comports With The Aims Of The Federal Election-Day Statutes.

Rejecting preemption here accords with the aims of the federal election-day statutes. ROA.1173, 1180-1181.

To start, Mississippi law respects the "uniform[ity]" that Congress sought to achieve when it "mandate[d] holding all elections for Congress and the Presidency on a single day throughout the Union." *Foster v. Love*, 522 U.S. 67, 69, 70 (1997). Under Mississippi law, voters make a conclusive choice of federal officers by federal election day. More: Mississippi law does not "foster" the "evils" that the federal election-day statutes address. *Id.* at 74. Mississippi law does not "distort[ ]" "the voting process" by allowing "the results of an early federal election in one State" to "influence later voting in other States." *Id.* at 73. Plaintiffs do not contend that the results of the election in Mississippi are too "early." *Ibid.* And indeed, Mississippi's absentee ballots are not counted until the polls close on election day. Miss. Code Ann. § 23-15-639(1)(c). Further, Mississippi law does not impose a "burden on citizens" by "forc[ing]" them "to turn out on two different election days to make final selections of federal officers in Presidential election years." *Foster*, 522 U.S. at 73. In Mississippi, elections for federal office all occur the same day. Miss. Code Ann. §§ 23-15-781, 23-15-1033, 23-15-1041.

Plaintiffs claim that legislative history cuts against Mississippi's law. RNC Br. 29-31; LP Br. 28. Their arguments are unsound.

*First*, plaintiffs rely on Congress's rejection of "multi-day voting." RNC Br. 29-30; *see* LP Br. 28. The RNC says: When Congress enacted a uniform election day for Representatives in 1872, it rejected a proposal to allow multi-day voting; given that rejection, it is a "fair inference" that,

in setting "the" election day, Congress intended to reject multi-day voting; "the reason multi-day voting *doesn't* violate the election day statutes is because" it is a "universal, longstanding practice"; and post-election-day ballot receipt is *not* such a practice, so it violates the federal election-day statutes. RNC Br. 29-30.

This argument fails. For one thing: Post-election-day ballot receipt is not "multi-day voting" any more than pre-election-day absentee voting is multi-day voting. Election day is the day of the final choice in Mississippi, even though some ballots are received after that day. *Supra* Part I-A. For another thing: The RNC's account ignores what Congress was doing when it adopted a uniform election day. As discussed above, Congress was not addressing a problem of ballot receipt. It was addressing a practice under which "different states elected members of the House of Representatives during *different months*." *Keisling*, 259 F.3d at 1173 (emphasis added). Different voting days risked "fraud" and "undue advantage." *Ibid.* Congress addressed those problems by adopting a uniform election day. Plaintiffs recognize that Congress was concerned with fraud. RNC Br. 30; LP Br. 28. They do not show that Mississippi's law produces fraud.

*Second*, the RNC says that "election-day [ballot] receipt" promotes good policies. RNC Br. 30-31. None of this advances its position. Mississippi law promotes the policies that the federal election-day statutes embrace—such as guarding against undue influence.

Mississippi's law also provides "clear notice" and "puts all voters on the same footing." RNC Br. 30. The RNC says that an election-day ballot-receipt deadline helps "avoid the chaos and suspicions of impropriety that can ensue" when absentee ballots arrive after election day and change an apparent result. RNC Br. 31. That is a commendable goal. The RNC cites no evidence that Congress embraced it in the federal election-day statutes—despite the election-night frustrations of many people, in election after election, who must go to bed unsure of who has won the election. The RNC also says that a uniform ballot-receipt deadline guards against "the distortion of the voting process threatened when the results of an early federal election in one State can influence later voting in other States." RNC Br. 31. That too is a commendable goal. But it is a mystery how that goal cuts against a post-election-day ballot-receipt deadline. No voting takes place after election day in Mississippi: it all takes place by election day. If anything, that policy argument is an argument against any early voting. Yet the RNC accepts that early absentee voting is lawful. RNC Br. 24, 26, 29-30. Last, no one disputes the importance of deadlines. *Contra* RNC Br. 31. Indeed, Mississippi imposes two deadlines of importance here: ballots must be cast by election day and received within five business days after that. Miss. Code Ann. § 23-15-637(1)(a). Those deadlines align with and promote the aims of federal law.

