# In the United States Court of Appeals for the Fifth Circuit

Case. No. 24-60395

REPUBLICAN NATIONAL COMMITTEE; MISSISSIPPI REPUBLICAN PARTY; JAMES PERRY; MATTHEW LAMB,

*Plaintiffs-Appellants*,

v.

JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; TONI JO DIAZ, in their official capacities as members of the Harrison County Election Commission; BECKY PAYNE, in their official capacities as members of the Harrison County Election Commission; BARBARA KIMBALL, in their official capacities as members of the Harrison County Election Commission; CHRISTENE BRICE, in their official capacities as members of the Harrison County Election Commission; CAROLYN HANDLER, in their official capacities as members of the Harrison County Election Commission; MICHAEL WATSON, in his official capacity as the Secretary of State of Mississippi,

*Defendants-Appellees*,

VET VOICE FOUNDATION; MISSISSIPPI ALLIANCE OF RETIRED AMERICANS,

*Intervenor Defendants-Appellees*,

---

LIBERTARIAN PARTY OF MISSISSIPPI,

*Plaintiff-Appellant*,

v.

JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; TONI JO DIAZ, in their official capacities as members of the Harrison County Election Commission; BECKY PAYNE, in their official capacities as members of the Harrison County Election Commission; BARBARA KIMBALL, in their official capacities as members of the Harrison County Election Commission; CHRISTENE BRICE, in their official capacities as members of the Harrison County Election Commission; CAROLYN HANDLER, in their official capacities as members of the Harrison County Election Commission; MICHAEL WATSON, in his official capacity as the Secretary of State of Mississippi,

*Defendants-Appellees*.

**BRIEF OF *AMICI CURIAE* DISABILITY RIGHTS MISSISSIPPI AND LEAGUE OF WOMEN VOTERS OF MISSISSIPPI IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE**

Jacob van Leer
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 715-0815

Davin Rosborough
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Joshua Tom
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF MISSISSIPPI
101 South Congress Street
Jackson, MS 39201
(601) 354-3408

Neil Steiner
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822

Christopher J. Merken
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-2380

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel of record certifies that—in addition to the persons and entities identified in the party briefs in this case—the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. American Civil Liberties Union Foundation, counsel for *amicus curiae*

2. American Civil Liberties Union Foundation of Mississippi, counsel for *amicus curiae*

3. Angela Liu, counsel for *amicus curiae*

4. Christopher J. Merken, counsel for *amicus curiae*

5. Davin Rosborough, counsel for *amicus curiae*

6. Dechert LLP, counsel for *amicus curiae*

7. Disability Rights Mississippi, *amicus curiae*

8. Greta Kemp Martin, counsel for *amicus curiae*

9. Jacob van Leer, counsel for *amicus curiae*

10. Joshua Tom, counsel for *amicus curiae*

11. Julia Markham-Cameron, counsel for *amicus curiae*

12.   League of Women Voters of Mississippi, *amicus curiae*

13.   Neil Steiner, counsel for *amicus curiae*

14.   Sophia Lin Lakin, counsel for *amicus curiae*

I hereby certify that I am aware of no persons or entities with any interest in the outcome of this litigation other than the signatories to this brief and their counsel, and those identified in the party and amicus briefs filed in this case.

Dated: Sept. 9, 2024              */s/ Joshua Tom*
                                  Joshua Tom
                                  *Counsel of Record for Amici Curiae*

# TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE*.................................................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................4

ARGUMENT ......................................................................6

  I.  Voters with Disabilities Rely on the Current Mississippi Receipt Deadline Law and Will Face Disproportionate Harm if the District Court's Decision is Disturbed. ...........................................6

 II.  The District Court Correctly Declined to Misread the Federal Election Day Statutes in a Manner that Would Upend Routine Election Administration in Mississippi  and Nationwide. .............12

    A.  Plaintiffs-Appellants' Misinterpretation of the Federal Election Day Statutes Flouts Basic Principles of Statutory Interpretation and Binding Precedent.....................................13

    B.  Plaintiffs' Interpretation of the Federal Election Day Statutes Would Lead to Absurd Results and Disrupt Routine Election Administration in Mississippi and Across the Nation..............18

CONCLUSION .......................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bognet v. Sec'y of the Commonwealth of Pa.*,
  980 F.3d 336 (3d Cir. 2020), *cert. granted, judgment vacated as moot
  sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) ................................... 16

*Bost v. Illinois State Bd. of Elections*,
  684 F. Supp. 3d 720 (N.D. Ill. 2023),
  *aff'd,* No. 23-2644, 2024 WL 3882901 (7th Cir. Aug. 21, 2024) ........................... 16

*Bush v. Gore*,
  531 U.S. 98 (2000) ................................................................................................ 25

*Donald J. Trump for President, Inc. v. Way*,
  492 F. Supp. 3d 354 (D.N.J. 2020) ........................................................................ 16

*Foster v. Love*,
  522 U.S. 67 (1997) ............................................................... 13, 14, 16, 28

*Jones v. U.S. Postal Serv.*,
  488 F. Supp. 3d 103 (S.D.N.Y. 2020) .................................................................... 11

*Millsaps v. Thompson*,
  259 F.3d 535 (6th Cir. 2001) ............................................... 17, 23, 27, 28

*Pa. Democratic Party v. Boockvar*,
  238 A.3d 345 (Pa. 2020) ....................................................................................... 16

*Republican Nat'l Comm. v. Wetzel*,
  --- F. Supp. 3d ---, No. 1:24CV25-LG-RPM,
  2024 WL 3559623 (S.D. Miss. July 28, 2024) ................................................*passim*

