No. 24-60395

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Republican National Committee, Mississippi Republican Party, James Perry,
Matthew Lamb,

*Plaintiffs - Appellants*,

v.

Justin Wetzel, in his official capacity as the clerk and registrar of the Circuit Court
of Harrison County; Toni Jo Diaz, in their official capacities as members of the
Harrison County Election Commission; Becky Payne, in their official capacities
as members of the Harrison County Election Commission; Barbara Kimball, in
their official capacities as members of the Harrison County Election Commission;
Christene Brice, in their official capacities as members of the Harrison County
Election Commission; Carolyn Handler, in their official capacities as members of
the Harrison County Election Commission; Michael Watson, in his official
capacity as the Secretary of State of Mississippi,

*Defendants - Appellees*,

Vet Voice Foundation; Mississippi Alliance for Retired Americans,

*Intervenor Defendants – Appellees*.

Libertarian Party of Mississippi,

*Plaintiff - Appellant*,

v.

Justin Wetzel, in his official capacity as the clerk and registrar of the Circuit Court
of Harrison County; Toni Jo Diaz, in their official capacities as members of the
Harrison County Election Commission; Becky Payne, in their official capacities
as members of the Harrison County Election Commission; Barbara Kimball, in
their official capacities as members of the Harrison County Election Commission;
Christene Brice, in their official capacities as members of the Harrison County

Election Commission; Carolyn Handler, in their official capacities as members of the Harrison County Election Commission; Michael Watson, in his official capacity as the Secretary of State of Mississippi,

*Defendants – Appellees.*

On Appeal from the United States District Court
for the Southern District of Mississippi
Hon. Louis Guirola, Jr.

Case Nos. 1:24-cv-25-LG-RPM; 1:24-cv-37-LG-RPM

## PETITION OF INTERVENOR DEFENDANTS - APPELLEES VET VOICE FOUNDATION AND THE MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS FOR REHEARING EN BANC

Robert B. McDuff
Paloma Wu
**MISSISSIPPI CENTER FOR JUSTICE**
210 E. Capitol Street, Suite 1800
Jackson, MS 39201
Telephone: (601) 259-8484
Facsimile: (601) 352-4769
rmcduff@mscenterforjustice.org
pwu@mscenterforjustice.org

Elisabeth C. Frost
Christopher D. Dodge
Richard A. Medina
Tina Meng Morrison
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
efrost@elias.law
cdodge@elias.law
rmedina@elias.law
tmengmorrison@elias.law

*Attorneys for Intervenor Defendants-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

No. 24-60395, *Republican National Committee et al. v. Wetzel et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**A.    Plaintiffs-Appellants:**

1.    Republican National Committee

2.    Mississippi Republican Party

3.    James Perry

4.    Matthew Lamb

5.    Libertarian Party of Mississippi

**B.    Counsel for Plaintiff-Appellant Libertarian Party of Mississippi:**

1.    T. Russell Nobile

2.    Eric W. Lee

3.    Judicial Watch, Incorporated

**C.    Counsel for Plaintiffs-Appellants Republican National Committee, Mississippi Republican Party, Perry, and Lamb:**

1.    Thomas McCarthy

2.    Gilbert C. Dickey

3.    Conor Woodfin

4.      Consovoy McCarthy, P.L.L.C.

5.      Spencer M. Ritchie

6.      Forman Watkins & Krutz, L.L.P.

**D.      Defendants-Appellees:**

1.      Justin Wetzel, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County

2.      Toni Jo Diaz, in her official capacity as member of the Harrison County Election Commission

3.      Becky Payne, in her official capacity as member of the Harrison County Election Commission

4.      Barbara Kimball, in her official capacity as member of the Harrison County Election Commission

5.      Christene Brice, in her official capacity as member of the Harrison County Election Commission

6.      Carolyn Handler, in her official capacity as member of the Harrison County Election Commission

7.      Michael Watson, in his official capacity as the Secretary of State of Mississippi

**E.      Counsel to Defendants-Appellees Wetzel, Diaz, Payne, Kimball, Brice, and Handler, in their official capacities:**

1.      Tim C. Holleman

2.      Boyce Holleman & Associates, P.A.

**F.      Counsel to Defendant-Appellee Watson, in his official capacity:**

1.      Scott G. Stewart

2.      Justin Lee Matheny

3.      Rex Morris Shannon, III

4.      Wilson D. Minor

5.      Mississippi Attorney General's Office

**G.    Intervenor Defendants-Appellees:**

1.      Vet Voice Foundation

2.      Mississippi Alliance for Retired Americans

**H.    Counsel for Intervenor Defendants-Appellees Vet Voice Foundation and Mississippi Alliance for Retired Americans:**

