No. 24-60395

*In the*

# United States Court of Appeals
### for the
# Fifth Circuit

REPUBLICAN NATIONAL COMMITTEE, ET AL.,

*Plaintiffs-Appellants,*

– v. –

JUSTIN WETZEL ET AL.,
*Defendants-Appellees,*

VET VOICE FOUNDATION, MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS,

*Intervenor Defendants-Appellants*

LIBERTARIAN PARTY OF MISSISSIPPI,
*Plaintiff-Appellant*

– v. –

JUSTIN WETZEL, ET AL.,
*Defendants-Appellees*

On Appeal from the United States District Court
for the Southern District of Mississippi
Case Nos. 1:24-cv-25 and 1:24-cv-37 (Guirola, J.)

**BRIEF OF *AMICUS CURIAE* PUBLIC RIGHTS PROJECT
IN SUPPORT OF DEFENDANTS-APPELLEES AND
REHEARING EN BANC**

JONATHAN B. MILLER
  *Public Rights Project*
  490 43rd Street
  Unit #115
  Oakland, CA 94609
  (510) 738-6788

PAUL W. HUGHES
ANDREW A. LYONS-BERG
GRACE WALLACK
  *McDermott Will & Emery LLP*
  500 North Capitol Street NW
  Washington, DC 20001
  (202) 756-8000
  phughes@mwe.com

*Counsel for Public Rights Project as Amicus Curiae*

**SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS**

Undersigned counsel provides the following supplemental list of persons and entities that have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

***Amicus Curiae***: Public Rights Project is a 501(c)(3) nonprofit organization. It has no parent corporation and no publicly held corporation owns more than 10% of its stock.

**Counsel for *Amicus Curiae***: Paul W. Hughes, Andrew A. Lyons-Berg, Grace Wallack, and Jonathan B. Miller.

<u>/s/ *Paul W. Hughes*</u>

i

# TABLE OF CONTENTS

Supplemental Statement of Interested Persons ............................................. i
Table of Authorities ..................................................................................... ii
Statement of Interest of Amicus Curiae ...................................................... 1
Summary of Argument ................................................................................ 1
Argument ..................................................................................................... 3
I.    This Court Should Grant Rehearing En Banc. ................................... 3
    A.    The panel's decision outlaws ballot-receipt rules that have enormous practical benefits for election administrators and voters alike. .................................................................................. 3
    B.    The panel's reasoning casts doubt on a host of other election processing rules and practices that are traditionally within states' control. ............................................................................... 8
Conclusion ................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
  570 U.S. 1 (2013) ................................................................................ 8

*Democratic National Committee v. Wisconsin State Legislature*,
  141 S. Ct. 28 (2020) ..................................................................... 7, 12

*Harris v. Fla. Elections Canvassing Comm'n*,
  122 F. Supp. 2d 1317 (N.D. Fla. 2000) ............................................ 5

*Jones v. USPS*,
  488 F. Supp. 3d 103 (S.D.N.Y. 2020) .............................................. 5

*Millsaps v. Thompson*,
  259 F.3d 535 (6th Cir. 2001) ........................................................... 11

*Texas All. for Retired Americans v. Hughs*,
  976 F.3d 564 (5th Cir. 2020) ............................................................ 8

*United States v. Alabama*,
  857 F. Supp. 2d 1236 (M.D. Ala. 2012) ........................................... 4

**Statutes**

2 U.S.C.
  § 1 ..................................................................................................... 8
  § 7 ..................................................................................................... 8

3 U.S.C.
  § 1 ..................................................................................................... 8
  § 21 ................................................................................................... 8

52 U.S.C.
  § 20301 ............................................................................................. 4
  § 20302 ............................................................................................. 4
  § 20303 ............................................................................................. 4
  § 20304 ............................................................................................. 4
  § 20305 ............................................................................................. 4
  § 20306 ............................................................................................. 4
  § 20307 ............................................................................................. 4
  § 20308 ............................................................................................. 4
  § 20309 ............................................................................................. 4

