No. 24-60395

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

───────────────────────

REPUBLICAN NATIONAL COMMITTEE; MISSISSIPPI REPUBLICAN PARTY; JAMES PERRY; MATTHEW LAMB,

*Plaintiffs–Appellants*,

v.

JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; TONI JO DIAZ, in their official capacities as members of the Harrison County Election Commission; BECKY PAYNE, in their official capacities as members of the Harrison County Election Commission; BARBARA KIMBALL, in their official capacities as members of the Harrison County Election Commission; CHRISTENE BRICE, in their official capacities as members of the Harrison County Election Commission; CAROLYN HANDLER, in their official capacities as members of the Harrison County Election Commission; MICHAEL WATSON, in his official capacity as the Secretary of State of Mississippi,

*Defendants–Appellees*,

VET VOICE FOUNDATION; MISSISSIPPI ALLIANCE OF RETIRED AMERICANS,

*Intervenor Defendants–Appellees*.

───────────────────────

LIBERTARIAN PARTY OF MISSISSIPPI,

*Plaintiff–Appellant,*

v.

JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; TONI JO DIAZ, in their official capacities as members of the Harrison County Election Commission; BECKY PAYNE, in their official capacities as members of the Harrison County Election Commission; BARBARA KIMBALL, in their official capacities as members of the Harrison County Election Commission; CHRISTENE BRICE, in their official capacities as members of the

Harrison County Election Commission; Carolyn Handler, in their official capacities as members of the Harrison County Election Commission; Michael Watson, in his official capacity as the Secretary of State of Mississippi,

*Defendants–Appellees.*

———————————

On Appeal from the United States District Court for the Southern District of Mississippi, Southern Division, Case Nos. 1:24-cv-25 and 1:24-cv-37
The Honorable Judge Louis Guirola, Jr.

———————————

**APPELLANT LIBERTARIAN PARTY OF MISSISSIPPI'S RESPONSE IN OPPOSITION TO VET VOICE FOUNDATION'S AND MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS'S PETITION FOR REHEARING EN BANC**

———————————

T. Russell Nobile
 *Counsel of Record*
**Judicial Watch, Inc**
P.O. Box 6592
Gulfport, MS 39506
(202) 527-9866

Eric W. Lee
Robert D. Popper
**Judicial Watch, Inc**
425 Third Street SW, Suite 800
Washington, D.C. 20024

December 2, 2024

*Counsel for Plaintiff-Appellant
Libertarian Party of Mississippi*

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

Case No. No. 24-60395

Undersigned counsel certifies that the following listed persons have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiffs-Appellants Libertarian Party of Mississippi, Republican National Committee, the Mississippi Republican Party, James Perry, and Matthew Lamb.

2. Defendants-Appellees Justin Wetzel, Toni Jo Diaz, Becky Payne, Barbara Kimball, Christene Brice, and Carolyn Handler, in their official capacities as members of the Harrison County Election Commission, and Secretary of State Michael Watson, in his official capacity.

3. Intervenor-Defendants Vet Voice Foundation and Mississippi Alliance for Retired Americans.

4. Amicus Curiae Disability Rights Mississippi, League of Women Voters of Mississippi, Democratic National Committee, Public Interest Legal Foundation Inc., and the United States of America,

5. T. Russell Nobile, Robert Popper, Eric W. Lee, Spencer Mark Ritchie, Thomas McCarthey, Conor Woodfin, Gilbert C. Dickey, Tim C. Holleman, Scott G. Stewart, Justin Lee Matheny, Rex M. Shannon, III, Wilson

i

D. Minor, Christopher D. Dodge, Elizabeth C. Frost, Michael Brandon Jones, Paloma Wu, Richard Alexander Medina, Robert B. McDuff, Tina Meng Morrison, Greta K. Martin, Joshua F. Tom, David W. Baria, Donald Verrilli, Jr., Ginger D. Anders, J. Kain Day, Joseph M. Nixon, Jacob van Leer, David Rosenborough, Sophia Lin Lakin, Neil Steiner, Christopher Merken, Julia Markham-Cameron, Angela Liu, Greta K. Martin, Kristen Clarke, R. Tamar Hagler, Timothy F. Mellet, Janie Allison Sitton, Sejal Jhaveri, Todd W. Gee, Angela Givens Williams, Mitzi Dease Page, Noah B. Bokat-Lidell, and Elizabeth Parr Heckler.

