No. 24-60395

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

REPUBLICAN NATIONAL COMMITTEE, MISSISSIPPI REPUBLICAN PARTY, JAMES PERRY, MATTHEW LAMB,

*Plaintiffs-Appellants,*

v.

JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; TONI JO DIAZ, in their official capacities as members of the Harrison County Election Commission; BECKY PAYNE, in their official capacities as members of the Harrison County Election Commission; BARBARA KIMBALL, in their official capacities as members of the Harrison County Election Commission; CHRISTENE BRICE, in their official capacities as members of the Harrison County Election Commission; CAROLYN HANDLER, in their official capacities as members of the Harrison County Election Commission; MICHAEL WATSON, in his official capacity as the Secretary of State of Mississippi,

*Defendants-Appellees,*

VET VOICE FOUNDATION, MISSISSIPPI ALLIANCE FOR RETIRED AMERICANS,

*Intervenor Defendants-Appellees.*

LIBERTARIAN PARTY OF MISSISSIPPI,

*Plaintiff-Appellant,*

v.

JUSTIN WETZEL, in his official capacity as the clerk and registrar of the Circuit Court of Harrison County; TONI JO DIAZ in their official capacities as members of the Harrison County Election Commission; BECKY PAYNE, in their official capacities as members of the Harrison County Election Commission; BARBARA KIMBALL, in their official capacities as members of the Harrison County Election Commission; CRISTENE BRICE, in their official capacities as members of the Harrison County Election Commission; CAROLYN HANDLER, in their official capacities as members of the Harrison County Election Commission; MICHAEL WATSON, in his official capacity as the Secretary of State of Mississippi,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Mississippi
Nos. 1:24-cv-25, 1:24-cv-37 (Guirola, J.)

## RESPONSE TO INTERVENORS'
## PETITION FOR REHEARING EN BANC

Spencer M. Ritchie
Forman Watkins & Krutz LLP
210 East Capitol Street, Ste. 2200
Jackson, MS 39201
(601) 960-3172
spencer.ritchie@formanwatkins.com

Thomas R. McCarthy
Gilbert C. Dickey
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

Dated: December 2, 2024

*Counsel for Appellants Republican National Committee,*
*Mississippi Republican Party, James Perry, and Matthew Lamb*

# CERTIFICATE OF INTERESTED PERSONS

No. 24-60395, *Republican National Committee v. Wetzel*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court can evaluate possible disqualification or recusal:

| <u>Plaintiffs (No. 1:24-cv-25)</u>: | <u>Counsel for Plaintiffs (No. 1:24-cv-25)</u>: |
|---|---|
| Republican National Committee, Mississippi Republican Party, James Perry, Matthew Lamb | Spencer M. Ritchie<br>Forman Watkins & Krutz, LLP<br>210 E. Capitol St., Suite 2200<br>Jackson, MS 39225-2608<br>(601) 960-3172<br>spencer.ritchie@formanwatkins.com<br><br>Thomas R. McCarthy<br>Gilbert C. Dickey<br>Conor D. Woodfin<br>Consovoy McCarthy, PLLC<br>1600 Wilson Blvd., Suite 700<br>Arlington, VA 22209<br>(703) 243-9423<br>tom@consovoymccarthy.com<br>gilbert@consovoymccarthy.com<br>conor@consovoymccarthy.com |
| <u>Plaintiff (No. 1:24-cv-37)</u>: | <u>Counsel for Plaintiff (No. 1:24-cv-37)</u>: |
| Libertarian Party of Mississippi | T. Russell Nobile<br>Judicial Watch, Inc.<br>Post Office Box 6592<br>Gulfport, MS 39506<br>(202) 527-9866<br>rnobile@judicialwatch.org |

**State Defendant**:

Secretary of State Michael Watson

**Counsel for State Defendant**:

Scott G. Stewart, *Solicitor General*
Rex M. Shannon, III
Wilson D. Minor
Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-6279
scott.stewart@ago.ms.gov
rex.shannon@ago.ms.gov
wilson.minor@ago.ms.gov

**County Defendants**:

Justin Wetzel, Toni Jo Diaz, Becky
Payne, Barbara Kimball, Christene
Brice, Carolyn Handler

**Counsel for County Defendants**:

Tim C. Holleman
Boyce Holleman and Associates, P.A.
1720 23rd Avenue
Gulfport, MS 39501
(228) 863-3142
tim@boyceholleman.com

**Intervenors**:

Vet Voice Foundation, Mississippi
Alliance for Retired Americans

**Counsel for Intervenors**:

Christopher D. Dodge
Elisabeth C. Frost
Michael Brandon Jones
Richard Alexander Medina
Tina Meng Morrison
Elias Law Group, LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 987-4928
cdodge@elias.law
efrost@elias.law
mbj@michaelbrandonjones.com
rmedina@elias.law
tmengmorrison@elias.law