*Third*, the Libertarian Party suggests that without a federal election-day ballot-receipt rule, there will be no "limiting principle" on

"state authority to extend receipt deadlines." LP Br. 21; *see* LP Br. 21-22. "[N]othing," it claims, "would prevent a state from extending its receipt deadline for weeks or months after the election." LP Br. 22. But the Constitution supplies deadlines that force action. The Twentieth Amendment provides that "the terms" of "the President and Vice President" "shall ... begin" "at noon on the 20th day of January" and that "the terms" of "Senators and Representatives" "shall ... begin" "at noon on the 3d day of January." U.S. Const. amend. XX, § 1. If Congress is dissatisfied with state ballot-receipt deadlines, it can act. *Id.* art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 3. And Congress has imposed deadlines. *See*, *e.g.*, 2 U.S.C. §§ 1, 7 (recognizing January 3 as the start of congressional terms); 3 U.S.C. §§ 5(a)(1) (timing of certification of electors), 7 (each State's electors "shall meet and give their votes on the first Tuesday after the second Wednesday in December").

*   *   *

Miss. Code Ann. § 23-15-637(1)(a) is consistent with—and does not conflict with—the federal election-day statutes. The district court was therefore right to reject plaintiffs' preemption claim. ROA.1171-1181.

## II. Mississippi Law Does Not Violate Plaintiffs' Rights.

The district court also rejected plaintiffs' remaining claims. ROA.1181-1182. It was correct to do so.

Having ruled that Miss. Code Ann. § 23-15-637(1)(a) harmonizes with federal law and so is not preempted, the district court rejected

plaintiffs' First and Fourteenth Amendment claim that Mississippi's law violates the right to stand for office and plaintiffs' equal-protection claim that Mississippi's law violates the right to vote. ROA.1181-1182. The court said that those claims "stand or fall on whether the Mississippi absentee-ballots statute conflicts with federal law, in which case Plaintiffs say their rights would be violated." ROA.1182. Plaintiffs do not dispute that proposition; they maintain only that the district court was wrong to hold that Mississippi law harmonizes with federal law. RNC Br. 37 ("That observation is essentially correct."); LP Br. 48 (saying that "[t]he district court wrongly assumed that since there was no violation of federal law, there was no burden on Plaintiff's constitutional rights," but arguing only that Mississippi law is preempted). Given those positions, if the Court agrees that Mississippi law is not preempted, it should summarily affirm the district court's rejection of plaintiffs' remaining claims.

But even if the Court were to credit the preemption claim, plaintiffs' remaining claims would fail. *Contra* RNC Br. 37-38 (suggesting that crediting the preemption claim would require crediting other claims).

First, there is no merit to plaintiffs' claim that Miss. Code Ann. § 23-15-637(1)(a) violates the right to stand for office under the First and Fourteenth Amendments. That right may be implicated when a State restricts the ability of a candidate or political party to be placed on election ballots. *E.g.*, *Bullock v. Carter*, 405 U.S. 134, 137-39, 142-43, 149

(1972) (candidate filing fees); *Williams v. Rhodes*, 393 U.S. 23, 24-28, 30-31 (1968) (political-party requirements). But the Mississippi law here regulates an election-related timing matter, not any prospective placement on the ballot. It does not impair any right to stand for office.

Second, there is no merit to plaintiffs' claim that Miss. Code Ann. § 23-15-637(1)(a) violates the right to vote. Nothing in that law arbitrarily values "one person's vote over that of another" or arbitrarily gives any class of voters preferential treatment. *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (per curiam); *see id.* at 107. Mississippi law allows each voter the right to cast a lawful ballot and have that ballot counted. It treats each vote equally. No one's vote is diluted. No one's right to vote is impaired.

## CONCLUSION

This Court should affirm the district court's judgments.

Respectfully submitted,

LYNN FITCH
  *Attorney General*

*s/ Scott G. Stewart*

SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
E-mail: scott.stewart@ago.ms.gov

*Counsel for Defendant-Appellee*
  *Michael Watson*

September 9, 2024

## CERTIFICATE OF SERVICE

I, Scott G. Stewart, hereby certify that this brief has been filed with the Clerk of Court using the Court's electronic filing system, which sent notification of such filing to all counsel of record.

Dated: September 9, 2024

*s/ Scott G. Stewart*
Scott G. Stewart
*Counsel for Defendant-Appellee*
*Michael Watson*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,030 words, excluding parts exempted by Fed. R. App. P. 32. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because its text has been prepared in proportionally spaced typeface, including serifs, using Microsoft Word 2016, in Century Schoolbook 14-point font.

Dated: September 9, 2024

*s/ Scott G. Stewart*
Scott G. Stewart
*Counsel for Defendant-Appellee*
*Michael Watson*