*United States v. A Female Juvenile*,
  103 F.3d 14 (5th Cir. 1996) ................................................................................... 18

*United States v. Granderson*,
  511 U.S. 39 (1994) ................................................................................................ 18

*Voting Integrity Project, Inc. v. Bomer*,
  199 F.3d 773 (5th Cir. 2000) ........................................... 11, 13, 14, 19

*Wood v. Raffensperger*,
  981 F.3d 1307 (11th Cir. 2020) ............................................................................ 26

**Statutes**

25 Pa. Cons. Stat. § 3511 ............................................................ 20

42 U.S.C. § 15043 ....................................................................... 1

52 U.S.C. § 20104 ....................................................................... 7

52 U.S.C. § 20304 ..................................................................... 19

Ala. Code § 17-11-18 ................................................................ 20

Ark. Code Ann. § 7-5-411 ........................................................ 20

Fla. Stat. § 101.6952 ................................................................ 20

Ga. Code Ann. § 21-2-386 ....................................................... 20

Ind. Code § 3-12-1-17 .............................................................. 20

Miss. Code Ann. § 23-15-573 .................................................. 23

Miss. Code Ann. § 23-15-601 .................................................. 23

Miss. Code Ann. § 23-15-603 ............................................. 23, 24

Miss. Code Ann. § 23-15-605 .................................................. 24

Miss. Code Ann. § 23-15-629 ............................................. 2, 6, 7

Miss. Code Ann. § 23-15-637 ............................................. 15, 19

Miss. Code Ann. § 23-15-639 .................................................. 21

Miss. Code Ann. § 23-15-643 .................................................. 21

Miss. Code Ann. § 23-15-645 .................................................. 21

Miss. Code Ann. § 23-15-699 .................................................. 19

Miss. Code Ann. § 23-15-713 .................................................... 6

Mo. Rev. Stat. § 115.920 ......................................................... 20

R.I. Gen. Laws § 17-20-16 ...................................................... 20

S.C. Code Ann. § 7-15-700 ........................................................... 20

**Other Authorities**

Anthony Warren & Brendan Hall, *"We Just Want Change"":*
*At Least 10 Polling Places In Hinds Co. Not in ADA Compliance,*
WLBT (Oct. 17, 2023), https://bit.ly/3PChbXZ ........................................ 9

Ayanna Alexander, *Voters With Disabilities Often Overlooked in Voting*
*Battles,* Associated Press (Apr. 2, 2023), https://bit.ly/3TzjcFy ............................ 10

*Cast*, Black's Law Dictionary (12th ed. 2024) ............................................. 15

Cybersecurity & Infrastructure Security Agency, *Post Election Process*
*Mapping*
(last accessed Mar. 19, 2024), https://bit.ly/4atWR32 ............................ 21

Lisa Schur & Douglas Kruse, *Fact Sheet: Disability and Voter Turnout*
*in the 2020 Election* (July 2021), https://bit.ly/43vHeGe ........................ 8

*Election*, Black's Law Dictionary (12th ed. 2024) ........................................ 15

Lisa Schur, Douglas Kruse, & Mason Ameri, Disability and Voting
Accessibility in the 2022 Elections: *Final Report on Survey Results*
*Submitted to the Election Assistance Commission* (May 2023),
https://bit.ly/3x67V8d ............................................................. 7

Miss. Sec. of State's Office, *County Elections Handbook* (Sept. 18,
2023), https://bit.ly/3XkbHEk ................................................... 22, 23

Nat'l Conf. of State Legis., *Canvass, Certification and Contested*
*Election Deadlines, and Voter Intent Laws,* (last updated Oct. 26,
2022), https://bit.ly/3TzEmUc ................................................... 23

Nat'l Conf. of State Legis., *Canvass Deadlines*
(last updated July 8, 2024), https://bit.ly/3xaBkhC ............................ 24, 25

Nat'l Conf. State Legis., *Voting Outside the Polling Place Report, Table*
*2: Excuses to Vote Absentee* (last updated Jan. 3, 2024),
https://bit.ly/3VqWAK6 ........................................................... 8

Nat'l Conf. State Legis., *Voting Outside the Polling Place Report, Table*
*11: Receipt and Postmark Deadlines for Absentee/Mail Ballots*
(last updated June 12, 2024), https://bit.ly/3TOeaGK ............................ 20

Nat'l Conf. State Legis., *Voting Outside the Polling Place Report, Table 16: When Absentee/Mail Ballot Processing and Counting Can Begin* (last updated Dec. 22, 2023), https://bit.ly/3Vx4npR ........................................... 21

State's Office, *County Elections Handbook* (June 2023), https://bit.ly/4cz2v63 ............................................................................. 22

U.S. Election Assistance Comm'n, *Canvassing and Certifying an Election*, Ch. 13 (Aug. 26, 2010), https://bit.ly/4cuddKY ................................................. 23

U.S. Election Assistance Comm'n, *Election Results, Canvass, and Certification* (May 25, 2022), https://bit.ly/43vRz4S........................................... 22, 25

## <u>INTEREST OF *AMICI CURIAE*</u>

This brief is filed on behalf of *amici curiae* Disability Rights Mississippi ("DRMS") and the League of Women Voters of Mississippi (the "League"), who also served as amici before the district court.[1] Amici originally sought to intervene as defendants, and district court concluded that both organizations had "demonstrated an interest in this litigation sufficient to justify intervention" and "shown that their ability to protect their interests may be impaired by this lawsuit." *RNC v. Wetzel*, No. 1:24-cv-25-LG-RPM, Order at 6 (S.D. Miss. Mar. 7, 2024), ECF No. 47. Although the district court ultimately denied DRMS and the League's motion due to its approval of other intervenors, it granted them permission to file an amicus brief. *Id.* at 11.