1.      Elisabeth C. Frost

2.      Christopher D. Dodge

3.      Richard Alexander Medina

4.      Tina Meng Morrison

5.      Michael B. Jones

6.      Elias Law Group, LLP

7.      Robert B. McDuff

8.      Paloma Wu

9.      Mississippi Center for Justice

**I.     Amici Curiae:**

1.      Democratic National Committee

2.      Public Interest Legal Foundation

3.      Disability Rights Mississippi

4. League of Women Voters of Mississippi

5. United States of America

**J.    Counsel for Democratic National Committee:**

1. Donald B. Verrilli, Jr.

2. Ginger D. Anders

3. J. Kain Day

4. Munger, Tolles & Olson LLP

5. David W. Baria

6. Cosmich, Simmons & Brown, LLC

**K.    Counsel for Public Interest Legal Foundation:**

1. Joseph M. Nixon

2. Public Interest Legal Foundation, Incorporated

**L.    Counsel for Disability Rights Mississippi and League of Women Voters of Mississippi**

1. Jacob van Leer

2. Davin Rosborough

3. Sophia Lin Lakin

4. American Civil Liberties Union Foundation

5. Joshua Tom

6. American Civil Liberties Union Foundation of Mississippi

7. Neil Steiner

8.    Christopher J. Merken

9.    Julia Markham-Cameron

10.   Angela M. Liu

11.   Dechert LLP

12.   Greta K. Martin

**M.    Counsel for United States of America**

1.    Kristen Clarke

2.    R. Tamar Hagler

3.    Timothy F. Mellett

4.    Janie Allison Sitton

5.    Sejal Jhaveri

6.    Todd W. Gee

7.    Angela Givens Williams

8.    Mitzi Dease Paige

9.    Noah B. Bokat-Lindell

10.   Elizabeth Parr Hecker

11.   United States Department of Justice

/s/ *Elisabeth C. Frost*
Elisabeth C. Frost

*Counsel for Intervenor Defendants-Appellees*

## RULE 35(b) STATEMENT

This case involves a question of exceptional importance: whether federal statutes designating a national "election day" preempt Mississippi's law allowing election officials to count ballots cast on or before that day, if received within five days after. That law is critical to protecting the voting rights of members of the Armed Services when stationed away from home, whose ballots may otherwise arrive too late to be counted. The panel's decision further dramatically upsets the balance between state and federal election administration struck by the Constitution's Elections Clause, by reading into the federal statutes an unspoken limitation on state power that has no grounding in text or history. Every other court that has considered the question—including the district court here—has rejected this argument.

The panel's decision incorrectly suggested that post-election day ballot receipt deadlines are a recent invention. It jettisoned any recognizable methodology for discerning the plain meaning of statutory text and ignored contemporaneous dictionary definitions that undermined its conclusion. It misinterpreted the precedents of this Court and the Supreme Court. And it perplexingly cast aside Congress's explicit and favorable acknowledgment of these laws as "congressional silence."

In fact, the practice of counting ballots cast by election day but received

afterward goes back to the Civil War, when many states permitted soldiers to vote in the field before sending their ballots to soldiers' home precincts. Presently, more than half the states—including two of the three within this Circuit—have such laws. Far from making any attempt to preempt these laws, Congress has acknowledged and approved of them for more than five decades.

The Court should grant rehearing en banc to carefully consider this issue of exceptional importance.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................. i

Rule 35(b) Statement ............................................................................. vi

Table of Contents ................................................................................. viii

Table of Authorities ............................................................................... ix

Issue Meriting En Banc Consideration .................................................... 1

The Course of the Proceedings ............................................................... 1

Argument ................................................................................................ 2

    I.     This case presents a question of exceptional importance. ................... 3

    II.    The panel's opinion breaks with other courts. ................................... 6

    III.   The panel decision is at odds with the Election Day Statutes' plain text and ignores original public meaning. ............................................ 8

    IV.   The panel decision misreads precedent. ........................................... 10

    V.    The panel decision misconstrues the historical record ...................... 12

Conclusion ............................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013)...........................................................................................9, 10

*Bognet v. Sec'y Commonwealth of Pa.*,
  980 F.3d 336 (3d Cir. 2020) ...............................................................7

*Bost v. Ill. State Bd. of Elections*,
  114 F.4th 634 (7th Cir. 2024) ...............................................................8