**Statutes—continued**

52 U.S.C.
　§ 20310 .................................................................................................. 4

Miss. Code. Ann.
　§ 23-15-523 ........................................................................................ 11
　§ 23-15-573 ........................................................................................ 10
　§ 23-15-639 .......................................................................................... 5
　§ 23-15-639(1)(a) ................................................................................. 6
　§ 23-15-639(1)(b) ................................................................................. 6
　§ 23-15-639(1)(c) .............................................................................. 6, 9
　§ 23-15-645(1) ...................................................................................... 6
　§ 23-15-713 .......................................................................................... 5

**Other Authorities**

Council of State Governments, *Provisional Ballots 101* (last
　accessed Nov. 14, 2024) ........................................................................ 10

Mississippi Secretary of State, *County Election Handbook* (Rev.
　2024) ............................................................................................ 6, 7, 10

National Conference of State Legislatures, *Table 11: Receipt
　and Postmark Deadlines for Absentee/Mail Ballots* (June
　12, 2024) ................................................................................................. 9

Secretary of State, State of Mississippi, Press Release, *2024
　November General Election Absentee Report* (Nov. 4, 2024) ..................... 4

## STATEMENT OF INTEREST OF AMICUS CURIAE[1]

Public Rights Project (PRP) is a 501(c)(3) non-profit organization that works closely with local election officials across the country to support the administration of free and fair elections. PRP has partnered with and represented over 200 election officials in over 20 states. Local election officials, and through them PRP, possess unique insight into the challenges voters face and the administrative steps required to protect voters' access to the polls. These officials play a crucial role in conducting elections, including preparing and sorting different types of ballots, counting ballots, and resolving ballot discrepancies. These processes take time. Shortening the timeline in which election officials must perform these tasks would prove harmful to their work. To that end, PRP submits this brief to highlight the importance of ballot-receipt rules for voters and election administrators alike, explain how the panel's reasoning interferes with longstanding state practices necessary for conducting orderly elections, and urge the Court to grant a rehearing en banc.

## SUMMARY OF ARGUMENT

Mississippi, like seventeen other states and the District of Columbia, allows absentee ballots that are postmarked on or before Election Day to be

---

[1]  No party's counsel authored this brief in part or in whole, and no party or party's counsel or individual other than *amicus* contributed financially to the preparation or submission of this brief.

1

counted if they are received within a specified time period after the election. Ballot-receipt deadlines like Mississippi's have enormous practical benefits for local election administrators, state officials, and voters. Such rules increase voter participation and confidence in the election, blunt the impact of postal congestion, and ease the administrative burden for election officials on Election Day itself. These rules promote orderly and efficient elections, especially in states that have a high percentage of absentee voters.

The panel's decision invalidates these rules, to the detriment of Mississippi voters and election officials. Furthermore, the panel's atextual and ahistorical reasoning is not limited to ballot-receipt deadlines. By overreading the word "election" in Congress's election-day statutes, the panel casts doubt on routine ballot processing and counting activities that have long taken place after Election Day. In so doing, the panel treads on powers traditionally reserved to states to ensure the orderly, efficient, and fair management of elections. The panel's decision should not stand.

# ARGUMENT

## I. THIS COURT SHOULD GRANT REHEARING EN BANC.

### A. The panel's decision outlaws ballot-receipt rules that have enormous practical benefits for election administrators and voters alike.

Mississippi allows absentee ballots postmarked on or before Election Day to be counted if they are received within five business days of the election. Rules like Mississippi's are incredibly common—seventeen states and the District of Columbia have such rules on the books.[2] *See* Brief Amici Curiae of the District of Columbia et al. at 2, *RNC v. Wetzel*, No. 24-60395 (5th Cir. 2024).