6. Judicial Watch, Inc., Forman Watkins & Krutz, L.L.P., Consovoy McCarthy, P.L.L.C., Boyce Holleman & Associates, P.A., Mississippi's Attorney General's Office, Elias Law Group, LLP, Mississippi Center for Justice, Munger, Tolles, & Olson, LLP, Cosmich, Simmons, Brown, LLC, American Civil Liberties Union Foundation of Mississippi, and Deschert LLP,

December 2, 2024                    *s/ Russ Nobile*
                                   T. Russell Nobile

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES ..........................................................i

TABLE OF CONTENTS ......................................................................... iii

TABLE OF AUTHORITIES ....................................................................iv

INTRODUCTION ..................................................................................1

BACKGROUND AND COURSE OF PROCEEDINGS ........................................2

ARGUMENT ......................................................................................4

I.    Vet Voice Argues the Wrong Preemption Standard ....................................6

II.   The Panel's Opinion Does Not "Break" With Other Courts..........................8

III.  Vet Voice, Not The Panel, Misconstrues The Historical Record.................12

IV.   The Panel's Opinion Does Not Conflict With UOCAVA ...........................14

CONCLUSION ..................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Abbott v. Biden*, 70 F.4th 817 (5th Cir. 2023) ........................................13

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).....................3, 5, 7

*Baker v. Carr*, 369 U.S. 186 (1962)..........................................................14

*Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) ........................................9

*Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336 (3d Cir. 2020)................9, 10

*Bost v. Ill. State Bd. of Elections*, 114 F.4th 634 (2024) ................................. 11-12

*Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d. 720 (N.D. Ill. 2023)...............11

*Democratic Nat'l Comm. v. Wisconsin State Legislature*,
    141 S. Ct. 28 (2020)........................................................................11

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ...........................14

*Donald J. Trump for President, Inc. v. Way*,
    492 F. Supp. 3d 354 (D.N.J. 2020)..................................................10

*Ex parte Siebold*, 100 U.S. 371 (1879) ....................................................3

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016)............................................1, 6, 7, 8

*Foster v. Love*, 522 U.S. 67 (1997).........................................................1, 2, 5, 7, 14

*Harris v. Florida Elections Comm'n*, 235 F.3d 578 (11th Cir. 2000).....................11

*Harris v. Florida Elections Canvassing Comm'n*,
    122 F. Supp. 2d 1317 (N.D. Fla. 2000) ...........................................11

*Hotze v. Hud*speth, 16 F.4th 1121 (5th Cir. 2021)......................................9

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ...........................14

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (2020) ......................................10

*Smiley v. Holm*, 285 U.S. 355 (1932) ........................................................................2

*U.S. Term Limits v. Thornton*, 514 U.S. 779 (1995)...................................................2

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, §2, cl. 1 ....................................................................................1, 2

U.S. Const. art. I, § 8, cl. 15 ...................................................................................13

U.S. Const. art. I, § 8, cl. 16 ...................................................................................13

U.S. Const. art. II, § 1 cl. 4 ...................................................................................1, 2

**FEDERAL STATUTES**

2 U.S.C. § 1 ...............................................................................................................3

2 U.S.C. § 2a ...........................................................................................................13

2 U.S.C. § 7 ...............................................................................................................3

3 U.S.C. § 1 ...............................................................................................................3

3 U.S.C. § 21 .............................................................................................................3

52 U.S.C. § 20301 .....................................................................................................2

52 U.S.C. § 20307 ...................................................................................................15

52 U.S.C. § 21082 ...................................................................................................14

**STATE STATUTES**

Miss. Code Ann. § 23-15-637.....................................................................................3

**FEDERAL RULES**

Fed. R. App. P. 35 ................................................................................4, 5

**OTHER**

John C. Fortier & Norman J. Ornstein, Symposium,
    *Election Reform: The Absentee Ballot and the Secret Ballot:*
    *Challenges For Election Reform*, 36 U. Mich. J.L. Reform 483 (2003).......14

Josiah Henry Benton, VOTING IN THE FIELD (1915) ................................................12