Paloma Wu
Mississippi Center for Justice
210 E. Capitol Street, Suite 1800
Jackson, MS 39201
601-352-2269
pwu@mscenterforjustice.org

Robert B. McDuff
The Law Office of Robert McDuff
767 North Congress Street
Jackson, MS 39202
(601) 969-0802
RBM@McDuffLaw.com

| <u>Amici</u>: | <u>Counsel for Amici</u>: |
|---|---|

Disability Rights Mississippi, League of Women Voters of Mississippi

Angela M. Liu
Dechert, LLP
35 W. Wacker Drive, Suite 3400
Chicago, IL 60601
312-646-5816
angela.liu@dechert.com

Julia Markham-Cameron
Neil Steiner
Dechert, LLP
1095 6th Ave
New York, NY 10036
917-388-8304
julia.markham-cameron@dechert.com
neil.steiner@dechert.com

Christopher J. R. Merken
Dechert, LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
215-994-2380
christopher.merken@dechert.com

Davin M. Rosborough
Sophia Lin Lakin
ACLU Foundation, Inc.
125 Broad Street, 18th Floor
New York, NY 10004
212-549-2613
drosborough@aclu.org
slakin@aclu.org

Greta K. Martin
Disability Rights Mississippi
5 Old River Place, Suite 101
Jackson, MS 39202
601-968-0600
gmartin@drms.ms
Jacob Matthew van Leer
ACLU Foundation, Inc.
915 15th Street, NW, 6th Floor
Washington, DC 20005
603-277-0314
jvanleer@aclu.org

Joshua F. Tom
ACLU of Mississippi
P. O. Box 2242
101 S. Congress Street
Jackson, MS 39225-2242
(601) 354-3408
jtom@aclu-ms.org

Public Interest Legal Foundation

Joseph M. Nixon
Public Interest Legal Foundation,
Incorporated
107 S. West Street
Alexandria, VA 22314
713-550-7535
joe@nixonlawtx.com

Public Rights Project

Paul W. Hughes
Andrew A. Lyons-Berg
Grace Wallack
McDermott Will & Emery, L.L.P.
500 N. Capitol Street, N.W.
Washington, DC 20001
202-756-8988
phughes@mwe.com

Jonathan B. Miller
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788

Democratic National Committee

David W. Baria
Cosmich, Simmons & Brown, PLLC
P. O. Box 22626
One Eastover Center
100 Vision Drive, Suite 200
Jackson, MS 39225-2626
601-863-2100
david.baria@cs-law.com

The District of Columbia

Brian L. Schwalb
Caroline S. Van Zile
Ashwin P. Phatak
Sean Frazzette
Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 727-6609
caroline.vanzile@dc.gov

The State of California

Rob Bonta
Attorney General
State of California
1300 I Street
Sacramento, CA 95814

The State of Colorado

Philip J. Weiser
Attorney General
State of Colorado
1300 Broadway, 10th Floor
Denver, CO 80203

The State of Connecticut

William Tong
Attorney General
State of Connecticut
165 Capitol Avenue
Hartford, CT 06106

The State of Delaware

Kathleen Jennings
Attorney General
State of Delaware
820 N. French Street
Wilmington, DE 19801

The State of Hawaii

Anne E. Lopez
Attorney General
State of Hawaii
425 Queen Street
Honolulu, HI 96813

The State of Illinois

Kwame Raoul
Attorney General
State of Illinois
100 West Randolph Street
Chicago, IL 60601

The State of Maryland

Anthony G. Brown
Attorney General
State of Maryland
200 Saint Paul Place
Baltimore, MD 21202

The State of Massachusetts

Andrea Joy Campbell
Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

The State of Michigan

Dana Nessel
Attorney General
State of Michigan
P.O. Box 30212
Lansing, MI 48909

The State of Minnesota

Keith Ellison
Attorney General
State of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr.
Boulevard
St. Paul, MN 55155

The State of Nevada

Aaron D. Ford
Attorney General
State of Nevada
100 North Carson Street
Carson City, NV 89701

The State of New Jersey

Matthew J. Platkin
Attorney General
State of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

The State of New York

Letitia James
Attorney General
State of New York
28 Liberty Street
New York, NY 10005