DRMS is Mississippi's Protection and Advocacy agency ("P&A") and is authorized to pursue legal action on behalf Mississippians with disabilities to protect their rights. 42 U.S.C. § 15043(a)(2)(A)(i). The scope of this authorization includes all Mississippians with disabilities who rely on absentee voting to exercise their right to vote. Mississippi law

---

[1] All parties have consented to or do not oppose the filing of this amicus brief. No party's counsel authored this brief in any part and no person other than *amici* funded the preparation and submission of this brief.

specifically recognizes that many of these individuals face severe hardships that make it difficult for them to vote in person. *See* Miss. Code Ann. § 23-15-629(1). Many voters with disabilities depend on both absentee voting and the ballot receipt deadline at issue in this case. DRMS has a critical interest in ensuring that Mississippi's absentee ballot receipt deadline is not enjoined, as it would substantially increase the risk that its members—all Mississippians with disabilities—will be disenfranchised at disproportionate levels when they vote by absentee ballot.

The League is a grassroots membership organization that seeks to involve citizens in the civic process, including by helping Mississippi voters navigate the absentee voting process. The League has almost two hundred members in the state, a significant number of whom are eligible to vote by absentee ballot and many of whom do so. The League dedicates significant resources to voter service projects, voter registration, get out the vote efforts, and public education about elections. In Mississippi, this includes providing digital resources on the absentee voting process. The League also distributes information flyers, posts on its website and social media accounts, and speaks to voters about the timeline for absentee

voting, including Mississippi's post-Election-Day receipt deadline for absentee ballots. If this Court were to reverse the district court's judgment, it would substantially increase the risk that League members will be disenfranchised if they mail their absentee ballots close to Election Day, and it would require the League to expend significant additional resources to update its materials and trainings, and to warn members about heightened disenfranchisement risks of returning absentee ballots.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs-Appellants' requested relief—eliminating Mississippi's requirement that timely cast absentee ballots be counted so long as they are received by election officials within five business days of the election—would lead to widespread adverse impacts on voters. And their interpretation of the Federal Election Day Statutes leads to a slippery slope that would necessarily upend election administration in Mississippi and across the country. This Court should affirm the district court's well-founded entry of summary judgment in favor of Defendants-Appellees, as it correctly held that binding case law, "combined with the Framers' intention in drafting the Elections and Electors Clauses, Supreme Court precedent, and Congress's enactment of UOCAVA support a finding that Mississippi's statute operates consistently with and does not conflict with the Electors Clause or the election-day statutes." *Republican Nat'l Comm. v. Wetzel*, --- F. Supp. 3d ---, No. 1:24CV25-LG-RPM, 2024 WL 3559623, *10 (S.D. Miss. July 28, 2024).

First, reversing the district court's carefully reasoned decision would necessitate construing the Federal Election Day Statutes to require that all absentee ballots be received on or before Election Day.

That interpretation would substantially increase the risk of disenfranchisement for broad swaths of voters. Voters with disabilities—whose rights DRMS is authorized by law to defend—disproportionately rely on mail-in ballots and would bear the brunt of that disenfranchisement. The Court should be loath to adopt a misconstruction of federal law that further burdens a marginalized population already facing heightened barriers to voting.

Second, Plaintiffs-Appellants' misconstruction of the Federal Election Day Statutes would mandate massive nationwide overhauls of essential post-election activities and destabilize election administration not just in Mississippi but in every state. Adopting their atextual interpretation would necessarily mean that election officials' post-election-day administrative acts—including collecting, tallying, and canvassing timely cast ballots and certifying election results—directly conflict with federal laws setting a calendar date for Election Day. These absurdities strongly counsel against disturbing the district court's carefully reasoned decision rejecting Plaintiffs-Appellants' misreading.

## **ARGUMENT**

### **I. Voters with Disabilities Rely on the Current Mississippi Receipt Deadline Law and Will Face Disproportionate Harm if the District Court's Decision is Disturbed.**

In granting judgment against Plaintiffs-Appellants, the district court emphasized the Fifth Circuit's insistence that "it is difficult to 'conceive that Congress intended the federal election day statutes to have the effect of impeding citizens in exercising their right to vote.'" *Republican Nat'l Comm.*, 2024 WL 3559623, at *10 (quoting *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 777 (5th Cir. 2000)). Yet Plaintiffs-Appellants' misguided arguments would create especially heavy burdens on voters with disabilities, which counsels strongly in favor of affirming the district court's grant of summary judgment.

Both state and federal law recognize that voters with disabilities are entitled to accommodations in the voting process including, crucially, the ability to vote absentee and mail in their ballots. *See, e.g.*, Miss. Code Ann. § 23-15-713(d) (extending absentee voting eligibility to "[a]ny person who has a temporary or permanent physical disability and who, because of such disability, is unable to vote in person without substantial hardship to himself, herself or others, or whose attendance at the voting place could reasonably cause danger to himself, herself or others."); *id.* §

23-15-629(1) (providing allowances for voters with permanent disabilities to automatically receive absentee ballots without reregistering); 52 U.S.C. § 20104 (requiring that states "make available registration and voting aids for Federal elections for handicapped and elderly individuals," prohibiting imposition of certain requirements for "handicapped voter[s] with respect to an absentee ballot," and mandating "public notice, calculated to reach elderly and handicapped voters, of the availability of aids . . . and the procedures for voting by absentee ballot."). Plaintiffs-Appellants' argument flies in the face of these recognized rights and would have an outsized impact on voters with disabilities, who are significantly more likely to utilize mail-in ballots.