*Bost v. Ill. State Bd. of Elections*,
  684 F. Supp. 3d 720 (N.D. Ill. 2023)...................................................8

*Burke v. State Bd. of Canvassers*,
  107 P.2d 773 (Kan. 1940)...................................................................11

*DNC v. Wisconsin State Legislature*,
  141 S. Ct. 28 (2020)............................................................................8

*Donald J. Trump for President, Inc. v. Way*,
  492 F. Supp. 3d 354 (D.N.J. 2020)......................................................7

*Foster v. Love*,
  522 U.S. 67 (1997)...............................................................................9

*Goodell v. Judith Basin Cnty.*,
  224 P. 1110 (Mont. 1924).................................................................11

*Harris v. Fla. Elections Canvassing Comm'n*,
  122 F. Supp. 2d 1317 (N.D. Fla. 2000) ...............................................8

*Maddox v. Board of State Canvassers*,
  149 P.2d 112 (Mont. 1944)...............................................................11

*Melot v. Bergami*,
  970 F.3d 596 (5th Cir. 2020) ..............................................................7

*Newberry v. United States*,
  256 U.S. 232 (1921)............................................................................9

*Pa. Democratic Party v. Boockvar*,
  238 A.3d 345 (Pa. 2020) ........................................................................7

*Republican Nat'l Comm. v. Burgess*,
  2024 WL 3445254 (D. Nev. July 17, 2024) .........................................8

*Splonskowski v. White*,
  714 F. Supp. 3d 1099 (D.N.D. 2024) ....................................................8

*United States v. Munsingwear, Inc.*,
  340 U.S. 36 (1950) .................................................................................7

*Voting Integrity Project, Inc. v. Bomer*,
  199 F.3d 773 (5th Cir. 2000) ...........................................................6, 9, 12

**Constitutional Provisions and Statutes**

U.S. Const., art. I, §4, cl.1 .........................................................................1

U.S. Const., art. II, §1, cl. 2 .......................................................................1

U.S. Const., art. II, §1, cl. 4 .......................................................................1

2 U.S.C. §7 ..................................................................................................1

3 U.S.C. §1 ..................................................................................................1

3 U.S.C. §21 ................................................................................................1

52 U.S.C. §20303(b) ............................................................................3, 4, 15

78 Pub. L. No. 277, 58 Stat. 136 ..............................................................14

Pub. L. No. 111-84, div. A, tit. V., subtit. H, §580(a), 123 Stat. 2190 ......................4

Act of Sept. 16, 1942, ch. 561, 56 Stat. 753, §9 .....................................14

10 Ill. Comp. Stat. 5/18A-15 ......................................................................3

10 Ill. Comp. Stat. 5/19-8............................................................................3

25 Pa. Cons. Stat. §3511(a) .........................................................................4

1866 Nev. Stat. 215......................................................................................13

Ala. Code §17-11-18(b) ..................................................................4

Ark. Code §7-5-411(a)(1)(A)(ii) .....................................................4

Cal. Political Code §1360 (James H. Derring ed. 1924) ...........................13

Fla. Stat. §101.6952(5) ..................................................................4

Ga. Code §21-2-386(a)(1)(G) ........................................................4

Ind. Code §3-12-1-17(b) ...............................................................4

Kans. Rev. Stat. §25-1106 (Chester I. Long, et al., eds. 1923) ...............13

Mich. Comp. Laws §168.759a(18) ..................................................4

Miss. Code §23-15-637(1)(a) ..........................................................1

Miss. Stat. §23-15-639 ...............................................................11

Mo. Rev. Stat. §115.920(1) ............................................................4

Mont. Code §13-21-226(1) ...........................................................12

Neb. Rev. Stat. §32-838 (1943) ......................................................14

R.I. Gen. Laws §17-20-16 ...............................................................5

S.C. Code §7-15-700(A) .................................................................5

Tex. Elec. Code Ann. §86.007(a)(2) .................................................3

Tex. Elec. Code §86.007(d)(3)(B) (2000) ..........................................12

**Legislative Materials**

*Bill to Amend the Act of September 16, 1942: Hearing On H.R. 3436
    Before the H. Comm. On Election of President, Vice President, and
    Representatives in Congress*, 78th Cong. 100 (Oct. 26, 1943) .........................14

H.R. Rep. 99-765 (1986)...............................................................5

*Uniformed and Overseas Citizens Absentee Voting: Hearing on H.R.
    4393,* 99 Cong. 21 (Feb. 6, 1986) (Statement of Henry Valentino,
    Director, Federal Voting Assistance Program)......................................3