Many states have had these rules in place for decades. And for good reason. They are consistent with federal law and serve significant practical purposes. Most notably, ballot-receipt rules of this type ease the burden on

---

[2] They are: Alaska (within 10 days if postmarked on or before Election Day); California (7 days); D.C. (7 days); Illinois (14 days); Kansas (3 days); Maryland (within 10 days by 10:00 am); Massachusetts (5:00pm on the third day); Nevada (5:00pm on the fourth day, and for ballots with unclear postmarks, 3 days); New Jersey (144 hours of the close of polls, 48 hours for mail-delivered ballots without postmarks); New York (7 days); Ohio (4 days); Oregon (7 days); Texas (5:00pm the day after the election); Utah (before noon on the day of the official canvass, which happens between 7 and 14 days after Election Day); Virgin Island (10 days); Virginia (noon on the third day after the election); Washington (the day before certification); West Virginia (before the canvass, which happens on the fifth day after the election). Another ten states have similar laws specifically for overseas voters, meaning 28 states and the District of Columbia have rules that allow for some timely-postmarked ballots to be received after election day.

voters caused by postal delays during election season. This is especially important when a state receives a large number of mail ballots, suffers a severe weather event, or faces any number of unexpected circumstances impacting the timely delivery of mail. Given the potential irregularity in mail delivery, especially in rural locations, these rules allow rural and overseas voters to be secure in their right to vote. Indeed, in the November 2024 General Election, over 200,000 Mississippians voted by mail absentee ballots.[3] If mail ballots needed to arrive by Election Day, these voters' right to have their vote counted would become more dependent on the postal service and could be interrupted by factors entirely outside of voters' control.

The benefit of ballot-receipt rules like Mississippi's is well illustrated by the Uniform and Overseas Citizens Absentee Voting Act (UOCAVA). 52 U.S.C. §§ 20301-20310. The Attorney General has regularly used his authority under UOCAVA to "vindicate the fundamental right of … military and overseas constituents to vote in federal elections." *United States v. Alabama*, 857 F. Supp. 2d 1236, 1242 (M.D. Ala. 2012). As courts have noted in UOCAVA cases, "Congress did not intend 3 U.S.C. § 1 to impose irrational

---

[3] Secretary of State, State of Mississippi, Press Release, *2024 November General Election Absentee Report* (Nov. 4, 2024), https://www.sos.ms.gov/press/2024-november-general-election-absentee-report-november-4. Many Mississippi counties exceeded their 2020 absentee voter numbers, illustrating that absentee voting is not a COVID-era anomaly.

4

scheduling rules on state and local canvassing officials, and certainly did not intend to disenfranchise voters whose only reason for not being able to have their ballots arrive by the close of election day is that they were serving their country overseas." *Harris v. Fla. Elections Canvassing Comm'n*, 122 F. Supp. 2d 1317, 1325 (N.D. Fla. 2000).

This logic applies with equal force to Mississippians who are entitled to vote by mail under state law. There is no indication Congress wanted voters who are unable to have their ballots arrive by the close of election day due to factors out of their control—like postal service delays or the weather—to be disenfranchised. *See Jones v. USPS*, 488 F. Supp. 3d 103, 110, 135 (S.D.N.Y. 2020) (granting injunction against the U.S. Postal Service to ensure timely delivery of absentee ballots). Mississippi recognized that extending the ballot-receipt deadline promotes voter participation and vindicates the right to vote, including for voters who are temporarily outside their county of residence on Election Day, those with disabilities, those over sixty-five, and those who are incarcerated for non-disenfranchising crimes. Miss. Code. Ann. § 23-15-713.

Requiring that all ballots be received by Election Day would increase the burden on election administrators on Election Day itself. In Mississippi, the resolution board may begin processing absentee ballots when the polls open. Miss. Code. Ann. § 23-15-639. Processing entails announcing the

name, address, and precinct inscribed on each envelope, and comparing the voter's signature on the absentee ballot with the signature on their application. *Id.* § 23-15-639(1)(a)-(b). If the resolution board finds the applicant is a registered and qualified voter, and if the ballot appears regular, it will be deposited in the ballot box and the voter's name will be entered in the pollbook. *Id.* § 23-15-639(1)(b).