# INTRODUCTION

Almost 180 years ago Congress exercised its "Time, Place, and Manner" authority under U.S. Const. art. I, § 4 cl. 1 ("Elections Clause") and art. II, § 1 cl. 4 ("Electors Clause") to establish the time for conducting federal elections ("Election Day"). The U.S. Supreme Court has since held that the term "election" in the Election Day statutes "plainly refer[s] to the combined actions of voters *and* officials meant to make a final selection of an officeholder." *Foster v. Love*, 522 U.S. 67, 71 (1997) (emphasis added). Applying *Foster*, the panel in this case determined that the actions of *officials* meant to make the final selection of an officeholder must include the *receipt* of ballots. "[I]t should be … obvious that a ballot is 'cast' when the State takes custody of it." Dkt. 191-1 at 9.

This reasoned decision is challenged by Intervenor Defendants-Appellees Vet Voice Foundation and Mississippi Alliance for Retired Americans ("Vet Voice"). Vet Voice claims it is at odds with statutory interpretation and precedent. Vet Voice is wrong. To begin with, Vet Voice applies the wrong preemption standard. Contrary to Vet Voice's argument, "[t]he Elections Clause does not require Congress to expressly foreclose" state modification of federal election statutes before such state laws are preempted. *Fish v. Kobach*, 840 F.3d 710, 729 (10th Cir. 2016). Nor does the panel's decision conflict with existing circuit precedent so as to warrant en banc review. The key "conflicting" decision on which Vet Voice relies was vacated as

moot by the Supreme Court and, more to the point, concerned plaintiffs who *waived* the argument both sets of Plaintiffs made here. The other decisions Vet Voice cites are easily distinguished. Further, Vet Voice has badly misconstrued the historical record and relied on irrelevant federal statutes such as the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. § 20301 *et seq*., which do not change this outcome.

Accordingly, Vet Voice's petition for rehearing en banc should be denied.

## BACKGROUND AND COURSE OF PROCEEDINGS

The United States Congress is authorized under the Elections Clause and the Electors Clause to establish the time for conducting federal elections. Though the Elections Clause provides state Legislatures the power to regulate the times, places, and manner of holding Congressional elections, that power ceases when Congress "at any time by Law make[s] or alter[s] such Regulations[.]" *Id.*; *see also Smiley v. Holm*, 285 U.S. 355, 366 (1932). The Electors Clause similarly assigned Congress the power to determine the "Time of chusing" presidential and vice-presidential electors, which date shall be "uniform." These two clauses give "Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States." *Foster*, 522 U.S. at 69 (citing *U.S. Term Limits v. Thornton*, 514 U.S. 779, 832-833 (1995)). Federal election laws "are paramount to [election laws] made by the State legislature; and if they conflict therewith, the latter,

so far as the conflict extends, ceases to be operative." *Ex parte Siebold*, 100 U.S. 371, 384 (1879); *see generally Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 7-18 (2013).

Congress exercised this authority in 1845 when it enacted the first of a trio of statutes that established a uniform national Election Day. *See* 2 U.S.C. §§ 1, 7; 3 U.S.C. § 1. In December 2022, Congress enacted the Electoral Count Reform Act, which included a provision supplementing 3 U.S.C. § 1. 3 U.S.C. § 21.

In response to the COVID-19 pandemic, Mississippi's legislature amended Miss. Code Ann. § 23-15-637(1)(a) (the "Receipt Deadline") to allow absentee ballots to be counted if received up to five business days after Election Day. *See* Dkt. 191 at 4.

The Mississippi Republican Party along with associated plaintiffs, and the Libertarian Party of Mississippi filed separate suits against Mississippi state and county election officials, seeking to enjoin Mississippi's Receipt Deadline prior to the 2024 federal elections. ROA.23, 1281-94. Vet Voice Foundation and Mississippi Alliance for Retired Americans were granted leave to intervene as Defendants. Dkt. 191 at 5; and ROA.307. The suits involved "functionally identical" claims and were consolidated. *Id.* and Dkt. 191 at 5.

Plaintiffs alleged that federal Election Day statutes preempted Mississippi's Receipt Deadline. All parties agreed there were no questions of material fact and

filed cross-motions for summary judgment. Dkt. 191 at 5. After finding that Plain-

tiffs had standing and, thus, that it had jurisdiction, the district court granted the

original Defendants' and Vet Voice's motions for summary judgment on the merits.