The State of Oregon

Ellen F. Rosenblum
Attorney General
State of Oregon
1162 Court Street NE
Salem, OR 97301

| | |
|---|---|
| The State of Pennsylvania | Michelle A. Henry<br>Attorney General<br>Commonwealth of Pennsylvania<br>Strawberry Square, 16th Floor<br>Harrisburg, PA 17120 |
| The State of Rhode Island | Peter F. Neronha<br>Attorney General<br>State of Rhode Island<br>150 South Main Street<br>Providence, RI 02903 |
| The State of Vermont | Charity R. Clark<br>Attorney General<br>State of Vermont<br>109 State Street<br>Montpelier, VT 05609 |
| The State of Washington | Robert W. Ferguson<br>Attorney General<br>State of Washington<br>P.O. Box 40100<br>Olympia, WA 98504 |
| United States of America | Kristen Clarke, *Assistant Attorney General*<br>R. Tamar Hagler<br>Timothy F. Mellett<br>Janie Allison Sitton<br>Sejal Jhaveri<br>U.S. Department of Justice<br>950 Pennsylvania Ave NW<br>Washington, DC 20530<br>(202) 532-5610<br>Sejal.Jhaveri@usdoj.gov |

Todd W. Gee, *United States Attorney*
Angela Givens Williams
Mitzi Dease Paige
Assistant U.S. Attorneys
501 E. Court St. Suite 4.430
Jackson, MS  39201
(601) 965-4480
Angela.Williams3@usdoj.gov
Mitzi.Paige@usdoj.gov


*/s/ Thomas R. McCarthy*
Thomas R. McCarthy
*Counsel for Republican Party Appellants*

# TABLE OF CONTENTS

Certificate of Interested Persons ........................................................................... C-1

Table of Authorities ................................................................................................... ii

Introduction ................................................................................................................. 1

Background ................................................................................................................... 2

Argument ...................................................................................................................... 3

    I.     The panel did not create a conflict with any other circuit court. .................... 4

    II.    The panel's opinion creates no conflict with controlling law that warrants en banc review. ........................................................................ 6

        A.    The panel's opinion is consistent with governing precedent. .............. 6

        B.    The panel properly construed the relevant statutory text. ................... 8

        C.    The panel correctly interpreted history. .................................................. 10

Conclusion ................................................................................................................. 14

Certificate of Compliance ....................................................................................... 15

Certificate of Service ............................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Bognet v. Sec'y Commonwealth of Pa.*,
  980 F.3d 336 (3d Cir. 2020) ............................................................ 4, 5

*Bost v. Ill. State Bd. of Elections*,
  114 F.4th 634 (7th Cir. 2024) ............................................................. 5

*Bost v. Ill. State Bd. of Elections*,
  684 F. Supp. 3d 720 (N.D. Ill. 2023) ................................................. 5

*Chisom v. Louisiana ex rel. Landry*,
  116 F.4th 309 (5th Cir. 2024) ............................................................. 3

*Democratic Nat'l Comm. v. Wis. State Legislature*,
  141 S. Ct. 28 (2020) ............................................................................ 1

*Donald J. Trump for President, Inc. v. Way*,
  492 F. Supp. 3d 354 (D.N.J. 2020) ..................................................... 5

*Foster v. Love*,
  522 U.S. 67 (1997) .............................................................. 3, 6, 7, 13

*Gonzalez v. S. Pac. Transp. Co.*,
  773 F.2d 637 (5th Cir. 1985) .......................... 2, 3, 5, 6, 7, 9, 10, 12

*Groves v. Ring Screw Works*,
  498 U.S. 168 (1990) ............................................................................ 5

*Hotze v. Hudspeth*,
  16 F.4th 1121 (5th Cir. 2021) ............................................................. 5

*Jarkesy v. SEC*,
  51 F.4th 644 (5th Cir. 2022) ............................................................... 4

*Love v. Foster*,
  100 F.3d 413 (5th Cir. 1996) .............................................................. 4

*Maddox v. Board of State Canvassers*,
  149 P.2d 112 (Mont. 1944) .............................................................. 6, 7

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) ......................................................................... 11, 12

*O'Connor v. Donaldson*,
  422 U.S. 563 (1975) ............................................................................ 4

*Pa. Democratic Party v. Boockvar*,
  238 A.3d 345 (Pa. 2020) ..................................................................... 4

*Petteway v. Galveston Cnty.*,
    111 F.4th 596 (5th Cir. 2024) ............................................................... 3

*RNC v. Burgess*,
    2024 WL 3445254 (D. Nev. July 17, 2024) ........................................ 5

*Splonskowski v. White*,
    714 F. Supp. 3d 1099 (D.N.D. 2024) .................................................. 5

*United States v. Hernandez-Gonzalez*,
    405 F.3d 260 (5th Cir. 2005) ..............................................................13

*United States v. Nixon*,
    827 F.2d 1019 (5th Cir. 1987) ............................................................ 6

*Voting Integrity Project, Inc. v. Bomer*,
    199 F.3d 773 (5th Cir. 2000) ...................................................... 6, 7, 8

*Wis. Cent. Ltd. v. United States*,
    585 U.S. 274 (2018) ............................................................................12