A national survey sponsored by the U.S. Election Assistance Commission ("EAC") found that over two-fifths (42%) of voters with disabilities used a mail-in ballot to vote in 2022, compared to about one-third (35%) of voters without disabilities.[2] In Mississippi, which is one of

---

[2] Lisa Schur, Douglas Kruse, & Mason Ameri, *Disability and Voting Accessibility in the 2022 Elections: Final Report on Survey Results Submitted to the Election Assistance Commission*, at 8 (May 2023), https://bit.ly/3x67V8d.

only fourteen states that limit who can vote absentee,[3] the disparity between absentee voting rates of voters with disabilities and those without disabilities is likely even greater. Voters with disabilities are also more likely to return an absentee ballot by mail (as opposed to using a drop box or taking a ballot to a polling place or election office).[4] In the 2020 presidential election, more than *half* (52%) of voters with disabilities voted by mail.[5]

These trends can be explained, at least in part, by the fact that voters with disabilities consistently report higher incidences of voting difficulties than voters without disabilities. In 2022, 14% of all voters with disabilities reported difficulties voting, which is more than *three times higher* than voters without disabilities.[6] That number jumps even higher when focused on in-person voters—a whopping *20%* of in-person

---

[3] Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 2: Excuses to Vote Absentee* (last updated Jan. 3, 2024), https://bit.ly/3VqWAK6.

[4] Schur et al., *supra* note 2, at 8.

[5] Lisa Schur & Douglas Kruse, *Fact Sheet: Disability and Voter Turnout in the 2020 Election*, at 6 (July 2021), https://bit.ly/43vHeGe.

[6] Schur et al., *supra* note 2, at 9.

voters with disabilities reported difficulties in 2022.[7] By comparison, only 6% of voters with disabilities reported difficulties in voting by mail.[8]

These national trends hold true for Mississippi voters, too. The populations that DRMS represents disproportionately vote by absentee mail ballot because of the particular difficulties they face with in-person voting. For example, in October 2023, DRMS assessed 66 polling places in Hinds County and found that at least 10 were out of compliance with the Americans with Disabilities Act (ADA).[9] DRMS found that at these voting locations accessible voting machines did not work (or were simply not present), doors were not kept propped open, entryways were inaccessible, and curbs were not cut to allow those using wheelchairs to access sidewalks, among other violations.[10]

Transportation also presents additional challenges for voters with disabilities. For example, after a blind Mississippi voter missed a recent local election because she was unable to secure transportation to a polling

---

[7] *Id.*

[8] *Id.*

[9] Anthony Warren & Brendan Hall, *"We Just Want Change": At Least 10 Polling Places In Hinds Co. Not in ADA Compliance*, WLBT (Oct. 17, 2023), https://bit.ly/3PChbXZ.

[10] *Id.*

location, national press reports warned that "[d]isjointed coordination between election authorities and disability advocates has been a persistent problem in Mississippi, especially related to reliable transportation."[11] National data from the EAC show that only 70.8% of people with disabilities can drive their own or a family vehicle, compared to 90.5% of people without disabilities.[12]

If this Court were to reverse the district court's order rejecting Plaintiffs-Appellants' contention that absentee ballots must be received by Election Day to be counted, some voters with disabilities in Mississippi may have no choice other than to endure the indignities and difficulties many of them would face when attempting to vote in-person if they wish to ensure their vote is counted. Mississippi law allows a buffer for the receipt of mail-in ballots after Election Day, so long as they are postmarked by Election Day. But if mail-in ballots needed arrive by Election Day to be counted, voters' right to have their vote counted would become substantially more dependent on an overburdened U.S. Postal Service, which has proven inconsistent in its ballot delivery timelines—

---

[11] Ayanna Alexander, *Voters With Disabilities Often Overlooked in Voting Battles*, ASSOCIATED PRESS (Apr. 2, 2023), https://bit.ly/3TzjcFy.

[12] Schur, et al., *supra* note 2*,* at 58.

especially when faced with high volumes of mail ballots—and could be interrupted by factors entirely outside voters' control. *See, e.g.*, *Jones v. U.S. Postal Serv.*, 488 F. Supp. 3d 103, 135 (S.D.N.Y. 2020) (granting injunction against U.S. Postal Service to ensure timely delivery of absentee ballots based, in part, on findings that "USPS has offered no satisfactory explanation for failing to set clear, uniform policies for the handling of Election Mail[,]" and that there had been "meaningful documented delays in service, in the middle of a pandemic when service standards were already impaired and a vast influx of mail-in ballots expected").

Because voters with disabilities so disproportionately vote by mail—and face far greater difficulties voting in person—they would suffer disproportionate harms from Plaintiffs-Appellants' requested relief. This Court should decline to construe "the federal election day statutes to have the effect of impeding citizens"—especially those with disabilities—"in exercising their right to vote" and instead should affirm the judgment of the district court. *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 777 (5th Cir. 2000).

## II. The District Court Correctly Declined to Misread the Federal Election Day Statutes in a Manner that Would Upend Routine Election Administration in Mississippi and Nationwide.

The district court rightly determined that Plaintiffs-Appellants' interpretive argument—that the Federal Election Day Statutes prohibit counting absentee ballots that are timely cast by voters on or before Election Day and received by election officials shortly thereafter—flouts the Supreme Court's and Fifth Circuit's interpretation of the ordinary meaning of "election" in these statutes. *Republican Nat'l Comm.*, 2024 WL 3559623, at *9 ("[N]o 'final selection' is made *after* the federal election day under Mississippi's law. All that occurs after election day is the delivery and counting of ballots cast on or before election day.").