## Other Authorities

Benton, *Voting in the Field: A Forgotten Chapter of the Civil War* (1915) ...................................................................................................13

Fortier & Ornstein, *The Absentee Ballot and the Secret Ballot: Challenges for Election Reform*, 36 U. Mich. J.L. Reform 483 (2003) ...............3

P. Orman Ray, *Military Absent-Voting Laws*, 12 Am. Pol. Sci. Rev. 461 (1918) ............................................................................................13

Paul G. Steinbicker, *Absentee Voting in the United States*, 32 Am. Pol. Sci. Rev. 898 (1938) ...................................................................13, 14

*Tbl. 11: Receipt & Postmark Deadlines for Absentee/Mail Ballots*, Nat'l Conf. of State Legs. (June 12, 2024), perma.cc/H9ZG-P92W ....................4

## ISSUE MERITING EN BANC CONSIDERATION

Whether Congress preempted states' power under the Elections Clause to establish the manner of elections as it relates to counting timely-cast mail ballots received after election day.

## THE COURSE OF THE PROCEEDINGS

The Elections Clause empowers states to set the "Times, Places and Manner of holding Elections for Senators and Representatives," reserving for Congress the right to, "at any time by Law make or alter such Regulations." U.S. Const., art. I, §4, cl.1; *see also id.*, art. II, §1, cl.4; *id.* §1, cl.2 (same, for presidential electors). Congress set the time for the general election for federal offices as the Tuesday after the first Monday in November in the Election Day Statutes. 2 U.S.C. §7; 3 U.S.C. §§1, 21. Exercising its authority to set the "Manner" for these elections, Mississippi enacted the Ballot Receipt Deadline, Miss. Code §23-15-637(1)(a), ensuring mail ballots that are "postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election" are counted, notwithstanding mail delays.

The Republican National Committee, Mississippi Republican Party, James Perry, and Matthew Lamb, and then separately, the Libertarian Party, sued to enjoin

the Ballot Receipt Deadline. ROA.23, ROA.1281.[1] Appellants allege that it is preempted by the Election Day Statutes. *See* ROA.33-34; ROA.36; ROA.1293. Vet Voice Foundation and the Mississippi Alliance for Retired Americans were granted intervention to defend the rights of military voters, veterans, and elderly voters who rely on absentee voting in Mississippi. ROA.389.

The district court granted summary judgment for Defendants, holding that precedent, legislative history, statutory purpose, and historical practice all show that the Ballot Receipt Deadline "operates consistently with and does not conflict with the Electors Clause or the election-day statutes." ROA.1181. On October 24, 2024, a panel of this Court reversed. Doc.191.

## ARGUMENT

The panel's decision will disenfranchise lawful voters, including Americans serving their country away from home. In doing so, it ignores well-trod methods of statutory interpretation, infringing on the proper constitutional roles of Congress and the states in election administration. Nothing in the Election Day Statutes' text prohibits states from counting timely-cast ballots received after election day. Congress has long been aware that many states have such laws, and has repeatedly acknowledged them, including in the Uniformed and Overseas Citizens Absentee

---

[1] The cases were consolidated. ROA.307. Plaintiffs are referred to collectively as "Appellants."

Voting Act ("UOCAVA"), which creates a federal absentee ballot for military and overseas voters to be "*processed in the manner provided by law for absentee ballots in the State involved*." 52 U.S.C. §20303(b) (emphasis added). That "manner" includes extended receipt deadlines in states with such laws. The voting rights of our service members and the balance of state and federal power over elections are matters of exceptional importance that warrant full Court review.

**I.     This case presents a question of exceptional importance.**

The practice of accepting ballots cast before election day but received by officials afterward dates to the Civil War. *See* Fortier & Ornstein, *The Absentee Ballot and the Secret Ballot: Challenges for Election Reform*, 36 U. Mich. J.L. Reform 483, 500 (2003). As absentee voting became more widespread, more states adopted post-election receipt deadlines, ranging from one day to several weeks. *Compare* Tex. Elec. Code Ann. §86.007(a)(2), *with* 10 Ill. Comp. Stat. §§5/19-8 &. 5/18A-15.