Absentee ballots received before 7:00pm on the day before the election "shall be counted" when the polls close. *Id.* § 23-15-639(1)(c). Only after those ballots are processed and tallied may the resolution board process and tally absentee ballots received on or after Election Day. *Id.*; *see id.* § 23-15-645(1); Mississippi Secretary of State, *County Election Handbook* § XV (Rev. 2024). Processing day-of absentee ballots happens in addition to the array of other activities that occur after the polls close on election night, including counting election-day ballots and reconciling provisional ballots (done by poll managers), and manually reviewing all damaged, defective, blank, or overvoted ballots (done by the resolution board).

Requiring absentee ballots to be *received* on or before Election Day would necessarily increase the volume of absentee ballots that need to be *processed* on Election Day. This would further strain election administrators during the day of the election. It would also naturally increase voter

6

concern about meeting the deadline. Many absentee voters become concerned that their mail ballots have not been received, or will not be received, in time, and may decide to vote in person to ensure that their votes are counted. When this occurs, poll managers must check if the voter has requested an absentee ballot, and if so, they must cast their ballot provisionally (called an affidavit ballot in Mississippi). *See County Election Handbook* §§ IX, XIII. After the polls close, election administrators cross-check the affidavit pollbook against the mail-in pollbook to determine whether to accept the mail ballot (if one has been received) or the affidavit ballot for that voter—to ensure both that each vote is counted, and that no voter is able to vote twice.

Processing mail-in and affidavit ballots in this manner is a routine activity that all election officials undertake throughout the country. But an increase in affidavit ballots to be processed necessarily takes more time and steps than would otherwise occur. This in turn causes delays in tabulating votes and reporting precinct results, which frustrates the State's "interest in running an orderly, efficient election." *Democratic National Committee v. Wisconsin State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring).

### B. The panel's reasoning casts doubt on a host of other election processing rules and practices that are traditionally within states' control.

The Elections Clause is "a default provision; it invests the States with responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013); *see id.* at 41 (Alito, J., dissenting) ("[T]he Elections Clause's default rule helps to protect the States' authority to regulate state and local elections."). The panel decision gets this default rule backwards by inferring from silence that Congress intended to override states' traditional authority to legislate in this arena. In so doing, it casts doubt on the validity of a host of state election practices, risks significantly disrupting routine election administration, and undermines Mississippi's "significant interest in ensuring the proper and consistent running of its election machinery." *Texas All. for Retired Americans v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020).

It is beyond dispute that federal law governing elections does not expressly address ballot-receipt deadlines. *See* 2 U.S.C. §§ 1, 7; 3 U.S.C. §§ 1, 21. The panel's preemption analysis turned only on the meaning of the word 'election' within federal statutes setting "'the day for the election.'" Slip op. 7. That preemption analysis is wrong, for the reasons given by appellees and other *amici* in this case—PRP does not repeat those arguments here. More

8

fundamentally, the panel's reading of the statutory term "election day" does not have an obvious limiting principle. Although the panel attempts to cabin its decision to the receipt of ballots, it is unclear how the ministerial act of receiving a ballot is distinguishable from all the other ministerial acts election officials must take after Election Day to finalize the tally of timely cast votes.

For example, Mississippi, like many other states, requires election officials to process absentee ballots in a specific order. Absentee ballots received *before* Election Day are processed when the polls open. Miss. Code. Ann. § 23-15-639(1)(c). Absentee ballots received after that—including absentee ballots received *on Election Day*—are processed next. *Id*. The majority of states that have Election-Day ballot-receipt deadlines set the deadline quite late in the day—by 7:00pm, 8:00pm, or "by the close of polls."[4] It would be a near physical impossibility to process all absentee ballots received *on* election day between receipt and 12:01am the next day, on top of all the regular ballot processing that occurs on election night.[5] Yet, the panel opinion suggests that absentee ballots are not "received" and the "proverbial

---

[4] National Conference of State Legislatures, *Table 11: Receipt and Postmark Deadlines for Absentee/Mail Ballots* (June 12, 2024), https://www.ncsl.org/elections-and-campaigns/table-11-receipt-and-postmark-deadlines-for-absentee-mail-ballots.