ROA.1160-83.

Plaintiffs appealed. On October 24, 2024, a panel of this Court reversed. Dkt.

191.

Vet Voice filed a petition for rehearing en banc. Dkt. 202. The Court has

requested that Plaintiffs-Appellants file a response. Dkt. 212.

## ARGUMENT

"An en banc hearing or rehearing is not favored and ordinarily will not be

ordered unless: (1) en banc consideration is necessary to secure or maintain uni-

formity of the court's decisions; or (2) the proceeding involves a question of excep-

tional importance." Fed. R. App. P. 35(a). The Fifth Circuit's local rules further

"[c]aution" that the "rigid standards" of Rule 35(a) are justified in part by the fact

that "each request for en banc consideration must be studied by every active judge

of the court and is a serious call on limited judicial resources." 5th Cir. R. 35.1. The

Court's Internal Operating Procedures call a petition for rehearing en banc "an ex-

traordinary procedure" to "bring to the attention of the entire court an error of ex-

ceptional public importance or an opinion that directly conflicts with prior Supreme

Court, Fifth Circuit or state law precedent." 5th Cir. R. 35 IOP. In particular, the

IOP notes that "alleged errors in the facts of the case (including sufficiency of the evidence) or in the application of correct precedent to the facts of the case are generally matters for panel rehearing but not for rehearing en banc." *Id*.

Vet Voice proceeds here under Rule 35(a)(2), arguing that the question in this case is one of exceptional importance. Vet Voice's petition falls well short of meeting this high threshold so as to justify en banc review. Indeed, Vet Voice's petition, *not* the panel, ignored "ordinary tools" of statutory interpretation, repeatedly "misinterpreted precedent, misconstrued relevant history, and contrived "Congress's explicit and favorable acknowledgment of" state laws allowing late-arriving ballots. Dkt. 202 at 20.

This case involved a straightforward question of electoral preemption under the Elections and Electors Clause. Vet Voice wrongly contends the Election Day statutes are "silen[t]" with respect ballot receipt and, therefore, cannot be preemptive. But no court has ever held that federal election laws must include explicit prohibitions to be preemptive. If that were indeed a requirement (it is not), then the outcomes of both *Inter Tribal*, 570 U.S. at 4 and *Foster*, 522 U.S. at 68, likely would have been different since neither involved an express statutory conflict. Vet Voice seeks rehearing en banc in hopes that the full Court is willing to parse the Election Day statutes for gaps or silences into which Mississippi's Receipt Deadline might

fit, an analytical framework that the Tenth Circuit has already rejected, based on the holding in *Inter Tribal*. *See Fish*, 840 F.3d at 729.

While it claims the "panel's opinion breaks with other courts," Vet Voice does not identify any conflict with courts of appeals rulings that might render the question "exceptionally important." Dkt. 202 at 20. And there is none. No other court of appeals has ever addressed the original public meaning of "the election" as used in the Election Day statutes, or whether a Receipt Deadline like Mississippi's is preempted under the Elections and Electors Clauses.

Vet Voice's historical analysis is flawed in two ways. First, it is skewed by Vet Voice's unwillingness to acknowledge the legal and factual differences between Civil War field voting practices and Mississippi's current absentee practices. Instead, Vet Voice maintains that Civil War practices "differ[] little from Mississippi's law." Dkt. 202 at 26. The panel rightly rejected this analysis because, in short, it is not credible. Second, Vet Voice's analysis rests on blurring the line between historical support for absentee voting and historical support for the authority of states to extend the election past Election Day. Dkt. 191 at 16. The panel rightly acknowledged and rejected this line blurring. *Id.*

## I. Vet Voice Argues the Wrong Preemption Standard

Vet Voice argues a preemption standard it wishes for rather than the one established by controlling authority. But this petition for rehearing is not the proper

vehicle to seek to modify the Court's electoral preemption standards, and the panel's decision not to adopt Vet Voice's preferred standard does not create a question of exceptional importance.