## Statutes

1866 Nev. Stat. 210 ..................................................................... 10, 11

2 U.S.C. §1 ...................................................................................... 2

2 U.S.C. §7 ............................................................................. 2, 8, 13

2024 Miss. Laws H.B. 1406 ............................................................. 2

3 U.S.C. §1 ............................................................................... 2, 7, 8

Act of Jan. 23, 1845, ch. 1, 5 Stat. 721 ..........................................11

Miss. Code §23-15-637 ..................................................................... 2

## Other Authorities

Josiah Henry Benton, *Voting in the Field: A Forgotten Chapter of the Civil War* 189-90
    (1915) ............................................................................... 10, 11

Paul G. Steinbicker, *Absentee Voting in the United States*, 32 Am. Pol. Sci. Rev. 898
    (1938) .......................................................................................11

## Rules

5th Cir. R. 40 I.O.P. ...................................................................5, 6

Fed. R. App. P. 40 ........................................................................... 5

**Constitutional Provisions**

U.S. Const. art. I, §4 ........................................................................................... 2

U.S. Const. art. II, §1 ....................................................................................... 2, 7

# INTRODUCTION

This is not one of the rare cases that warrants en banc review. To begin with, the unanimous panel correctly held that the "day for the election" designated by Congress is "the day by which ballots must be both *cast* by voters and *received* by state officials" and thus the State of Mississippi's statute, which "allows ballot receipt up to five days after the federal election day," is "preempted by federal law." Op. 2-3. These conclusions follow from the relevant "[t]ext, precedent, and historical practice." Op. 3.

But two intervenors—Vet Voice Foundation and the Mississippi Alliance for Retired Americans—petition for rehearing en banc of the panel's ruling. The Mississippi Secretary of State—the party whose law is preempted by the panel's judgment—did not join them. For good reason: intervenors' petition is riddled with inaccuracies about the panel opinion, the law, and the facts. In both the first and last sentences of their argument, intervenors claim that the panel's decision "will disenfranchise lawful voters." Pet. 2, 16. But the panel's decision couldn't possibly disenfranchise voters. For one, the "decision says nothing about remedies" and, instead, remands to the district court "for further proceedings to fashion appropriate relief." Op. 21. For another, deadlines don't disenfranchise anyone because, "'[t]o state the obvious, a State cannot conduct an election without deadlines.'" Op. 22 (quoting *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 33 (2020) (Kavanaugh, J., concurring)).

Intervenors' arguments don't warrant en banc review. The petition does not "bring to the attention of the entire Court" an "error of exceptional public importance," nor does it show that the panel's opinion "directly conflicts with prior Supreme Court"

or "Fifth Circuit" precedent. *Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 641 (5th Cir. 1985) (quoting 5th Cir. R. 35 I.O.P. (amended)).[1] The panel's decision creates no "precedent-setting error." *Id.* To the contrary, the decision does not conflict with any precedent of this Circuit or any other circuit. Indeed, intervenors' best case for a conflict is a vacated Third Circuit decision resolved on standing grounds—not the merits addressed here. The Court should deny the petition.

## BACKGROUND

Over a century ago, Congress established a uniform day for congressional and presidential elections.  2 U.S.C. §§1, 7; 3 U.S.C. §1. Exercising its power to set the time, place, and manner of federal elections, *see* U.S. Const. art. I, §4; art. II, §1, Congress set the "Tuesday next after the 1st Monday in November" as "the day for the election." 2 U.S.C. §7; *see also id.* §1; 3 U.S.C. §1. After the COVID-19 pandemic, Mississippi enacted a law requiring ballots to be counted so long as they are "postmarked on or before the date of the election and received by the registrar no more than five (5) business days after the election." 2024 Miss. Laws H.B. 1406, §12; Miss. Code §23-15-637(1)(a).

The Republican National Committee, Mississippi Republican Party, James Perry, and Matthew Lamb sued to halt Mississippi's Secretary of State and county election commissioners from enforcing the post-election ballot deadline. They argued that Mississippi's post-election deadline for mail ballots is preempted by federal election-day statutes. 3 U.S.C. §1; 2 U.S.C. §§1, 7. The Libertarian Party of Mississippi filed a similar

---

[1] Effective December 1, 2024, FRAP 35 (En Banc Determination) and FRAP 40 (Petition for Panel Rehearing) were consolidated into a single rule: FRAP 40. Yesterday, this Court published a new local rule reflecting the change. *See* 5th Cir. New Local Rule 40 (Dec. 1, 2024).

lawsuit about a week later. Vet Voice Foundation and the Mississippi Alliance for Retired Americans intervened in support of the State. The district court consolidated the cases and granted summary judgment in favor of defendants. Plaintiffs timely appealed to this Court.