Plaintiffs-Appellants' arguments not only reflect a disjoined method of statutory interpretation and historical analysis, but would lead to absurd results with catastrophic consequences for election administration in Mississippi and across the nation that Congress did not intend and could not have intended. Plaintiffs-Appellants' insistence that Mississippi violates the Federal Election Day Statutes by merely receiving a timely cast ballot after Election Day—a purely administrative act by election officials—offers no limiting principle or basic rationale for

distinguishing ballot receipt from other post-election-day administrative acts by election officials, including ballot processing, counting, canvassing, and more. Accordingly, their strained interpretation of federal law would radically disrupt post-election procedures, rendering election administration effectively impossible in Mississippi and in every state.

### A. Plaintiffs-Appellants' Misinterpretation of the Federal Election Day Statutes Flouts Basic Principles of Statutory Interpretation and Binding Precedent.

As explained by the district court, in *Foster v. Love,* 522 U.S. 67 (1997), the Supreme Court analyzed the Federal Election Day Statutes and determined that "election" "plainly refer[s] to the combined actions of voters and officials meant to make a final selection of an officeholder." *Id.* at 71; *see Republican Nat'l Comm.,* 2024 WL 3559623, at *8. Accordingly, the Court struck down a primary system that permitted the "final selection" of a winner to "conclude[] as a matter of law before the federal election day, with no act in law or in fact to take place on the date chosen by Congress[.]" *Foster,* 522 U.S. at 72. Following *Foster*, the Fifth Circuit rejected a challenge under the Federal Election Day Statutes to Texas laws permitting early voting in federal elections. *See Bomer*, 199

F.3d 773. Relying on the Supreme Court's "plain, common sense reading" of these statutes, the *Bomer* court disagreed with the argument that "the federal statutes, by establishing '*the* day for the election,' contemplate that the entire election, including all voting, will occur that day." *Id.* at 775 (quoting 2 U.S.C. § 7). To the contrary, it held that "the plain language of the statute does not require all voting to occur on federal election day," rather, "[a]*ll* the statute requires is that the election be held that day." *Id.* at 776 (emphasis added); *see Republican Nat'l Comm.*, 2024 WL 3559623, at *9.

These precedents establish that although the "combined actions of voters and officials meant to make a final selection of an officeholder" must not conclude before Election Day, *Foster,* 522 U.S. at 71, not all election-related actions of either voters or election officials need occur on that specific day, *Bomer*, 199 F.3d at 776. As the district court explained, "[n]o 'final selection' is made *after* the federal election day under Mississippi's law. All that occurs after election day is the delivery and counting of ballots cast on or before election day." *Republican Nat'l Comm.*, 2024 WL 3559623, at *9. In reaching this conclusion, the Supreme Court and Fifth Circuit's interpretation of the Federal Election

Day Statutes comports with the ordinary meaning of an "election" as a process, rather than a single moment in time. *See Election*, Black's Law Dictionary (12th ed. 2024) ("The process of selecting a person to occupy an office . . . .").

Under Mississippi's Receipt Deadline law, no absentee ballot may be counted unless it was timely cast as indicated by an official postmark on or before the date of election. *See* Miss. Code Ann. § 23-15-637(1)(a).[13] There can be no dispute that, in any sense of the word, the "actions" of Mississippi voters must be completed on or before Election Day. *See Republican Nat'l Comm.*, 2024 WL 3559623, at *8–9. Therefore, an election official's mere *receipt* of a mailed ballot is neither a "combined action[] of voters and officials" that occurs after Election Day—as the voter completed their action on or before Election Day—nor an action

---

[13] Under Mississippi's absentee voting provisions, a completed ballot has been "*timely cast*" the moment that it has been deposited in the mail with a postmark on or before Election Day—the registrar's act of "reciev[ing] [the ballot] by mail" is statutorily distinct from the voter's act of "cast[ing]" one's ballot. Miss. Code Ann. § 23-15-637(2) (emphasis added); *see also Cast*, Black's Law Dictionary (12th ed. 2024) ("To formally deposit (a ballot) or signal one's choice (in a vote)."); *Republican Nat'l Comm.*, 2024 WL 3559623, at *9 (rejecting Plaintiffs-Appellants argument "that no ballots are 'cast' until they are in the custody of election officials.").

"meant to make a final selection of an officeholder." *Foster,* 522 U.S. at 71.[14]

In another case brought under the Federal Election Statutes, a sister Circuit explained that "the plaintiffs' focus on the single act of receiving a ballot from a voter presents an unnatural and stilted conception of the actions taken by officials under [state] election laws and loses sight of the fact that an official's mere receipt of a ballot without

---

[14] *See also Bognet v. Sec'y of the Commonwealth of Pa.*, 980 F.3d 336, 353, 354 (3d Cir. 2020), *cert. granted, judgment vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) (rejecting challenge to Pennsylvania's extension of absentee ballot receipt deadline to allow "counting ballots received within three days of Election Day" because "[t]he Deadline Extension and federal laws setting the date for federal elections can, and indeed do, operate harmoniously"); *Bost v. Illinois State Bd. of Elections*, 684 F. Supp. 3d 720, 736 (N.D. Ill. 2023), *aff'd,* No. 23-2644, 2024 WL 3882901 (7th Cir. Aug. 21, 2024) (holding that Illinois's "Ballot Receipt Deadline Statute operates harmoniously with the federal statutes that set the timing for federal elections" because "[n]owhere in the text does the [state law] allow ballots postmarked or certified after Election Day to be counted"); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020) (holding that there is "no direct conflict between" New Jersey's post-election receipt deadline and "the Federal Election Day Statutes" because "New Jersey law prohibits canvassing ballots cast after Election Day, in accordance with the Federal Election Day Statutes"); *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 368 n.23 (Pa. 2020) ("[A]llowing the tabulation of ballots received after Election Day does not undermine the existence of a federal Election Day, where the proposal requires that ballots be cast by Election Day . . . ."); *see also Republican Nat'l Comm.*, 2024 WL 3559623, at *8-10 ("The analysis in these opinions is persuasive.").