When Congress passed UOCAVA, it was aware that "[t]welve [states] ha[d] extended the deadline for the receipt of voted ballots to a specific number of days after the election." *Uniformed and Overseas Citizens Absentee Voting: Hearing on H.R. 4393,* 99 Cong. 21 (Feb. 6, 1986) (Statement of Henry Valentino, Director, Federal Voting Assistance Program). And it directed that UOCAVA ballots were to be "processed in the manner provided by law for absentee ballots in the State

involved," including in accordance with the state's ballot receipt deadline. 52 U.S.C. §20303(b); *see also id.* §20303(b)(3) (a federal write-in ballot shall not count if a UOCAVA voter's state absentee ballot is received "no later than the deadline for receipt of the State absentee ballot under State law"). Congress again recognized these state laws when it passed the MOVE Act in 2009, which requires military officials to ensure that overseas servicemembers' ballots are delivered to election officials "not later than *the date by which an absentee ballot must be received in order to be counted in the election*." 52 U.S.C. §20304(b)(1) (emphasis added); Pub. L. No. 111-84, div. A, tit. V., subtit. H, §580(a), 123 Stat. 2190.

By the time this case was filed, at least 28 states and several U.S. territories had extended ballot-receipt deadlines. *See Tbl. 11: Receipt & Postmark Deadlines for Absentee/Mail Ballots*, Nat'l Conf. of State Legs. (June 12, 2024), perma.cc/H9ZG-P92W. This includes the "18 states and the District of Columbia" that the panel acknowledged "permit post-Election Day receipt" for all mail voters, Op.15, as well as another ten states that permit it for military and overseas voters. *See* Ala. Code §17-11-18(b)); Ark. Code §7-5-411(a)(1)(A)(ii)); Fla. Stat. §101.6952(5); Ga. Code §21-2-386(a)(1)(G); Ind. Code §3-12-1-17(b); Mich. Comp. Laws §168.759a(18); Mo. Rev. Stat. §115.920(1); 25 Pa. Cons. Stat.

§3511(a); R.I. Gen. Laws §17-20-16; S.C. Code §7-15-700(A).[2]

As the United States emphasized, laws like Mississippi's "provide critical protection for UOCAVA voters." U.S. Amicus Br., Doc. 148-1, at 28. "[A]bsentee voting laws generally are the only means by which American citizens deployed in the uniformed services or otherwise living overseas can exercise their right to vote." *Id.* Historically, the "single largest reason for disenfranchisement of military and overseas voters was State failure to provide adequate ballot transit time." *Id.* at 28-29 (quoting UOCAVA House Report 10). The UOCAVA House Report expressly noted that "several States accept absentee ballots, particularly those from overseas, for a specified number of days after election day," praising those laws as "aid[ing] in protecting the voting rights" of military and overseas voters. H.R. Rep. 99-765 at 8 (1986). And the U.S. Attorney General repeatedly has brought suit "against States that transmitted ballots late, to prevent military and overseas voters from being disenfranchised in federal elections," by "extending the receipt deadline beyond Election Day." U.S. Amicus Br. at 30-31.

The panel concluded that the Election Day Statutes silently and entirely preempt the widespread and longstanding practice of counting ballots under laws like Mississippi's. That decision offends the Elections Clause, which "gives states

---

[2] It is therefore not correct that, "[e]ven today, a substantial majority of States prohibit officials from counting ballots received after Election Day." Op.15.

the responsibility for establishing the time, place, and manner of holding congressional elections, *unless Congress acts* to preempt state choices." *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 775 (5th Cir. 2000) (citation omitted) (emphasis added). Under this constitutional edict, "a state's discretion and flexibility in establishing the time, place and manner of electing its federal representatives *has only one limitation: the state system cannot directly conflict with federal election laws on the subject*." *Id*. (emphasis added).

To find conflict, the panel rejected the ordinary tools of plain meaning statutory interpretation, misinterpreted precedent, misconstrued relevant history, and ignored Congress's explicit and favorable acknowledgment of these laws. The panel's roadmap for evaluating whether Congress has preempted a state's constitutional power to regulate the "Manner" of its elections is befuddling. And the Americans whose voting rights are most threatened by the panel's ruling are those who volunteer to protect those rights—with their lives if necessary.

## II.    The panel's opinion breaks with other courts.

Until the panel's decision, *every* court to address the merits of the question concluded that the Election Day Statutes operate harmoniously with laws like Mississippi's.

The Pennsylvania Supreme Court rejected the argument (made by the Republican Party of Pennsylvania) in 2020, when it ordered the extension of

Pennsylvania's ballot receipt deadline to account for postal delays during the pandemic. *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 368 n.23 (Pa. 2020) (concluding Election Day Statutes are consistent with extended ballot receipt deadlines).