[5] The fact that the panel's reasoning casts doubt on the practices of states that require absentee ballots to be received *by Election Day*—the rule the

9

ballot box" is not closed until absentee ballots are processed and accepted by the Resolution Board. Slip op. 9-10 (citing 01-17 Miss. Admin. Code R2.1). The panel's citation to the Mississippi regulations governing the Resolution Board—which routinely adjudicates, and thus "accepts," ballots *after* Election Day—cannot be squared with its conclusion that ballots are not final until they are received by election administrators.

Furthermore, *all* states take steps to process and finalize ballots after Election Day. The panel acknowledges this inescapable fact, (slip op. 9, 11-12), yet its decision to draw an arbitrary line at "receipt" of mail ballots does not withstand scrutiny. For example, Mississippi allows voters who cast provisional ballots on Election Day to cure those ballots within five days of the election. *See* Miss. Code. Ann. § 23-15-573; *County Elections Handbook* §§ XI.A-XI.B (allowing voters who do not have an acceptable form of voter ID, or who have a religious objection to the ID requirement, to provide the required information within five business days after the election). That is, affidavit ballots cast on election day cannot be accepted or rejected by election officials until five days after the election. Nearly all states have similar rules for provisional balloting.[6]

---

panel endorses—further underscores the absurdity of the panel's conclusion.

[6] Council of State Governments, *Provisional Ballots 101* (last accessed Nov. 14, 2024), perma.cc/BB6J-ZTV9.

The panel's conclusion that "election day" requires absentee ballots to be both cast and received on or before Election Day suggests that affidavit ballots must also be cast *and cured* on or before Election Day, otherwise "the proverbial ballot box" is not closed and the election is not "consummated." Slip op. 12. This conclusion also calls into question other routine post-election ballot processing activities, including the resolution board's review of damaged, defective, under- or over-voted ballots, and blank ballots to determine voters' intent, which almost always occurs after Election Day. Miss. Code. Ann. § 23-15-523. The panel's decision also casts doubt on the ability of Mississippi election officials to resolve provisional and mail absentee ballots (as described above, *supra* 5-7), and—in the states that allow it, for voters to cure defective mail ballots—after Election Day.

In short, the panel decision—if allowed to stand—would upend voting processes across the country and interfere with essential post-election activities necessary to the routine administration of elections. The panel's "unnatural and stilted … focus on the single act of receiving a ballot" overlooks the myriad official actions needed to confirm the results of the election that extend "well beyond federal election day." *Millsaps v. Thompson*, 259 F.3d 535, 546 (6th Cir. 2001). Indeed, it is "one thing for state legislatures to alter their own election rules" and "quite another thing" for federal courts to "swoop in and alter carefully considered and democratically enacted state

11

election rules." *Wisconsin State Legislature,* 141 S. Ct. at 31. The panel opinion does just that, and for that reason rehearing is warranted.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing en banc.

Dated: November 15, 2024

JONATHAN B. MILLER
  *Public Rights Project*
  *490 43rd Street*
  *Unit #115*
  *Oakland, CA 94609*
  *(510) 738-6788*

Respectfully submitted,

/s/ *Paul W. Hughes*
PAUL W. HUGHES
ANDREW A. LYONS-BERG
GRACE WALLACK
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*
  *phughes@mwe.com*

*Counsel for Amicus Curiae Public Rights Project*

12

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains 2,550 words, excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 356 and is set in New Century Schoolbook LT Std font in a size equivalent to 14 points or larger.

Dated: November 15, 2024            /s/ Paul W. Hughes

# CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I electronically filed the foregoing brief with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

Dated: November 15, 2024            /s/ Paul W. Hughes