The fact that Election Day statutes "say nothing about ballot receipt" or are otherwise "silent[]" does not determine whether Mississippi's Receipt Deadline is preempted. Dkt. 202 at 19 and 24. While the National Voter Registration Act "say[s] nothing" about documentary proof of citizenship ("DPOC") requirements, that did not stop the Supreme Court in *Inter Tribal* from finding that Arizona's DPOC statute was preempted. *Inter Tribal*, 570 U.S. at 15. In the same way, even though the Election Day statutes "say nothing" about jungle primaries, a unanimous Supreme Court did not hesitate to strike down that longstanding electoral practice in Louisiana as inconsistent with the federal Election Day statutes. *Foster*, 522 U.S. at 74.

It is Vet Voice, not the panel, who seeks to "flip[] the preemption analysis on its head." Dkt. 202 at 29. Vet Voice's preferred preemption standard has long been rejected by the Supreme Court, and by other courts of appeals, most recently by the Tenth Circuit. Interpreting *Foster*, that court held that federal courts "do not finely parse the federal statute for gaps or silences into which state regulation might fit." *Fish*, 840 F.3d at 729. Federal courts "refrain from doing so because were states able to build on or fill gaps or silences in federal election statutes … they could

7

fundamentally alter the structure and effect of those statutes." *Id.* "If Congress intended to permit states to so alter or modify federal election statutes … it would have so indicated. The Elections Clause does not require Congress to expressly foreclose such modifications by the states." *Id.*

The panel's opinion does not, as Vet Voice exaggerates, "effectively require[] that federal law expressly authorize any state law addressing election administration." Dkt. 202 at 29. No reasonable reading of the panel's opinion would lead to this conclusion. If, tomorrow, Mississippi's legislature voted to ban voter ID, to authorize early voting, or to adopt same-day registration, the panel's opinion would have no effect on those laws. Such laws most assuredly "address" election administration, but the panel's opinion in no way suggests such practices are preempted because they are not "expressly authorized" under federal law.

Vet Voice's misreading of the panel's holding does not change the fact that federal statutes do not have to expressly prohibit a state time, place, and manner regulation in order to preempt such a regulation under the Elections Clause. Inflammatory claims about its future impact on other state laws do not create a question of exceptional importance.

## II. The Panel's Opinion Does Not "Break" With Other Courts.

Vet Voice's petition claims that the panel's opinion breaks with "*every* court to address the merits of the question," which suggests that there is ample authority

discussing electoral preemption or defining "the election" under the Election Day statutes. Dkt. 202 at 20-22. The actual cases it cites, however, tell a different story. None defines "the election" or discusses electoral preemption of state statutes, save one. Rather, Vet Voice simply believes the panel failed to adhere to its preferred cases and interpretations. But the state cases, vacated circuit court cases, and preliminary district court rulings Vet Voice cites fail to show a conflict with authority from other circuits, let alone justify en banc review under the prevailing standards.

It is hard to see how Vet Voice can claim that the panel erred by "break[ing]" with the vacated opinion in *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336 (3d Cir. 2020), *cert. granted, vacated as moot sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021). Aside from dubious reliability of a vacated opinion,[1] and the fact that the decision primarily concerned standing, "the nub of Plaintiffs' argument" in *Bognet* was "that the Pennsylvania Supreme Court intruded on the authority delegated to the Pennsylvania General Assembly under Articles I and II of the U.S. Constitution to regulate federal elections." *Id*. at 351. Thus, *Bognet* did not involve federal preemption of a state statute. *See id*. (noting that the case "does not implicate … the Tenth Amendment, or even Article VI's Supremacy Clause").

---

[1]     "Vacated authority, of course, is no authority at all." *Hotze v. Hud*speth, 16 F.4th 1121, 1126 (5th Cir. 2021) (Oldham, J., dissenting) (discussing *Bognet*)

But there is an even stronger reason to reject the application of *Bognet* here: The plaintiffs in that case specifically disclaimed the central merits question that is at the heart of this case. The Third Circuit noted that the plaintiffs "concede" that the state legislature "could have enacted exactly the same Deadline Extension" imposed by the Pennsylvania Supreme Court. 980 F.3d. at 355. Rather, those plaintiffs' claims rested "on their allegation that federal law required a different state organ" than the state supreme court "to issue the Deadline Extension." *Id*. at 356. No reading of *Bognet* would suggest that the panel's opinion here "broke" from that case. But even if it arguably had done so, such a break would not create a question of exceptional importance requiring en banc review, requiring all active members of this Court to reevaluate whether the panel's opinion can be reconciled with a vacated standing case from a different circuit involving different federal claims.