A panel of this Court held unanimously that "[b]ecause Mississippi's statute allows ballot receipt up to five days after the federal election day, it is preempted by federal law." Op. 2-3. The Court explained that *Foster v. Love*, 522 U.S. 67 (1997), confirmed that an "election" requires "(1) official action, (2) finality, and (3) consummation," and that each element indicates that ballots must be received by election officials on or before election day. Op. 8, 8-12. The panel explained that historical practice reinforces that understanding of "election." Op. 12. Intervenors— but not the state defendants—ask this Court to review that decision en banc.

## ARGUMENT

En banc review is not warranted unless intervenors identify "a precedent-setting error of exceptional public importance." *Gonzalez*, 773 F.2d at 641 (quoting 5th Cir. R. 35 I.O.P. (amended)). Intervenors argue that "[t]he voting rights of [their] service members and the balance of state and federal power over elections are matters of exceptional importance." Pet. 3. But a case is not en banc–worthy merely because it involves voting rights or federalism. *Cf. Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 320 (5th Cir. 2024) (en banc) (considering whether an entire State's electoral maps remain subject to a decades-old consent decree); *Petteway v. Galveston Cnty.*, 111 F.4th 596, 599 (5th Cir. 2024) (en banc) (considering whether to overrule circuit precedent governing legislative redistricting). Even where a case is of sufficient public importance

to later warrant Supreme Court review, a petition for rehearing en banc was properly denied by this Court because no precedent-setting error was found by a majority of judges in the panel's decision. *E.g.*, *Love v. Foster*, 100 F.3d 413, 413-14 (5th Cir. 1996); *Jarkesy v. SEC*, 51 F.4th 644, 644-45 (5th Cir. 2022).

This preemption case concerns only whether federal law requires ballots to be delivered to election officials by election day. Intervenors have failed to identify any conflict between the panel's decision and binding precedent from any court. The last time this Court held that a State's "election plan … conflicts with 2 U.S.C. §§1 and 7 and is invalid," the Court denied rehearing en banc. *Love*, 100 F.3d at 413-14. It should this time, too.

## I.    The panel did not create a conflict with any other circuit court.

Intervenors don't name a single circuit precedent that conflicts with the panel's opinion. Intervenors first cite a single footnote from a Pennsylvania Supreme Court case. Pet. 7 (citing *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 368 n.23 (Pa. 2020)). But that case concerned a court-ordered change to ballot deadlines under the Pennsylvania Constitution's "Free and Equal Elections Clause." *Boockvar*, 238 A.3d at 369-71. The court's brief acknowledgement of the election-day statutes did not consider or resolve the arguments made in this case. *See id.* at 368 & n.23.

Intervenors next cite a Third Circuit opinion that was vacated by the Supreme Court. Pet. 7 (citing *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 353-54 (3d Cir. 2020), *cert. granted, judgment vacated*, 141 S. Ct. 2508 (2021)). That case is the *only* court of appeals decision that intervenors claim conflicts with the panel's decision. But the Supreme Court's vacatur of the Third Circuit's judgment "deprives that court's opinion

of precedential effect." *O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975). "Vacated authority, of course, is no authority at all." *Hotze v. Hudspeth*, 16 F.4th 1121, 1126 (5th Cir. 2021) (Oldham, J., dissenting) (declining to follow *Bognet*'s standing analysis). Intervenors thus cannot rely on *Bognet* to allege that the panel committed a "precedent-setting error." *Gonzalez*, 773 F.2d at 641. And even if *Bognet* were still good law in the Third Circuit, the portion that intervenors rely on is *dicta* because the case was decided on standing grounds. *Bognet*, 980 F.3d at 348.

The only cases intervenors have left are district court opinions. *See* Pet. 7, 8 & n.4 (citing *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 369 (D.N.J. 2020); *Splonskowski v. White*, 714 F. Supp. 3d 1099, 1103 (D.N.D. 2024); *RNC v. Burgess*, 2024 WL 3445254, at *1 (D. Nev. July 17, 2024), *appeal filed* No. 24-5071 (9th Cir. Aug. 19, 2024); *Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d 720, 736 (N.D. Ill. 2023), *aff'd*, 114 F.4th 634 (7th Cir. 2024)). Most of those cases were decided on standing grounds, as intervenors admit. *See* Pet. 8 & n.4.

Regardless, disagreement between a Fifth Circuit panel and out-of-circuit district courts is hardly "extraordinary." 5th Cir. R. 40 I.O.P. Where there is "a square conflict in the Circuits, it might [be] appropriate" to rehear the case "en banc." *Groves v. Ring Screw Works*, 498 U.S. 168, 172 n.8 (1990); *see also* Fed. R. App. P. 40(b)(2). But under FRAP 40, conflict with district court decisions does not warrant en banc review. After all, this Court reviews—and often reverses—district court judgments. It would make no sense for this Court to reconsider a holding just because some district courts didn't agree.