more is not an act meant to make a final selection." *Millsaps v. Thompson*, 259 F.3d 535, 546 (6th Cir. 2001). Rather, the array of official activities that routinely extend past Election Day—including receipt and processing of timely absentee ballots, tabulation of votes, canvassing of ballots, certification of results, and more—are independent, administrative duties of election officials meant only to ensure valid ballots are tallied and to verify the outcome of a concluded election. *See id.* at 546 n.5 ("[O]fficial action to confirm or verify the results of the election extends well beyond federal election day."); *see also Republican Nat'l Comm.*, 2024 WL 3559623, at *9.

Therefore, all the federal courts to interpret the Federal Election Day Statutes in the post-election context have found that actions taken by election officials to receive, tally, canvass, and certify votes do not implicate these statutes so long as voters submit their ballots on or before Election Day. By taking a contrary approach, Plaintiffs-Appellants ask the Court to sweep into these statutes not only the receipt of ballots, but all the other aspects of election administration that pertain to vote counting after Election Day. The consequences of such an interpretation would create both absurdity and chaos.

## B. Plaintiffs' Interpretation of the Federal Election Day Statutes Would Lead to Absurd Results and Disrupt Routine Election Administration in Mississippi and <u>Across the Nation.</u>

Laws should be interpreted to reach "'a sensible construction' that avoids attributing to [Congress] either 'an unjust or an absurd conclusion.'" *United States v. Granderson*, 511 U.S. 39, 56 (1994) (quoting *In re Chapman*, 166 U.S. 661, 667 (1897)); *see United States v. A Female Juvenile*, 103 F.3d 14, 16–17 (5th Cir. 1996) ("Axiomatic in statutory interpretation is the principle that laws should be construed to avoid an absurd or unreasonable result.").

Despite the ordinary meaning of the Federal Election Day Statutes confirmed by the district court, Plaintiffs-Appellants insist that because "Congress established one specific day as the uniform, national Election Day for federal office[,]" "[a] qualified ballot for federal office is not a legal vote unless it is received by the proper election officials by Election Day." *RNC v. Wetzel*, No. 1:24-cv-25-LG-RPM, Compl. ¶¶ 65–66 (S.D. Miss. Jan 26, 2024), ECF No. 1. Yet because all actions *of voters* are completed on or before Election Day, *see* Miss. Code Ann. § 23-15-637(1)(a); *Republican Nat'l Comm.*, 2024 WL 3559623, at *9, adopting Plaintiffs' interpretation would require the Court to conclude that *election officials'* post-election-

day administrative acts—*e.g.*, collecting, tallying, and canvassing timely cast ballots and certifying election results—"directly conflict with federal election laws" setting a calendar date for Election Day. *Bomer*, 199 F.3d at 775. That is, even if Plaintiffs-Appellants interpretation of the term "election" carried water—and it does not—they can offer no principled reason to distinguish "the delivery . . . of ballots cast on or before election day" from other post-election-day "'actions' of 'officials'" equally necessary to complete the "counting of ballots" and determine the "*final selection* of an officerholder." Mem. Op. & Order at 18–19 (quoting *Foster*, 522 U.S. at 71 and Plaintiffs-Appellants' summary judgment briefing). Such a holding would destabilize election administration not just in Mississippi but in every state.

Mississippi permits the counting of timely mailed absentee ballots that are received by election officials no later than five business days after Election Day. *See* Miss. Code Ann. § 23-15-637(1). It employs the same deadline for the absentee ballots of overseas and military voters. Miss. Code Ann. § 23-15-699(6); *see* 52 U.S.C. §§ 20304(b)(l). Such post-election-day receipt deadlines are commonplace: Mississippi is one of 19 states (including the District of Columbia) that allows the post-election-

day receipt of absentee ballots that were postmarked on or before Election Day.[15] Eight additional states allow post-election-day receipt of absentee ballots cast by military and overseas voters.[16] Accordingly, there can be no dispute that Plaintiffs-Appellants' misreading of the Federal Election Day Statutes would frustrate absentee voting procedures in over half of states.

But the ramifications of Plaintiffs-Appellants' arguments are much broader. In Mississippi, as in every other state, election officials engage in a wide array of post-election-day ministerial acts that—just like collecting mailed absentee ballots—are part and parcel of processing timely cast ballots to ascertain the final vote count.

---

[15] Those states include Alaska, California, D.C., Illinois, Kansas, Maryland, Massachusetts, Mississippi, Nevada, New Jersey, New York, North Dakota, Ohio, Oregon, Texas, Virginia, Washington, West Virginia. *See* Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots*, (last updated June 12, 2024), https://bit.ly/3TOeaGK. Utah also permits post-Election-Day receipt of absentee ballots, so long as they were postmarked by the day before Election Day. *Id.* Puerto Rico and the Virgin Islands also permit absentee ballots to be counted when received after Election Day. *Id.*

[16] *See* Ala. Code § 17-11-18(b); Ark. Code. Ann. § 7-5-411(a)(1)(A)(ii); Fla. Stat. § 101.6952(5); Ga. Code Ann. § 21-2-386(a)(1)(G); Ind. Code § 3-12-1-17(b); Mo. Rev. Stat. § 115.920(1); 25 Pa. Cons. Stat. § 3511(a); R.I. Gen. Laws § 17-20-16; S.C. Code Ann. § 7-15-700(A).