The Third Circuit dismissed a federal challenge to that decision, explaining "Federal law does not provide for *when* or *how* ballot counting occurs," and extended receipt deadlines and the Election Day Statutes "can, and indeed do, operate harmoniously." *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 353-54 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *see also id.* at 345-46 (finding "receipt" akin to routine post-election actions—like counting and canvassing—distinct from voting). Accordingly, the plaintiffs lacked standing because they alleged only a violation of state—not federal—law. *Id.* at 354-55.[3]

Also in 2020, a federal court rejected the RNC's (and others') challenge to a similar New Jersey law. *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 369 (D.N.J. 2020). It concluded, because the Election Day Statutes "are silent on methods of determining the timeliness of ballots," New Jersey's method of determining whether ballots are cast on or before election day "is not preempted."

---

[3] The Supreme Court vacated *Bognet* as moot on appeal, not on the merits. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). It remains persuasive. *See Melot v. Bergami*, 970 F.3d 596, 599 n.11 (5th Cir. 2020).

*Id.* at 372.

Recently, a federal court in Illinois rejected a challenge to that state's 14-day ballot receipt deadline. *Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d 720, 736 (N.D. Ill. 2023). The court found the plaintiffs lacked standing, but also would have rejected the claim on the merits. *Id.* at 736-37.[4]

Thus, until now, courts have uniformly recognized that allowing absentee ballots to "be *mailed* by election day" and received by some specified date thereafter is a "policy choice" left to the states. *DNC v. Wisconsin State Legislature*, 141 S. Ct. 28, 34 (2020) (Kavanaugh, J., concurring); *cf. Harris v. Fla. Elections Canvassing Comm'n*, 122 F. Supp. 2d 1317, 1325 (N.D. Fla. 2000) (recognizing some states "allow post-election-day acceptance of absentee ballots" and concluding "Congress did not intend 3 U.S.C. § 1" to preclude such laws), *aff'd sub nom. Harris v. Fla. Elections Comm'n*, 235 F.3d 578 (11th Cir. 2000).

## III. The panel decision is at odds with the Election Day Statutes' plain text and ignores original public meaning.

The panel's conclusion that Mississippi's Ballot Receipt Deadline was

---

[4] The Seventh Circuit affirmed on standing and did not reach the merits. *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634 (7th Cir. 2024). Two similar cases were dismissed on standing. *Splonskowski v. White*, 714 F. Supp. 3d 1099, 1103 (D.N.D. 2024); *Republican Nat'l Comm. v. Burgess*, 2024 WL 3445254, at *1 (D. Nev. July 17, 2024), *appeal filed* No. 24-5071 (9th Cir. Aug. 19, 2024).

preempted finds no grounding in the text of the federal statutes or the original public meaning of the term "election."

As the panel acknowledged, contemporaneous dictionary definitions of "election" refer to the public's "choice" of a candidate for office. Op.7 n.5; *see also Foster v. Love*, 522 U.S. 67, 71 (1997); *Newberry v. United States*, 256 U.S. 232, 250 (1921). When the voter places a marked absentee ballot in the mail, they have made their "choice." Mississippi's Ballot Receipt Deadline is accordingly consistent with the contemporaneous and ordinary meaning of "election." The panel swept aside these definitions in a footnote because they "make no mention of deadlines or ballot receipt." Op.7 n.5. But that proves the point: the Elections Clause "gives states the responsibility for establishing the time, place, and manner of holding congressional elections, *unless Congress acts* to preempt state choices." *Bomer*, 199 F.3d at 775 (emphasis added). Congress, in setting the day of the "election," has not "acted" to preempt laws like Mississippi's because, as the panel acknowledged, the ordinary meaning of the term "election" does not encompass ballot receipt.

The Election Day Statutes do not answer every conceivable election administration question. The panel's assumption that they must is directly at odds with the Elections Clause and caselaw interpreting it. Congress's Elections Clause power preempts inconsistent state laws, "so far as it is exercised, and no farther[.]" *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) (quotation

omitted). Thus, Courts should "read Elections Clause legislation simply to mean what it says," *id.* at 15, with "the reasonable assumption" "that the statutory text accurately communicates the scope of Congress's pre-emptive intent," *id.* at 14. As the panel acknowledged, the Election Day Statutes say nothing about ballot receipt and thus do not preempt them.

## IV.    The panel decision misreads precedent.

In lieu of relying on the ordinary meaning of "election," the panel purported to distill "three definitional elements" to the term from the Supreme Court's decision in *Foster v. Love*: "(1) official action, (2) finality, and (3) consummation." Op.8. But *Foster* expressly declined to pare "the term 'election' … down to the definitional bone," limiting its holding to the narrow circumstances of that case. *See id.* at 72 & n.4 ("This case thus does not present the question whether a state must always employ the conventional mechanics of an election. We hold today only that if an election does take place, it may not be consummated prior to federal election day.").