*Donald J. Trump for President, Inc. v. Way* held in relevant part that movants seeking preliminary relief had not shown that they were likely to succeed in their challenge to a state law allowing mail-in ballots to be received up to two days after Election Day. 492 F. Supp. 3d 354, 372-73 (D.N.J. 2020) ("*Way I*"). Plaintiff submits the case was wrongly decided at least in regard to that issue. But in any event *Way I* involved a preliminary ruling by a district court, which is not controlling here. *Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (2020) involved questions of state law and says nothing at all about federal preemption.

Vet Voice's citations to *Democratic Nat'l Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28 (2020) and *Harris v. Florida Elections Comm'n*, 235 F.3d 578, 579 (11th Cir. 2000), aff'g *Harris v. Florida Elections Canvassing Comm'n*, 122 F. Supp. 2d 1317, 1324–25 (N.D. Fla. 2000) are equally unavailing.  Rather than speaking to electoral preemption under Articles I and II, both involve questions about the federal *judiciary's* remedial authority under Article III.  As the panel correctly noted in regard to Defendants' and Amicis' arguments about UOCAVA, "[t]hat *federal* officials, pursuant to *federal* law, may take enforcement actions in which *federal* courts grant ballot-receipt extensions says nothing about Mississippi's capacity to do so." Dkt. 191 at 19.  This case is about the state authority—not the federal judiciary's—to extend ballot receipt deadlines past Election Day.

Vet Voice's reliance on *Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d. 720 (N.D. Ill. 2023) is also misplaced.  While the district court there briefly discussed electoral preemption, it did not attempt to address the original public meaning of the term "the election."  Moreover, its discussion appeared near the end of its opinion *after* it already ruled that it lacked jurisdiction.  *Id.* at 736-37.  When the Seventh Circuit recently affirmed the dismissal, moreover, it ruled entirely on the basis that the court lacked jurisdiction. *Bost v. Ill. State Bd. of Elections*, 114 F.4th

634 (2024), *petition for cert. filed*, (Nov. 19, 2024) (No. 24-568).  The panel's deci-sion that it would not follow dicta in a jurisdictional ruling by a district court does not create a question of exceptional importance warranting rehearing en banc.

### III.    Vet Voice, Not the Panel, Misconstrues the Historical Record.

It is difficult to know how to respond to Vet Voice's incredible contention that Civil War-era voting practices "differ[] little from Mississippi's law."  Dkt. 202 at 26.  Civil War practices such as proxy voting and field voting are categorically dif-ferent.  *See* Josiah Henry Benton, VOTING IN THE FIELD, 15-17, and 43 (1915), avail-able at https://bit.ly/3P4OQaq.  Those practices emphasized Election Day receipt by election officials.  *Id.* (describing the practice of establishing poll sites in the field during that were operated by servicemen deputized under oath as state election clerks, constables, or supervisors).  "Civil officers," and *not* just anyone, could "open a poll or present the box to the soldier for his vote" and return it to their home coun-ties.  *Id.* at 17.

Vet Voice does not cite anything in the record (nor is there any authority that suggests) that today's postal carriers are factually or legally analogous to state dep-utized militia officers serving *ex officio* as state election constables, clerks, or super-visors.  Certainly, the legal relationship between postal carriers and the state execu-tive branch is not analogous to that between state executives and state militias.  *See*

U.S. Const. art. I, § 8, cls. 15, 16; *see generally Abbott v. Biden*, 70 F.4th 817, 828 (5th Cir. 2023).

Beyond failing to acknowledge the legal and factual differences between Civil War field voting practices and Mississippi's absentee laws, Vet Voice attempts to conflate the "considerable historical support for absentee voting" with the question of "whether States can extend the election past the uniform, singular Election Day required by federal law." Dkt. 191 at 16. The panel's opinion expressly distinguished these questions and found that the former "says nothing" about the latter. *Id.* That is not "dismissing history," as Vet Voice contends, but rather a rejection of Vet Voice's attempt to blur lines between the history of absentee voting and the very limited history of state post-Election Day receipt practices. *Id.* and Dkt. 202 at 27.