**II.    The panel's opinion creates no conflict with controlling law that warrants en banc review.**

**A.    The panel's opinion is consistent with governing precedent.**

En banc rehearing is unwarranted because "[t]he panel opinion is not in direct conflict with any prior Supreme Court or Fifth Circuit precedent." *United States v. Nixon*, 827 F.2d 1019, 1023 (5th Cir. 1987). Indeed, intervenors fail to cite a single Supreme Court or Fifth Circuit precedent that they believe "directly conflicts with" the panel's decision. *Gonzalez*, 773 F.2d at 641 (cleaned up). Intervenors argue that the panel read too much into three cases: the Supreme Court's decision in *Foster v. Love*, 522 U.S. 67 (1997), a Montana Supreme Court decision, *Maddox v. Board of State Canvassers*, 149 P.2d 112 (Mont. 1944), and this Court's decision in *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773 (5th Cir. 2000). Pet. 10-12. But intervenors nowhere point to a Supreme Court or Fifth Circuit precedent that "conflict[s]" with the panel's decision. *Nixon*, 827 F.2d at 1023. And "en banc consideration is limited to cases" where a panel opinion "directly conflicts with prior Supreme Court or Fifth Circuit precedent." *Id.* (cleaned up). To the extent intervenors suggest that the panel applied "correct precedent" incorrectly, that argument is simply "not" enough to justify "rehearing en banc," even if it were correct. 5th Cir. R. 40 I.O.P.

Instead of calling attention to a conflict between the panel's reasoning and prior Supreme Court or Fifth Circuit precedent, intervenors take the panel to task for relying on Supreme Court, state supreme court, and Fifth Circuit decisions as "guides," Op. 7, to establish the "definitional elements" of the term "election" in the federal election day statutes, Pet. 10. Intervenors argue that the Supreme Court in *Foster* "limit[ed] its holding to the narrow circumstances of that case." Pet. 10. But the Supreme Court

didn't "limit its holding" at all. The Court merely observed that the term "election" is rich in meaning and contains "room for argument about just what may constitute the final act of selection within the meaning of the law." *Foster*, 522 U.S. at 72. In pronouncing a rule that "it is enough to resolve this case," the Court was careful not to resolve all questions concerning the "mechanics of an election." *Id.* at 72 & n.4. The panel here looked to *Foster*'s reasoning to "guide" its understanding of the meaning of "election." Op. 7. Indeed, this Court has previously held that *Foster* is "instructive on the meaning" of the term "'election'" in the federal election day statutes. *Bomer*, 199 F.3d at 775. And where there was "room for argument about just what may constitute the final act of selection within the meaning of the law," *Foster*, 522 U.S. at 72, Plaintiffs supplied text, history, and other precedent to make that argument. The panel opinion thus doesn't directly conflict with any reasonable reading of *Foster*. *See Gonzalez*, 773 F.2d at 641.

Next, intervenors argue that the panel wrongly relied on the Montana Supreme Court's *Maddox* decision as persuasive authority because intervenors believe that decision was premised "on *state* law." Pet. 11. The panel already addressed those concerns. *See* Op. 10. Just as "Montana state law defined casting a ballot as 'depositing [] the ballot in the custody of the election officials,'" Mississippi law "provides that a ballot is 'final' when accepted by election officials." Op. 10 (quoting *Maddox*, 149 P.2d at 116). Montana's post-election ballot deadline violated the federal election-day statutes for that reason. *See Maddox*, 149 P.2d at 114-15 (citing 3 U.S.C. §1; U.S. Const. art. II, §1). And Mississippi's post-election ballot deadline violates the federal election-day statutes for the same reason. Op. 10. Even if intervenors were right that the panel

7

misunderstood *Maddox*, misinterpreting a state court decision is not a valid basis for en banc rehearing of this entire case.

Finally, intervenors argue that the panel misread this Court's decision in *Bomer*. Pet. 12. In *Bomer*, this Court held that an early voting law in Texas was not preempted by federal law because the election results would not be "decided or 'consummated' before federal election day." 199 F.3d at 776. The panel here reasoned that *Bomer* supports the conclusion that "the election is consummated when the last ballot is received and the ballot box is closed." Op. 11. Intervenors argue that *Bomer* "means no such thing." Pet. 12. They claim that "the critical fact" in *Bomer* was that "the final selection was not made before the federal election day." *Id.* (cleaned up). That fact is relevant for a case about voting *before* election day. But this case is about voting *after* election day. Intervenors fail to refute the panel's reasoning that "the election concludes when the final ballots are received and the *electorate*, not the individual *selector*, has chosen." Op. 9. The "'polity,' is made up of individual voters," Pet. 10, but "*[r]eceipt* of the last ballot" is what "constitutes consummation of the election," Op. 12, just as *Bomer* recognizes, 199 F.3d at 775-76.