First and foremost, once an election is held, election officials must conduct a preliminary tabulation of votes. Tabulation timelines vary drastically by state and local jurisdiction, meaning that "[i]n some jurisdictions, tabulation concludes on election night," while "[i]n others, tabulation continues for days or weeks."[17] As is the case in 16 states,[18] even absent the Receipt Deadline law, Mississippi election officials cannot begin counting absentee mail ballots until the polls close at the earliest, Miss. Code Ann. § 23-15-645(1), and Mississippi law further precludes counting any absentee ballots until all those received on or before Election Day have been *processed*. *See* Miss. Code Ann. § 23-15-639(1)(c). Election officials cannot even begin processing any absentee ballots until after polls open on Election Day, and the rigorous process requires a "resolution board" to conduct a nine-step review for each absentee ballot to ensure its validity and to adjudicate any challenges to an absentee ballot.[19] Tabulating the Election Day vote easily can—and

---

[17] Cybersecurity & Infrastructure Security Agency, *Post Election Process Mapping*, (last accessed Mar. 19, 2024), https://bit.ly/4atWR32.

[18] Nat'l Conf. of State Legis., *Voting Outside the Polling Place Report, Table 16: When Absentee/Mail Ballot Processing and Counting Can Begin* (last updated Dec. 22, 2023), https://bit.ly/3Vx4npR.

[19] *See* Miss. Code Ann. §§ 23-15-639, 23-15-643; Miss. Sec. of State's

often does—extend past midnight due to factors like high turnout, court orders extending poll hours, or any number of technical or procedural mishaps. In particular, the tabulation of absentee ballots may be delayed in elections that involve high absentee turnout. Even in the unlikely event that every county in Mississippi managed to conduct their initial tabulation before midnight on election night in every election no matter how high the turnout, as explained by the U.S. Election Assistance Commission, "[t]he election results reported on election night are never the final, certified results."[20]

After local election officials conduct a preliminary tabulation, they must canvass the results. "The canvass process aggregates and confirms every valid ballot cast and counted, including mail, uniformed and overseas citizen, early voting, Election Day, and provisional ballots."[21] Typically, states conduct canvasses at both the county and state level following an election, and every state's canvasses occur *after* Election

---

Office, *County Elections Handbook*, at 44 (Sept. 18, 2023), https://bit.ly/3XkbHEk.

[20] U.S. Election Assistance Comm'n, *Election Results, Canvass, and Certification* (May 25, 2022), https://bit.ly/43vRz4S.

[21] *Id.*

Day.[22] *See Millsaps*, 259 F.3d at 546 & n.5 (recognizing and explaining in detail how "official action to confirm or verify the results of the election extends well beyond federal election day").

In Mississippi, the county canvasses begin "[o]n the day following the general . . . election," when County Election Commissions meet to verify the returns provided to them by precinct poll managers.[23] During the county canvass, election commissioners adjudicate the legality of all provisional ballots (known as "affidavit ballots" in Mississippi) that were cast in the election, which requires permitting affected voters to obtain or return with an acceptable form of photo ID within five business of Election Day. Miss. Code Ann. § 23-15-573(3)(c), (d). Of course, the canvass must also account for timely absentee and UOCAVA ballots that

---

[22] *See* Nat'l Conf. of State Legis., *Canvass, Certification and Contested Election Deadlines, and Voter Intent Laws*, (last updated Oct. 26, 2022), https://bit.ly/3TzEmUc; *see also* U.S. Election Assistance Comm'n, *Canvassing and Certifying an Election*, Ch. 13, p. 133 (Aug. 26, 2010), https://bit.ly/4cuddKY ("Many voters believe that the election results they see on television on election night are the final results. In fact, the outcome of the election is not official until the completion of the canvass' of votes and certification of results, which sometimes may be several weeks after Election Day.").

[23] Miss. Sec. of State's Office, *County Elections Handbook*, at 48 (Sept. 18, 2023), https://bit.ly/3XkbHEk; *see* Miss. Code Ann. §§ 23-15-601, 23-15-603.

arrive within five business days of Election Day. *See Republican Nat'l Comm.*, 2024 WL 3559623, at \*9–10 (relying on Congress's "enactment of UOCAVA" to "infer that the similar Mississippi statute on post-election receipt is likewise inoffensive" to the Election Day Statutes). County election commissioners must finish their canvass within ten days of Election Day and send a certified statement of the result of the canvass to the Secretary of State. Miss. Code Ann. § 23-15-603(1). Then the state-level canvass begins, during which the Secretary of State tabulates the statements certified by county election commissioners; it must be completed within 30 days of Election Day. Miss. Code Ann. § 23-15-605. Only at that point is a winning candidate "declare[d] . . . to be duly elected." *Id.*

In other states, the administrative post-election acts of election officials to process and canvass ballots extend even further past Election Day than in Mississippi. Ten states allow county canvasses to extend three weeks past Election Day, and four states permit county officials to canvass ballots into the fourth week after the date of the election or

beyond.[24] Statewide canvass dates range from the Friday after the election in Oklahoma (but only so long as no election contest has been filed), to the second Tuesday in December in Missouri for offices other than presidential electors.[25]

The timing and specifics of post-election day duties vary from state to state but one certainty remains true across the nation: although the election ends on election night when the final votes are cast, election officials' ballot-related work is far from over. Despite widely watched news projections of election winners based on incomplete unofficial tabulations, "[e]lection officials well know there are various other steps and factors that impact when election results are final."[26] This reality should come as no surprise, given the frequent prominence of post-election administrative activity. *See, e.g.*, *Bush v. Gore*, 531 U.S. 98, 116 (2000) (Rehnquist, C.J., concurring) (recognizing that "*[a]fter the election has taken place*, the canvassing boards receive returns from precincts,

---

[24] Nat'l Conf. of State Legis., *Canvass Deadlines* (last updated July 8, 2024), https://bit.ly/3xaBkhC.