Further, the panel's assertion that "receipt" is the only relevant "official action" is pulled from thin air, buttressed by outlandish hypotheticals imagining laws where the voter never relinquishes custody and control—all distinctly different from Mississippi's Ballot Receipt Deadline. *See* Op.8. The panel's claimed distinction between the "voter's selection" and the "public's election," *id.* at 9, is equally misplaced. The "public" or "polity," *id.*, is made up of individual voters. Under the

Ballot Receipt Deadline, every voter, comprising the "electorate as a whole," *id.*, must make their "final choice" on or before election day.[5] *Supra* at 9. The panel's sole basis for this invented distinction was a 1944 Montana Supreme Court decision that relied on *state* law. Op.10 (citing *Maddox v. Board of State Canvassers*, 149 P.2d 112 (Mont. 1944)). That court held, as a matter of *Montana* law, that "voting is done not merely by marking the ballot but by having it delivered to the election officials and deposited in the ballot box before the closing of the polls on election day." *Maddox*, 149 P.2d at 115. But even the Montana Supreme Court acknowledged that other states disagreed. New Hampshire, for example, provided that "the elector parts with all control over his ballot and *has in fact voted* when the ballot is marked and deposited in the mail addressed to the proper election officer." *Goodell v. Judith Basin Cnty.*, 224 P. 1110, 1113 (Mont. 1924) (citing *In re Opinion of the Justices*, 113 A. 293 (N.H. 1921)) (emphasis added). Likewise, Kansas provided that a "vote is cast when the ballot is marked … [and] placed in envelopes and mailed on election day." *Burke v. State Bd. of Canvassers*, 107 P.2d 773, 778 (Kan. 1940). In other

---

[5] The panel also relied on a Mississippi regulation to conclude that a ballot is not "final" until "absentee processing by the Resolution Board," when "the ballot is marked as accepted." Op.9-10 (quoting 01-17 Miss. Admin. Code R2.1). But under Mississippi law, "absentee processing by the Resolution Board" involves more than "receipt." It requires the board to, for example, examine the ballot envelope and match the signature. Miss. Stat. §23-15-639. The panel acknowledged such actions can and often do take place *after* election day. Op.11-12.

words, this was, and continues to be, a question of state law.[6]

Finally, the panel relied on *Bomer* to conclude that an election is "consummated" when all ballots are received. Op.11. If this reading were correct, a state could require voters to cast their ballots in person or by mail *before* election day, with no voting to be done on election day itself—so long as ballots are still being received on election day. *Bomer*, of course, means no such thing. The critical fact was that, while some voters could cast ballots early, the "final selection" was "not made before the federal election day" because voters were still *voting*. 199 F.3d at 776.[7] The same is true here.

## V.    The panel decision misconstrues the historical record.

The panel's decision is further flawed because it prohibits a longstanding practice Congress was well aware of. *See Bomer*, 199 F.3d at 776. As early as the Civil War, many states permitted soldiers to vote at polling sites in the field on election day and have the ballots "sent to the [soldier's] home precinct." Fortier & Ornstein, *supra*, at 500. This practice differs little from Mississippi's law—both require ballots to be *cast* by election day and *received* by officials by sometime after.

---

[6] Montana has since adopted a post-election receipt law for military-overseas voters—a law the panel's reasoning would find preempted. *See* Mont. Code §13-21-226(1).

[7] Notably, when *Bomer* was decided, Texas allowed timely-voted ballots from military and overseas voters to be counted if they arrived within two days of election day in federal elections. *See* Tex. Elec. Code §86.007(d)(3)(B) (2000).

The panel dismissed this history, writing that the "act of voting simultaneously involved receipt by election officials." Op.13. That is not accurate. While some states deputized military officers as election officials for field voting, others did *not*. Nevada, Rhode Island, and Pennsylvania allowed ballots to be placed under the charge of high commanding officers without any such designation and they were not *received* by election officials until later. 1866 Nev. Stat. 215; Benton, *Voting in the Field: A Forgotten Chapter of the Civil War* 171-73, 186-87, 190 (1915).