To be sure, some states during the 20th century briefly experimented with and then abandoned late-arriving ballot regulations. But those exceptions were very few and mostly short lived, as the panel noted. Dkt. 191 at 15. For context, Congress set membership in the House of Representatives at 435 seats in 1929. 2 U.S.C. § 2a. Plaintiff estimates there have been more than 15,000 congressional elections during

35 election cycles from 1930 through the start of the 21st century. Vet Voice's historical record has only identified a small number of federal elections during this period in which states allowed late arriving ballots.[2]

The panel's opinion rightly acknowledged these state experiments, but noted that they were the exception and, in any event, did not speak to the "public meaning of the Election-Day statutes." Dkt. 191 at 16 (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022); *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 250–51 (2022)).[3]

## IV.   The Panel's Opinion Does Not Conflict With UOCAVA

Vet Voice's petition opens and closes with UOCAVA arguments rejected by the panel. Dkt. 191 at 16-20; Dkt. 202 at 17-18 and 29. Vet Voice contends that certain UOCAVA provisions are proof that Congress "expressly recognized" and

---

[2]     Vet Voice's other historical arguments generally center on what can be described as Congressional tolerance. Dkt. 202 at 29. Congressional tolerance should not be interpreted as acquiescence and must be kept in context. Congress "tolerated" Louisiana's open primary for nearly 20 years and Tennessee's malapportionment for 94 years before the Supreme Court put an end to those practices. *See Foster*, 522 U.S. at 70; and *Baker v. Carr*, 369 U.S. 186 (1962). Mississippi's Receipt Deadline was only enacted in 2020.

[3]     Indeed, the practice of accepting late-arriving ballots is a recent phenomenon that was promoted after the passage of the Help America Vote Act of 2002, which required states to adopt provisional ballot practices for federal elections. 52 U.S.C. § 21082(a); s*ee generally* John C. Fortier & Norman J. Ornstein, Symposium, *Election Reform: The Absentee Ballot and the Secret Ballot: Challenges For Election Reform*, 36 U. Mich. J.L. Reform 483, 484 (2003) (explaining how after the 2000 presidential election many voting advocates sought to discourage poll site voting in favor of voting by mail).

had a "clear understanding" that post-Election Day receipt "does not conflict" with the Election Day statutes.  *Id.* at 29.  The panel correctly found that these provisions are "silent on ballot receipt and Election Day timing." Dkt. 191 at 17.

Congressional silence does not overcome the text of federal statutes. Dkt. 191 at 17.  Nothing in the panel's opinion limits enforcement of UOCAVA going forward or otherwise risks disenfranchising overseas voters.  "That *federal* officials, pursuant to *federal* law, may take enforcement actions in which *federal* courts grant ballot-receipt extensions says nothing about Mississippi's capacity to do so." *Id.* at 19 (citing 52 U.S.C. § 20307(a)); *id.* at 22.

## CONCLUSION

This Court should deny the petition for rehearing en banc.

December 2, 2024

_____*s/ Russ Nobile*_____
T. Russell Nobile (MS Bar 100682)
JUDICIAL WATCH, INC.
Post Office Box 6592
Gulfport, Mississippi 39506
(202) 527-9866
Rnobile@judicialwatch.org

Robert D. Popper
Eric W. Lee
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
(202) 646-5172
Rpopper@judicialwatch.org

## <u>CERTIFICATE OF SERVICE</u>

I, T. Russell Nobile, certify that I electronically filed this brief with the Clerk of the Court, using the electronic filing system, which sent notification of such filing to all counsel of record.

December 2, 2024                                 *s/ Russ Nobile*
                                               T. Russell Nobile

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limits of Federal Rule of Appellate Procedure 35(e) because it contains 3,506 words, excluding parts exempt by Federal Rule of Appellate Procedure 32(f) This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a) because it is prepared in a proportionally spaced, serifed typeface using Microsoft Word for Mac, Version 16.91, in 14-point Times New Roman font.

December 2, 2024                              *s/ Russ Nobile*
                                             T. Russell Nobile