## B.    The panel properly construed the relevant statutory text.

The panel held that the "day for the election" that Congress designated in 2 U.S.C. §7 and 3 U.S.C. §1 is "the day by which ballots must be both *cast* by voters and *received* by state officials." Op. 2. Intervenors believe the panel got the meaning of the statutory term "election" wrong. Pet. 8-9. In support of their position, intervenors point to a dictionary and to congressional silence. Pet. 8-9. Both arguments are flawed. And neither a dictionary nor silence warrant the full Court's review.

First, intervenors assert that the panel ignored a few "contemporaneous dictionary definitions of 'election'" that intervenors believe support their position. Pet. 9. But the panel didn't ignore the dictionaries. It expressly considered them. Op. 7 n.5. It considered other contemporaneous dictionary definitions too, ultimately concluding that dictionaries don't "shed light on Congress's use of the word 'election' in the nineteenth century." Op. 7 n.5. Intervenors don't engage with that analysis. Even if they had, any dispute over the panel's factual conclusions concerning what nineteenth-century dictionaries had to say about the meaning of the word "election" is not a sufficient reason for en banc review. "Alleged errors" in "the facts of the case" are typically "not" matters for "rehearing en banc." *Gonzalez*, 773 F.2d at 641 (cleaned up).

Intervenors next argue from congressional silence. They argue that "the Election Day Statutes say nothing about ballot receipt." Pet. 9-10. But intervenors ignore the panel's careful analysis that "this is not a congressional-silence case." Op. 17. Rather, the panel cited four different examples of federal statutes that "show" Congress "knew how to authorize post-Election Day voting when it wanted to do so." Op. 18-20. The panel then highlighted other federal laws that "*do* require States to receive all ballots by Election Day." Op. 17. While Plaintiffs cited "federal statutes that conflict with Mississippi's state law," the "intervenors" had "only congressional silence." Op. 17. And congressional silence, "no matter how 'clanging,' cannot override the words" of the federal election-day statutes. Op. 17 (cleaned up). Intervenors' failure to refute this reasoning confirms that the panel's opinion is the best interpretation of federal law. At bottom, this case turned on the meaning of "election day." And intervenors'

dictionaries and congressional-silence arguments don't show that "election day" means anything but the day that ballots are received by election officials.

### C.  The panel correctly interpreted history.

Finally, intervenors argue that the panel "misconstrues" history. Pet. 12. Even if they could prove that the panel got a particular historical fact wrong, "[a]lleged errors" in "the facts of the case" are generally "not" matters for "rehearing en banc." *Gonzalez*, 773 F.2d at 641 (cleaned up). Instead, intervenors must show that the panel's opinion creates a "a precedent-setting error of exceptional public importance" or "directly conflicts with prior Supreme Court or Fifth Circuit precedent." *Id.* They have failed to do so. Intervenors' quibbles with the panel's historical references do not justify the "extraordinary procedure" of en banc review. *Id.*

In any event, intervenors misread the historical record. To start, they don't dispute that before Congress enacted the first election-day statute in 1845, "voting occurred contemporaneously with receipt of votes." Op. 12. Giving up half the historical record, Intervenors focus only on post-enactment history, beginning with the Civil War. But during that period, and for several decades after, "official receipt [of ballots] marked the end of voting." Op. 14. Intervenors raise three exceptions: Nevada, Rhode Island, and Pennsylvania. Each State's practice confirms that the panel opinion is correct.

Start with Nevada. The statute intervenors cite required that "reception of votes" from soldiers in the field take place "[b]etween the hour of eight o'clock a.m., and sunset, on the day of election." 1866 Nev. Stat. 210, 215. Intervenors insist that ballots "were not received by election officials until later." Pet. 12-13. But they overlook that

the statute designated the three highest ranking officers to serve as election officials: they took "charge and direction" of the election, controlled the ballot box, counted the votes, checked them against the list of electors, and certified the final lists with an affidavit. 1866 Nev. Stat. at 215-216.

Pennsylvania was similar. The commanding officer acted as an election judge and the first lieutenant as an election inspector, counting and certifying the votes in field. *See* Josiah Henry Benton, *Voting in the Field: A Forgotten Chapter of the Civil War* 189-90 (1915).

Rhode Island implemented proxy voting instead of field voting, but it required ballots to be returned "to the Secretary of State within the time prescribed by law for counting votes." *Id.* at 187 (quoting R.I. Acts and Resolves, May Session, 1864, p.4). Intervenors provide no evidence that Rhode Island counted votes received after election day. These three States confirm that the panel was correct in concluding that "election day" was the day that ballots were received by election officials. Op. 13.

Intervenors offer no other contemporaneous historical evidence that the original public meaning of the "day for the election" was anything other than ballot-receipt day. Op. 16. The earliest post-election receipt deadline that they identify is Kansas's 1923 law permitting military ballots to be received ten days after the election. Pet. 13. This alleged deviation from the universal practice is 75 years removed from Congress establishing the uniform election day. *See* Act of Jan. 23, 1845, ch. 1, 5 Stat. 721. When "earlier generations addressed the societal problem, but did so through materially different means," it is "evidence that a modern regulation" likely doesn't comport with

the original meaning of the text. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 26-27 (2022).

Intervenors next allege that the panel misquoted one of the sources it relied on to conclude that "in 1938, only one state retained a post-election day receipt deadline." Pet. 13. But the article the panel referenced cites only one State—California—that had a post-election-day receipt deadline. Op. 15 (citing Paul G. Steinbicker, *Absentee Voting in the United States*, 32 AM. POL. SCI. REV. 898, 905 n.38 (1938)). Intervenors have not shown that the panel was wrong that no other State had a post-election-day receipt deadline at that time. Even if they had, a trivial factual error concerning one source does not warrant en banc review of the panel's entire opinion. *Gonzalez*, 773 F.2d at 641.

Intervenors' remaining historical arguments rely on a handful of laws passed nearly 100 years after Congress established the uniform day for the election. Pet. 14 (referencing a 1943 analysis of state statutes). But those "few 'late-in-time outliers'" that intervenors cite "say nothing about the original public meaning of the Election-Day statutes." Op. 16 (citing *Bruen*, 597 U.S. at 70). Indeed, intervenors have done nothing to disprove the panel's core historical observation that "at the time Congress established a uniform election day in 1845 and 1872, voting and ballot receipt necessarily occurred at the same time." Op. 13. Since this Court must "interpret the words" of a federal statute "consistent with their ordinary meaning at the time Congress enacted the statute," *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018), the panel correctly analyzed history and en banc review is not warranted.

*         *         *

12

Left with no argument the panel didn't already address, intervenors try to reframe the issue. They argue that this case concerns "[w]hether Congress preempted states' power under the Elections Clause to establish the *manner* of elections as it relates to counting timely-cast mail ballots received after election day." Pet. 1 (emphasis added). And they focus their entire petition around framing Mississippi's post-election receipt of ballots as a "manner" regulation. To start, "[a]bsent extraordinary circumstances, this court will not consider issues raised for the first time in a petition for rehearing." *United States v. Hernandez-Gonzalez*, 405 F.3d 260, 261 (5th Cir. 2005) (per curiam). And it is doubtful that intervenors' single sentence in their merits brief was enough to preserve this argument. *See* Interv. Resp. Br., Doc. 137 at 4 ("exercising its constitutional authority to set the Manner for these elections, the Mississippi Legislature enacted Mississippi Code §23-15-637(1)(a)….").

In any event, describing Mississippi's law as a "manner" regulation doesn't escape the panel's reasoning. The dissent in *Foster* made the same move, describing Louisiana's open-primary law as regulating the "manner of election." *Love*, 90 F.3d at 1034 (Dennis, J., dissenting). But the majority and the Supreme Court rejected the argument that "the open primary system concerns only the 'manner' of electing federal officials, not the 'time' at which the elections will take place." *Foster*, 522 U.S. at 72. Just as in *Foster*, "[e]ven if the distinction mattered here," intervenors' "attempt to draw this time-manner line is merely wordplay, and wordplay just as much at odds with the [Mississippi] statute as that law is at odds with §7." *Id.* Nothing in the petition rebuts the panel's holding that "[t]ext, precedent, and historical practice confirm [the] 'day for

13

the election' is the day by which ballots must be both *cast* by voters and *received* by state officials." Op. 2.

## CONCLUSION

This Court should deny the petition for rehearing en banc.

Respectfully submitted,

*/s/ Thomas R. McCarthy*

| | |
|---|---|
| Spencer M. Ritchie | Thomas R. McCarthy |
| Forman Watkins & Krutz LLP | Gilbert C. Dickey |
| 210 East Capitol Street, Ste. 2200 | Conor D. Woodfin |
| Jackson, MS 39201 | CONSOVOY MCCARTHY PLLC |
| (601) 960-3172 | 1600 Wilson Blvd., Ste. 700 |
| spencer.ritchie@formanwatkins.com | Arlington, VA 22209 |
| | (703) 243-9423 |
| | tom@consovoymccarthy.com |
| | gilbert@consovoymccarthy.com |
| Dated: December 2, 2024 | conor@consovoymccarthy.com |

*Counsel for Appellants Republican National Committee,*
*Mississippi Republican Party, James Perry, and Matthew Lamb*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 40(d) because it contains 3,860 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point size Garamond font.


Dated: December 2, 2024                    */s/ Thomas R. McCarthy*


## CERTIFICATE OF SERVICE

I filed this brief on the Court's electronic filing system, which will email everyone requiring notice.

Dated: December 2, 2024                    */s/ Thomas R. McCarthy*