[25] *Id.*

[26] U.S. Election Assistance Comm'n, *Election Results, Canvass, and Certification* (May 25, 2022), https://bit.ly/43vRz4S.

count the votes, and [if necessary], conduct a mandatory recount," "[t]he county canvassing boards must file certified election returns with the Department of State," and "[t]he Elections Canvassing Commission must then certify the results of the election" (emphasis added)); *see also Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) (unsuccessful challenge to post-election tally of election returns and statewide hand recount of the 2020 presidential election results in Georgia).[27]

In its unsuccessful summary judgment briefing to the district court, Plaintiff-Appellant Libertarian Party of Mississippi flippantly dismissed amici's concerns as "a parade of horribles." *RNC v. Wetzel*, 1:24-cv-25-LG-RPM, Pl. Libertarian Party of Miss.'s Mem. in Support of Its Combined Opp'n to Mots. for Summ. J. Filed by Original Defs. & Intervenor Defs. at 28 n.25 (S.D. Miss. Apr. 9, 2024), ECF No. 80. Yet, no Plaintiff-Appellant even attempts to offer a convincing limiting principle that could explain how the statutory term "election" could be construed to encompass election officials' independent administrative acts of *accepting*

---

[27] Plaintiffs-Appellants' misreading of federal law would also lead to the further absurd result of necessitating the overturning of dozens, possibly hundreds, of court opinions protecting voters' ability to vote absentee, extending receipt deadlines and canvassing periods, and ruling on the validity of ballots counted after Election Day.

and *processing* a ballot while excluding *all other* ministerial acts of election officials necessary to finalize the tally of timely cast votes. *See, e.g.*, *Millsaps*, 259 F.3d 535 at 546 & n.5 (dismissing "plaintiffs' focus on the single act of receiving a ballot" as an "unnatural and stilted conception of the actions taken by [election] officials" that ignores how "official action to confirm or verify the results of the election extends well beyond federal election day" to include the actions raised here by amici); *Republican Nat'l Comm.*, 2024 WL 3559623, at *9 (approving of post-election-day "delivery *and counting* of ballots cast on or before election day") (emphasis added); *id.* at *10 ("Congress did not intend 3 U.S.C. § 1 to impose irrational scheduling rules on state and local canvassing officials") (quoting *Harris v. Fla. Elections Canvassing Comm'n*, 122 F. Supp. 2d 1317, 1325 (N.D. Fla. 2000), *aff'd,* 235 F.3d 578 (11th Cir. 2000)).

In sum, Plaintiffs-Appellants ask this Court to reject the district courts' careful decision (which is in accord with every other court to consider the merits of their arguments) and instead hold that the question of whether a state unlawfully extends its elections beyond the federal Election Day depends on when election officials complete an

independent, ministerial duty—namely, the mail receipt of timely cast ballots. But Plaintiffs-Appellants' misreading of the Federal Election Day Statutes lacks any basis to distinguish between ballot receipt and other post-election acts of election officials—including the processing of absentee ballots, initial tabulation of votes, adjudication of challenged ballots, resolution of provisional ballots, county canvassing of local results, statewide canvassing of county results, and many steps in between. These ministerial duties of election officials are all meant to ensure that all valid votes cast in an election are tallied and to confirm the outcome of an already concluded officeholder selection.

Thus, Plaintiffs-Appellants' reading would not only upturn the absentee ballot receipt laws in most states; it would require an effectively impossible, wholesale reconfiguration of all state election systems. Congress could not have intended this absurd result through a statute that simply selects a calendar date for federal elections. Given "the [Supreme] Court's express disavowal in *Foster* that it was establishing any particular actions a State must perform on Election Day to comply with the federal statutes, this reading simply asks too much." *Millsaps*, 259 F.3d at 546; *see Republican Nat'l Comm.*, 2024 WL 3559623, at *8.

## CONCLUSION

For the foregoing reasons, this Court should reject Plaintiffs-Appellants' far-reaching, atextual arguments and affirm the district court's grant of summary judgment in favor of Defendants-Appellees.

DATED this 9th day of September, 2024.

Respectfully submitted,

/s/ *Joshua Tom*
Joshua Tom (Miss. Bar No. 105392)
AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI FOUNDATION
101 South Congress Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

Jacob van Leer
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, D.C. 20005
(202) 715-0815
jvanleer@aclu.org

DECHERT LLP
Neil Steiner
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
neil.steiner@dechert.com

DECHERT LLP
Christopher J. Merken
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-2380
christopher.merken@dechert.com

Davin M. Rosborough
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
slakin@aclu.org

*Counsel for Amici Curiae*
*Disability Rights Mississippi and*
*League of Women Voters of*
*Mississippi*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 5,629 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point characters with Century Schoolbook font.

Dated: September 9, 2024       /s/ *Joshua Tom*
                                       Attorney for *Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on September 9, 2024, the foregoing document was filed on the Court's CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ Joshua Tom* _____

Joshua Tom

*Counsel for Amici Curiae
Disability Rights Mississippi and
League of Women Voters of
Mississippi*