Absentee voting laws proliferated in the early twentieth century. Op.14-15. The panel claims those laws "universally foreclosed the possibility of accepting and counting ballots received *after* Election Day." *Id.* at 15. Wrong again. California required absentee ballots be received "within fourteen days" after election day, Cal. Political Code §1360 (James H. Derring ed. 1924), and Kansas required military ballots be returned "before the tenth day following [the] election." Kans. Rev. Stat. §25-1106 (Chester I. Long, et al., eds. 1923). New York and Minnesota had similar laws. *See* P. Orman Ray, *Military Absent-Voting Laws*, 12 Am. Pol. Sci. Rev. 461, 464, 468-69 (1918).

The panel's conclusion that, in 1938, only one state retained a post-election-day receipt deadline, Op.15, is contradicted by its cited source. *See* Paul G. Steinbicker, *Absentee Voting in the United States*, 32 Am. Pol. Sci. Rev. 898, 905-

06 (1938). It says that—among the 42 states with absentee voting laws—all but one had express "limits within which the ballot must be received . . . to be counted." *Id.* at 905. "These limits range[d] from six days before to six days after the date of the election." *Id.* at 905-06; *see also id.* at 905 n.38 (referring to "those *states* where the time limit extends beyond the day of election") (emphasis added). And just five years later—after the United States entered the Second World War—at least *nine* states had post-election-day deadlines. *See Bill to Amend the Act of September 16, 1942: Hearing On H.R. 3436 Before the H. Comm. On Election of President, Vice President, and Representatives in Congress*, 78th Cong. 100, 102 (Oct. 26, 1943) (identifying eight states); *see also* Neb. Rev. Stat. §32-838 (1943) (mail-in ballots could be received up to two days after election day).

Against this backdrop, Congress enacted the Soldier Voting Act, creating a "war ballot" for servicemembers. The Act required these ballots to be received by election day, Act of Sept. 16, 1942, ch. 561, 56 Stat. 753, §9, precisely because no existing federal law imposed such a requirement. And, in 1944, Congress amended the Act, requiring war ballots be received by election day "except that any extension of time for the receipt of absentee ballots permitted by State laws shall apply." 78 Pub. L. No. 277, 58 Stat. 136, §311(b)(3). That 1944 amendment was not an "exception" to the Election Day Statutes, but a clarification of the 1942 Act to explicitly incorporate already-existing extended receipt deadlines. Congress further

provided that soldiers could continue to vote absentee in accordance with state law, which included post-election receipt deadlines. *Id.* at §3.

The panel further ignored that, in a series of related statutes, Congress expressly recognized that state ballot receipt deadlines are a question of *state*, not federal law—except where Congress has explicitly said otherwise, as in the Soldier Voting Act. This includes UOCAVA, discussed *supra* at 3-4, which directed that its newly-created "Federal write-in absentee ballot" was to be "processed in the manner provided by law for absentee ballots in the State involved," including in accordance with "the deadline[s] for receipt of the State absentee ballot *under State law*." 52 U.S.C. §20303(b)(3) (emphasis added). It also includes the MOVE Act, *see supra* at 4 (requiring military officials ensure that overseas servicemembers' ballots for federal general elections are delivered to election officials "not later than *the date by which an absentee ballot must be received in order to be counted in the election*") (citations omitted).

Far from "congressional silence," this history demonstrates that in a series of enactments stretching back over a century, Congress has evidenced its clear understanding that post-election-day receipt does *not* conflict with the Election Day Statutes. The panel's contrary conclusion flips the preemption analysis on its head, effectively requiring that federal law expressly authorize any state law addressing election administration. This is wrong as a matter of law, and unless corrected will

disenfranchise lawful voters and bring into doubt election laws that states have duly enacted in full accordance with their power to do so under the Constitution.

## CONCLUSION

The Court should grant rehearing en banc, vacate the panel decision, and affirm the judgment of the district court.

Dated:  November 8, 2024

Respectfully submitted,

/s/ *Elisabeth C. Frost*

Robert B. McDuff
Paloma Wu
**MISSISSIPPI CENTER FOR
 JUSTICE**
210 E. Capitol Street, Suite 1800
Jackson, MS 39201
Telephone: (601) 259-8484
Facsimile: (601) 352-4769
rmcduff@mscenterforjustice.org
pwu@mscenterforjustice.org

Elisabeth C. Frost
Christopher D. Dodge
Richard A. Medina
Tina Meng Morrison
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
efrost@elias.law
cdodge@elias.law
rmedina@elias.law
tmengmorrison@elias.law

*Attorneys for Intervenor Defendants-
Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that counsel for all parties are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 8, 2024

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limits of Federal Rule of Appellate Procedure 35(b)(2) because it contains 3,896 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Times New Roman font.

Dated: November 8, 2024

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost